THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REX – REAL ESTATE EXCHANGE, INC.,

Plaintiff,

v.

ZILLOW, INC., et al.,

Defendants.

Case No. 2:21-cv-00312-TSZ

**THE NATIONAL ASSOCIATION OF REALTORS'® REPLY IN SUPPORT OF ITS MOTION TO DISMISS REX'S AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR:
November 5, 2021

ORAL ARGUMENT REQUESTED

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION..................................................................................................1

II.    ARGUMENT........................................................................................................2

    A.    REX's Claims Relating to Listings "Segregation" Are Based on Agency Principles That Are Refuted by the Amended Complaint........................................2

        1.    REX's Fraud-Based Claims Must Be Dismissed Because REX Has Not Alleged Multiple Listing Services or Zillow Acted as NAR's Agents With Respect to the Alleged Fraud...................................................2

        2.    REX's Defamation Claim Is Based on the Same Flawed Agency Allegations and Must Be Dismissed ...........................................................5

        3.    REX's Antitrust Claims Based on Listing "Segregation" Must Be Dismissed Because They Too Are Based on the Same Deficient Agency Allegations .................................................................................5

    B.    REX Does Not Have Antitrust Standing to Assert a Claim Concerning Mandatory Offers of Compensation........................................................7

CONCLUSION ................................................................................................8

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)..................................................................................... 4

*AT&T Co. v. Winback & Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994) ....................................................................... 4

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..................................................................................... 7

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) .................................................................... 7

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ...................................................................... 3

*Hahn v. Oregon Physicians' Serv.*,
    868 F.2d 1022 (9th Cir. 1988) .................................................................... 8

*Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co.*,
    125 Wash. App. 227, 103 P.3d 1256 (2005) .............................................. 4

*LiveUniverse, Inc. v. MySpace, Inc.*,
    304 F. App'x 554 (9th Cir. 2008) ............................................................... 7

*Matsumura v. Eilert*,
    74 Wash. 2d 362, 444 P.2d 806 (1968) ...................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................... 7

*Morici v. Hashfast Techs. LLC*,
    2015 WL 906005 (N.D. Cal. Feb. 27, 2015)............................................... 2

*Nw. Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
    472 U.S. 284 (1985)..................................................................................... 8

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ...................................................................... 7

*RPost Holdings, Inc. v. Trustifi Corp.*,
    2011 WL 4802372 (C.D. Cal. Oct. 11, 2011) ............................................ 3

*Stansfield v. Douglas County*,
    107 Wash. App. 1, 27 P.3d 205 (2001) ...................................................... 3

*W. Sugar Co-op. v. Archer-Daniels-Midland Co.*,
    2012 WL 3101659 (C.D. Cal. July 31, 2012).............................................. 5

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ            ii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

## I.  **INTRODUCTION**

To avoid dismissal, REX's opposition conflates two different issues raised by NAR's motion to dismiss:  the first issue is that REX has not alleged facts that plausibly show NAR, the multiple listing services, and Zillow agreed to an agency relationship for *listings* "*segregation*" or *Zillow's labeling system*; and the second, independent issue is that REX has not and cannot show that it has antitrust injury or antitrust standing to challenge NAR's separate rules on *offers of compensation*.

**All of REX's listings "segregation" claims fail because neither the multiple listing services nor Zillow is NAR's agent for listings "segregation" or Zillow's labeling system.**  REX states in its opposition brief that it "does not allege that NAR's rules alone caused REX's exclusion from Zillow's primary search results. . . .  NAR, acting through its agent Multiple Listing Services, agreed with Zillow to exclude REX's listings."  ECF 102 at 12-13.  Thus, all of REX's claims based on listings "segregation" and Zillow's labeling system hinge on whether the hundreds of multiple listing services in the country and Zillow are NAR's "agents enforcing NAR's rules."  *See id.* at 2.  But nothing in the Amended Complaint plausibly shows NAR, the multiple listing services, and Zillow agreed to such a relationship, that NAR controlled the decisions made by multiple listing services on listings "segregation," or that NAR controlled Zillow's decisions about how to design its website.  REX's own allegations show that only "some" multiple listing services require "segregation" of listings, and some do not, which suggests only that those decisions are not controlled by NAR, whose rules apply equally to all multiple listing services.  And nothing connects NAR to Zillow's labeling system at all.  Therefore, REX is trying to hold NAR responsible for acts (purported listings "segregation" and a labeling system) by entities that were not NAR's agents and whose actions NAR did not control.

