UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>ZILLOW, INC., a Washington corporation; ZILLOW GROUP, INC., a Washington corporation; ZILLOW HOMES, INC., a Delaware corporation; ZILLOW LISTING SERVICES, INC., a Washington corporation; TRULIA, LLC, a Delaware limited liability company; and THE NATIONAL ASSOCIATION OF REALTORS, an Illinois trade association,<br><br>        Defendants. | CASE NO. 2:21-cv-00312<br><br>**ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

The following provisions will govern the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.<u>Custodians.</u>

The parties shall identify up to 5 custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. The parties agree to meet and confer regarding any requests for additional custodians.

2.<u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.<u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     ESI Discovery Procedures**

    1.     <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

    2.     <u>Search methodology.</u> The parties shall timely meet and confer and cooperate in good faith to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in good faith to revise the appropriateness of the search methodology. The parties shall not delay implementing the agreed upon searches and related production while seeking resolution on others.

        a.     Prior to running searches:

            i.     The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

            ii.     The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 5,000 unique documents, excluding families, is presumed to be overbroad.

    b. After production: Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 10 additional search terms or queries. The immediately preceding section (Section C(2)(a)(iii)) applies.

3. <u>Format.</u>

    a. The parties shall produce their information in the following format: single-page TIFF and/or JPG images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

    b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. A requesting party may request that a producing party reproduce particular documents in native format if the documents are not reasonably legible after being converted to image format.

    c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

    d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    e. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

  4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources, provided the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

  5. <u>Email Threading & TAR.</u>  The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies.  Upon reasonable request, the producing party will produce a less inclusive copy. If necessary to obtain information that is not otherwise available in a threaded e-mail production (e.g., an e-mail attachment), the producing party will produce a less inclusive copy.  A producing party may also employ additional TAR tools and approaches as it deems appropriate, provided the TAR search parameters are disclosed to all parties.

6. <u>Metadata fields.</u> The parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are duplicative of data that are more accessible elsewhere.

   f. Server, system or network logs.

   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

   i. Text messages.

   j. Personal social media postings or accounts of employees of any party and

ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION                                                                PAGE - 7
(Case No. 2:21-CV-00312)

social media postings for accounts owned or maintained by a party that are publicly available.

**E.     Privilege**

1. A producing party shall create a categorical privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include (i) a description of the nature or general subject matter of the documents or communications for each category included on the privilege log sufficient to support the claim that the documents within the category are privileged and/or protected; (ii) the date of the earliest document and the date of the most recent document in each category; (iii) a list of the unique author(s)/sender(s) and recipient(s) for the documents in each category that identifies the persons who are attorneys; and (iv) the total number of documents withheld that fall into each category. Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery unless an earlier deadline is agreed to by the parties.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and need not be included in privilege logs.

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents or information in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those

documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

## ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: January 19, 2022

Thomas S. Zilly
United States District Judge