**REX's antitrust claim also fails because it does not have antitrust standing to challenge NAR's rules on offers of compensation.**  In its Amended Complaint, REX mentions rules on offers of compensation in passing, but those rules have nothing to do with the purported "boycott" it attributes to listings "segregation" and commingling rules.  REX's Amended Complaint only alleges its injuries were caused by the alleged boycott, not the separate rules concerning offers of compensation.  Nor could it.  If the Amended Complaint is correct that the rule on offers of

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1

1  compensation increase commissions, that would not harm REX because REX stands to benefit from

2  a greater ability to charge higher commissions or increased sales (from offering commissions lower

3  than its competitors). The United States Supreme Court has long held that plaintiffs in REX's

4  position cannot bring antitrust claims based on such theories because they cannot plausibly claim to

5  have been injured by the conduct that allegedly harms competition. REX's allegations that the

6  commingling and "segregation" rules are a boycott do not show it has sustained antitrust injury on

7  the offers of compensation rules. Because nothing in the Amended Complaint shows that NAR's

8  rules on *offers of compensation* harm REX, REX does not have antitrust standing to challenge those

9  rules.

10  Therefore, NAR respectfully requests that the Court dismiss REX's claims against NAR.

## II.    ARGUMENT

**A.    REX's Claims Relating to Listings "Segregation" Are Based on Agency Principles That Are Refuted by the Amended Complaint**

**1.    REX's Fraud-Based Claims Must Be Dismissed Because REX Has Not Alleged Multiple Listing Services or Zillow Acted as NAR's Agents With Respect to the Alleged Fraud**

16  In its opposition brief, REX argues that NAR is liable under its fraud-based claims based on

17  the actions of others, using principles of agency. Specifically, REX claims, "NAR is liable for

18  *Zillow's* false and misleading search labels," "*Zillow acted* as the agent of NAR," "NAR is liable

19  for the anticompetitive conduct of *those acting on its behalf*," and "NAR, *operating through its*

20  *member MLSs*, directed and approved Zillow's false statements." ECF 102 at 2, 3, 10 (emphasis

21  added) (capitalization omitted from the third quotation). Therefore, to avoid dismissal, REX must

22  sufficiently allege facts plausibly suggesting multiple listing services were acting as NAR's agents

23  when deciding whether to permit listings "segregation" and that Zillow acted as NAR's agent when

24  designing and implementing its labeling system. It has not met that burden.

25  As a threshold matter, contrary to what REX argues, the agency allegations supporting its

26  fraud-based claims must satisfy the heightened pleading requirements of Rule 9(b). As other courts

27  within the Ninth Circuit have recognized, an "agency relationship must be pleaded with particularity

28  when a claim for fraud, brought in federal court, purports to impose liability on such a theory."

NAR's Reply iso Motion
to Dismiss Am. Compl.
Case No. 2:21-cv-00312-TSZ                    2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1  *Morici v. Hashfast Techs. LLC*, 2015 WL 906005, at *4 (N.D. Cal. Feb. 27, 2015) (collecting cases).

2  "The fact that Plaintiff is proceeding under an agency theory does not absolve Plaintiff of the Rule

3  9(b)'s requirement to explain [the defendant]'s role in the false statements." *RPost Holdings, Inc.*

4  *v. Trustifi Corp.*, 2011 WL 4802372, at *4 (C.D. Cal. Oct. 11, 2011). As REX concedes, "Rule 9(b)

5  requires . . . an identification of the 'circumstances of the alleged fraud so that defendants can

6  prepare an adequate answer.'" ECF 102 at 7 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

7  1997)).  Thus, when the alleged fraud was perpetrated through an agent, the circumstances

8  surrounding that relationship must be pleaded with particularity.  To conclude otherwise would

9  "ignore[] the purpose of Rule 9, which is to give fair notice of fraud-based claims so a defendant

10 may respond accordingly." *RPost Holdings*, 2011 WL 4802372, at *4.

11         REX has failed to plead a cognizable relationship at all, let alone with the requisite degree

12 of particularity.  Under Washington law, agency "does not exist unless the facts, either expressly or

13 by inference, establish that one person is acting at the instance of and in some material degree under

14 the direction and control of the other." *Stansfield v. Douglas County*, 107 Wash. App. 1, 18, 27

15 P.3d 205 (2001).  "It arises from manifestations that one party consents that another shall act on his

16 behalf and subject to his control, and corresponding manifestations of consent by another party to

17 act on behalf of and subject to the control of the other." *Id.* (quoting *Matsumura v. Eilert*, 74 Wash.

18 2d 362, 368, 444 P.2d 806, 810 (1968)).  REX has failed to allege facts showing NAR consented to

19 multiple listing services or Zillow acting on its behalf, subject to its control, with respect to whether

20 to segregate listings or how to design the labeling system for Zillow's website.

21         REX's response is that its Amended Complaint alleged that NAR generally wants multiple

22 listing services and its members to comply with NAR's mandatory rules, such as its Code of Ethics,

23 and that multiple listing services and members of NAR generally can use its trademarks and obtain

24 access to insurance coverage through NAR.  ECF 102 at 4-5.  But that is not sufficient to meet the

25 control requirement of agency.  "Control is not established if the asserted principal retains the right

26 to supervise the asserted agent merely to determine if the agent performs in conformity with the

27 contract.  Instead, control establishes agency only if the principal controls the manner of

28 performance." *Stansfield*, 107 Wash. App. at 18 (citation omitted).  For example, independent

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

contractors sign contracts and must follow rules, but "[a]n independent contractor is generally not considered an agent because the contractor acts in his own right and is not subject to another's control." *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co.*, 125 Wash. App. 227, 235, 103 P.3d 1256, 1260-61 (2005). Nothing in the Amended Complaint plausibly shows that NAR controlled actions of the multiple listing services or Zillow with respect to listings "segregation" or commingling. As REX's Amended Complaint shows, only "some" multiple listing services even require "segregation" of listings, and some do not. *See, e.g.*, ECF 99 ¶ 83. All multiple listing services are subject to the same NAR rules. *See, e.g.*, *id.* ¶ 73. It is therefore implausible for REX to suggest NAR exercised "control" through those rules even though many multiple listing services took *different* actions on listings "segregation."

Moreover, even if the Amended Complaint alleged facts showing NAR consented to an agency relationship with multiple listing services or Zillow, REX has failed to allege multiple listing services and Zillow acted within the scope of that authority when they engaged in the challenged conduct. The cases cited by REX confirm that liability attaches to a principal only "when the agent acts **within the scope** of his . . . authority." *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) (emphasis added) (cited by ECF 102 at 2); *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1431 (3d Cir. 1994) ("In *Hydrolevel*, the Supreme Court followed the approach of the Restatement (Second) of Agency, and held that 'a principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority.'") (cited by ECF 102 at 2). But REX has not plausibly pleaded that any of the challenged actions fell within the scope of a cognizable agency relationship.

In arguing for its purported agency relationships, REX's opposition ticks off eight allegations that it claims establish "some" multiple listing services acted within the scope of a recognized agency relationship when they prohibited commingling or that Zillow acted within the scope of an agency relationship with NAR when designing its website. ECF 102 at 4-5. But not a single one of those allegations relates to NAR's control over listings "segregation," commingling, or Zillow's labeling system. Thus, even if those allegations plausibly suggest an agency relationship with respect to other actions (which they do not), none of them would establish any of the conduct

NAR's Reply iso Motion
to Dismiss Am. Compl.
Case No. 2:21-cv-00312-TSZ                4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

at issue in this case fell within the scope of such a relationship. REX cites one case in its opposition as "applying agency principles to Lanham Act claims against [a] trade association." ECF 102 at 3 (citing *W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, 2012 WL 3101659, at *5-7 (C.D. Cal. July 31, 2012)). But in that case, the plaintiffs alleged that a trade association was an agent of its members, the reverse of what REX alleges here. *See W. Sugar Co-op.*, 2012 WL 3101659, at *5. And the court permitted the Lanham Act claims to proceed on an agency theory only after explaining that plaintiffs had alleged that the association members had a right "to control the [association] . . . in particular with respect to the advertising challenged in th[e] action"; that "the decisions to fund, design and launch the challenged false advertising campaign" were subject to the approval "of the . . . members themselves"; that "decisions [concerning] . . . the day-to-day details about such matters as the advertising's content . . . [we]re subject to the approval of the Member Companies themselves"; and that "the Member Companies provide[d] . . . special assessments earmarked to fund the advertising challenged." *Id.* (quotation marks omitted). That is what would be required for REX to proceed on an agency theory against NAR on its fraud-based claims—and such allegations are completely missing from REX's Amended Complaint.

### 2. REX's Defamation Claim Is Based on the Same Flawed Agency Allegations and Must Be Dismissed

REX does not allege NAR made any false statements about REX. "REX instead alleges that NAR, operating through its member MLSs, directed and approved Zillow's false statements." ECF 102 at 10 (emphasis omitted). Because REX has failed to allege a cognizable agency relationship between NAR and any multiple listing service with respect to the design of Zillow's website, *supra* pp. 3-4, its defamation claim must be dismissed. REX has failed to allege any facts that would plausibly suggest any (unidentified) multiple listing service acted as NAR's agent when it purportedly "directed and approved Zillow's false statements."

### 3. REX's Antitrust Claims Based on Listing "Segregation" Must Be Dismissed Because They Too Are Based on the Same Deficient Agency Allegations

In its opposition, REX clarified, for the first time, that its antitrust claims based on the "segregation" and commingling rules are also based exclusively on agency principles. Specifically,

NAR's Reply iso Motion
to Dismiss Am. Compl.
Case No. 2:21-cv-00312-TSZ                    5

REX argues "NAR, acting through its agent Multiple Listing Services, agreed with Zillow to exclude REX's listings." ECF 102 at 13. Thus, under REX's theory of its case, NAR can only be liable for REX's antitrust claims relating to the "segregation" and commingling rules if it consented to multiple listings services acting as its agents and controlled their decision to "agree" with Zillow to exclude REX's listings. There is no plausible basis in the Amended Complaint from which to infer the existence of such an agency relationship.

REX's opposition seems to suggest such an agency relationship may be inferred solely from NAR's rules, specifically, "rules on commingling, which are mandatory for MLSs to adopt, and on segregation, which MLSs have the option to adopt." ECF 102 at 12 (cleaned up). Both of those rules apply to all multiple listing services affiliated with NAR. *See* ECF 99 ¶ 73. Neither of them, however, establish an agency relationship between NAR and any multiple listing service with respect to the conduct at issue in this case.

Under both rules identified by REX, individual multiple listing services retain discretion over whether to prohibit commingling, and as REX alleges, only "some" multiple listing services have elected to do so. *See* ECF 99 ¶ 83. The "mandatory" commingling rule expressly allows multiple listing services to choose whether to permit commingling of MLS listings data and non-MLS listings data. *See* ECF 102 at 12 n.9 ("An MLS participant (or where permitted locally, an MLS subscriber) may co-mingle the listings of other brokers . . . ." (quoting ECF 85-2 at 102)). And the REX-dubbed "segregation" rule is an "optional . . . rule[]" that allows multiple listing services to choose whether to require MLS listings data to "be displayed separately from listings obtained from other sources." ECF 99 ¶ 102.

As discussed above, in an agency relationship, the principal must have the ability to control its agent's actions within the scope of the agency, and the acts of the agent must be within the scope of the agency to give rise to vicarious liability. Because NAR, according to REX's own allegations, does not control an individual multiple listing service's decision to prohibit or permit commingling, it is not plausible to infer any multiple listing services were NAR's agents when deciding to prohibit commingling, or that those multiple listing services acted within the scope of any potential agency. And because such an agency relationship is implausible, NAR's antitrust claims based on

NAR's REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1  commingling, which require a finding that "NAR, acting through its agent Multiple Listing Services,

2  agreed with Zillow to exclude REX's listings," ECF 102 at 13, must be dismissed, *supra* pp. 3-4.

3  **B.    REX Does Not Have Antitrust Standing to Assert a Claim Concerning Mandatory**

4  **Offers of Compensation**

5      One aspect of REX's Amended Complaint does make allegations of direct actions by NAR:

6  REX claims the alleged boycott orchestrated by NAR and Zillow is intended to protect NAR's

7  "mandatory offer of compensation rule." ECF 102 at 19.  REX claims that rule amounts to a price-

8  fixing for brokerage commissions.  As a matter of law, however, REX does not have antitrust

9  standing to challenge NAR's actions with respect to that rule because it is a real estate brokerage

10 that stands to benefit from the challenged conduct.  As the Supreme Court has long recognized,

11 competitors in the market stand to benefit from alleged collusion that raises prices and therefore are

12 not the right private plaintiffs to challenge such conduct under the antitrust laws.  *See Atl. Richfield*

13 *Co. v. USA Petroleum Co.*, 495 U.S. 328, 336-37 (1990); *Matsushita Elec. Indus. Co. v. Zenith*

14 *Radio Corp.*, 475 U.S. 574, 582-83 (1986); *see also* ECF 101 at 9-10.

15     To avoid this bar, REX suggests that (1) group boycott claims do not require proof of

16 antitrust injury and antitrust standing; and (2) it can satisfy the requirements of antitrust injury and

17 antitrust standing to challenge the rules on offers of compensation because it claims to have been

18 harmed by an alleged group boycott implemented by the same group of competitors who

19 implemented the rules concerning offers of compensation.  Both claims are wrong.

20     *First*, the requirement of "causal antitrust injury[] is an element of all antitrust suits brought

21 by private parties." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995); *see also*

22 *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1103 (9th Cir. 1999) (requiring

23 antitrust injury in a group boycott case cited by REX).  That means in every private, federal antitrust

24 case the plaintiff must show a causal connection between the alleged reduction of competition and

25 the plaintiff's alleged injuries, and the requirement is the same in all cases.  *See Rebel Oil*, 51 F.3d

26 at 1433; *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) ("LiveUniverse

27 does not explain how MySpace's actions *on its own website* can reduce consumers' choice or

28 diminish the quality of their experience on *other* social networking websites . . . . LiveUniverse's

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                    7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1    failure to allege antitrust injury serves as an independent ground on which we affirm [dismissal].").
2    As NAR discussed in its opening brief, there is no such causal connection here.  ECF 101 at 8-12.
3    REX has failed to point to any alleged facts showing that the rules *on offers of compensation*
4    specifically harmed REX.  Nor could it, because REX benefits from the alleged anticompetitive
5    effects flowing from that rule.

6        ***Second***, REX's repeated claim that it has standing because it has alleged a group boycott
7    misses the point of NAR's argument.  The term "group boycott" has a specific meaning under the
8    antitrust laws.  It refers to "joint efforts by a firm or firms to disadvantage competitors by either
9    directly denying or persuading or coercing suppliers or customers to deny relationships the
10   competitors need in the competitive struggle." *Nw. Wholesale Stationers, Inc. v. Pacific Stationery*
11   *& Printing Co.*, 472 U.S. 284, 294 (1985) (quotation marks omitted).  Following *Northwest*
12   *Wholesale Stationers*, the Ninth Circuit has required that a plaintiff bringing a boycott case must
13   allege that "the boycott cuts off access to a supply, facility, or market necessary to enable the victim
14   firm to compete." *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1030 (9th Cir. 1988).  Nothing
15   about the rules on offers of compensation does that.  In fact, REX only alleges that the rule on offers
16   of compensation causes commissions to increase—it makes no allegation that the rule on offers of
17   compensation "cuts off" its access to anything.  Therefore the alleged injuries to competition flowing
18   from the mandatory offer of compensation rule have nothing to do with the purported "group
19   boycott" REX has challenged in this case.

20   **CONCLUSION**

21       NAR respectfully requests that the Court dismiss all claims against NAR.

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ                8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1 | DATED: November 5, 2021

2 |             QUINN EMANUEL URQUHART & SULLIVAN, LLP

3

4 |           */s/ Thomas C. Rubin*
          Thomas C. Rubin, WSBA #33829

5 |           1109 First Avenue, Suite 210
          Seattle, WA 98101

6 |           Phone (206) 905-7000
          Fax (206) 905-7100

7 |           tomrubin@quinnemanuel.com

8 |           Ethan Glass (*pro hac vice*)
          Michael D. Bonanno (*pro hac vice*)

9 |           1300 I Street, Suite 900
          Washington, D.C. 20005

10 |           Tel: 202.538.8000
          Fax: 202.538.8100

11 |           ethanglass@quinnemanuel.com
          mikebonanno@quinnemanuel.com

12

13 |           *Attorneys for Defendant National*
          *Association of REALTORS®*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NAR'S REPLY ISO MOTION
TO DISMISS AM. COMPL.
Case No. 2:21-cv-00312-TSZ       9       QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2021, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record.

DATED: November 5, 2021

*/s/ Thomas C. Rubin*
Thomas C. Rubin, WSBA #33829

NAR's Reply iso Motion
to Dismiss Am. Compl.
Case No. 2:21-cv-00312-TSZ                    10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000