THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., | Case No. 2:21-cv-00312-TSZ |
| Plaintiff, | **THE NATIONAL ASSOCIATION OF REALTORS'® ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** |
| v. | |
| ZILLOW, INC., et al. | |
| Defendants. | **JURY DEMAND** |

NATIONAL ASSOCIATION OF
REALTORS®,

   Counterclaim-Plaintiff,

  v.

REX – REAL ESTATE EXCHANGE, INC..

   Counterclaim-Defendant.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1  Defendant National Association of REALTORS® ("NAR") answers the amended complaint

2  of Plaintiff REX – Real Estate Exchange, Inc. ("REX") as follows, denying all of the headings to

3  the extent they are considered allegations:

4  ## RESPONSE TO SPECIFIC ALLEGATIONS

5  1.  NAR admits that REX filed this action against defendants and purported to allege

6  claims under federal and state law.  NAR otherwise denies the allegations in Paragraph 1.

7  ## I.    NATURE OF THE ACTION

8  2.  NAR denies the allegations in Paragraph 2.

9  3.  NAR denies the allegations in Paragraph 3.

10  4.  NAR denies the allegations in Paragraph 4.

11  5.  NAR denies the allegations in Paragraph 5.

12  6.  NAR denies the allegations in Paragraph 6.

13  7.  NAR denies the allegations in Paragraph 7.

14  8.  NAR admits that Zillow is a member of some multiple listing services owned by

15  local associations of REALTORS®.  NAR otherwise currently lacks knowledge or information

16  sufficient to form a belief about the truth of the allegations in Paragraph 8 and therefore denies them.

17  9.  NAR denies the allegations in Paragraph 9.

18  ## II.    THE PARTIES

19  10.  NAR currently lacks knowledge or information sufficient to form a belief about the

20  truth of the allegations in Paragraph 10 and therefore denies them.

21  11.  NAR admits the allegations in Paragraph 11.

22  12.  NAR currently lacks knowledge or information sufficient to form a belief about the

23  truth of the allegations in Paragraph 12 and therefore denies them.

24  13.  NAR currently lacks knowledge or information sufficient to form a belief about the

25  truth of the allegations in Paragraph 13 and therefore denies them.

26  14.  NAR currently lacks knowledge or information sufficient to form a belief about the

27  truth of the allegations in Paragraph 14 and therefore denies them.

28

15.     NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 and therefore denies them.

16.     NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 and therefore denies them.

### III.     JURISDICTION AND VENUE

17.     NAR denies the allegations in Paragraph 17.

18.     NAR denies the allegations in Paragraph 18.

19.     NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 concerning the Zillow Defendants and therefore denies them. NAR denies the remainder of the allegations in Paragraph 19.

20.     NAR admits that certain NAR members transact business in Washington and in this District.  NAR admits that Seattle King County Association of REALTORS® is an association of REALTORS®.  NAR denies that it regularly transacts business within Washington and this District. NAR denies the remaining allegations in Paragraph 20.

21.     NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 and therefore denies them.

### IV.     FACTS

**A.     Traditional NAR/MLS Residential Real Estate Brokerage Services**

22.     NAR admits that there are brokers, agents, and REALTORS® who provide real estate brokerage services in the United States.  NAR admits that some agents work for brokerages, and that some agents are paid commissions for services.  NAR admits that REALTORS® are members of the NAR.  To the extent the allegations in Paragraph 22 contain legal conclusions, such as those concerning relevant "markets," NAR denies the allegations.  NAR otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 and therefore denies them.

23.     NAR admits that it is a trade association with approximately 1.5 million members and that it advocates for the interests of buyers and sellers of residential real estate and for brokers. NAR admits that its members belong to one or more of approximately 1,100 local

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

associations/boards and 54 state and territory associations of REALTORS®.  NAR admits that Bob Goldberg is its CEO.    NAR admits that Paragraph 23 includes language quoted from https://www.nar.realtor/ceo-update-2017-board-of-directors.  NAR otherwise denies the allegations in Paragraph 23.

24.     NAR denies that it "controls" local associations of REALTORS® or multiple listings services, which are separate business entities that have local discretion with regards to any matters not mandated by NAR policies.  NAR admits that Paragraph 24 includes an image of a map that appears to be taken from https://www.nar.realtor/mls-map-of-the-national-association-of-realtors, but denies that the image demonstrates NAR's reach or depicts only multiple listing services that are owned by local associations of REALTORS®.    NAR otherwise denies the allegations in Paragraph 24.

25.     NAR denies the allegations in Paragraph 25.

26.     NAR admits that obtaining a state license to represent consumers as a broker or agent is not conditioned on membership in NAR or an MLS.  NAR otherwise denies the allegations in Paragraph 26.

27.     NAR admits that licensed real estate professionals can compete outside the NAR and MLSs.  NAR otherwise denies the allegations in Paragraph 27.

28.     NAR denies the allegations in Paragraph 28.

29.     NAR admits that in some real estate transactions brokers or agents are compensated through commissions, the agent representing the homeowner can be referred to as a "seller agent," "listing broker," or "listing agent," and that agent places his or her client's property on one or more lists of available homes for sale.  NAR also admits that in some real estate transactions the agent representing a client interested in purchasing a home for sale can be referred to as a "buyer agent," or "buyer representative."  NAR otherwise denies the allegations in Paragraph 29.

30.     NAR admits that Statement 7.23 in its Handbook on Multiple Listing Policy provides, "In filing property with the multiple listing service, participants make blanket unilateral offers of compensation to the other MLS participants and shall therefore specify on each listing filed

1  with the service the compensation being offered by the listing broker to the other MLS participants."

2  NAR otherwise denies the allegations in Paragraph 30.

3      31.    NAR admits that listing brokers can offer any amount of compensation to buyer

4  agents under its rules.  NAR otherwise currently lacks knowledge or information sufficient to form

5  a belief about the truth of the allegations in Paragraph 31 and therefore denies them.

6      32.    NAR denies the allegations in Paragraph 32.

7      33.    NAR denies the allegations in Paragraph 33.

8      34.    NAR denies the allegations in Paragraph 34.

9      35.    NAR denies the allegations in Paragraph 35.

10      36.    NAR denies the allegations in Paragraph 36.

11      37.    NAR admits that there are pending federal lawsuits in which private plaintiffs purport

12  to challenge NAR rules.  NAR admits that the United States Department of Justice issued a press

13  release concerning NAR in 2020.  NAR admits that Paragraph 37 contains language from a

14  complaint filed by the United States.  NAR otherwise denies the allegations in Paragraph 37.

15      38.    NAR admits that plaintiffs in lawsuits named *Leeder v. NAR*, *Moehrl v. NAR* and

16  *Sitzer v. NAR* have raised allegations about certain NAR rules.  NAR admits that motions to dismiss

17  were denied in *Moehrl v. NAR* and *Sitzer v. NAR* and that Paragraph 38 quotes language from a

18  decision relating to one motion to dismiss.  NAR otherwise denies the allegations in Paragraph 38.

19      **B.    The REX Model**

20      39.    NAR currently lacks knowledge or information sufficient to form a belief about the

21  truth of the allegations in Paragraph 39 and therefore denies them.

22      40.    NAR denies the allegations in Paragraph 40.

23      41.    NAR denies the allegations in Paragraph 41.

24      42.    NAR denies the allegations in Paragraph 42.

25      43.    NAR denies the allegations in Paragraph 43.

26      44.    NAR denies the allegations in Paragraph 44.

27      45.    NAR denies the allegations in Paragraph 45.

28

**C.  The Importance Of Internet Aggregator Sites Like Zillow**

46.    NAR denies that any of its rules are "high-commission strictures."  NAR denies the existence of a "NAR/MLS cartel."   To the extent the allegations in Paragraph 46 contain legal conclusions, NAR denies the allegations.  NAR otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 and therefore denies them.

47.    NAR admits that some MLSs  allow certain listings data to appear on public facing websites.  NAR denies the remainder of the allegations in Paragraph 47.

48.    NAR admits that consumers can shop for a home without an agent.  NAR otherwise denies the allegations in Paragraph 48.

49.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 and therefore denies them.

50.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 and therefore denies them.

51.    NAR denies that it considers "internet transparency" to be a competitive threat.  NAR currently lacks knowledge or information sufficient to identify the purported studies referenced in Paragraph 51 and therefore denies the remaining allegations in Paragraph 51.

52.    NAR admits that the 2020 NAR Home Buyer and Seller Generational Trends Report from the National Association of REALTORS® Research Group includes data showing that 52% of survey respondents found the home they purchased using the internet.   NAR otherwise denies the allegations in Paragraph 52.

53.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 and therefore denies them.

54.    NAR admits that it has a license agreement with realtor.com. NAR otherwise denies the allegations in Paragraph 54.

55.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55 and therefore denies them.

**D.      Zillow Agrees To Degrade Non-MLS Listings Upon Joining NAR And MLSs**

56.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56 and therefore denies them.

57.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57 and therefore denies them.

58.      Zillow's 2020 announcement appears to be available at https://www.youtube.com/watch?v=EMidklRVFMM.  NAR otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 and therefore denies them.

59.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 59 and therefore denies them.

60.      NAR denies the allegations in Paragraph 60.

61.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61 and therefore denies them.

62.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 and therefore denies them.

63.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 and therefore denies them.

64.      NAR denies that there is no consumer benefit to identifying the source of particular listings on a web display.  NAR denies that Zillow's website insulates brokers from competition. NAR otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 and therefore denies them.

65.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65 and therefore denies them.

66.      NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 and therefore denies them.

67.      NAR admits that membership in NAR and MLSs are not conditions precedent to becoming an agent and that agents are licensed by states.  NAR otherwise currently lacks knowledge

1  or information sufficient to form a belief about the truth of the allegations in Paragraph 67 and

2  therefore denies them.

3       68.    NAR currently lacks knowledge or information sufficient to form a belief about the

4  truth of the allegations in Paragraph 68 and therefore denies them.

5       69.    NAR currently lacks knowledge or information sufficient to form a belief about the

6  truth of the allegations in Paragraph 69 and therefore denies them.

7       70.    NAR denies the allegations in Paragraph 70.

8       **E.     Zillow's Compliance with NAR's Rules Was Reviewed and Enforced by NAR's**

9            **Multiple Listing Services**

10      71.    NAR admits that it is a trade association and that REALTOR® is a registered

11  collective membership mark that can only be used by real estate professionals who are members of

12  NAR.  NAR's governance policies are set forth in its Constitution and Bylaws, which are available

13  at  https://cdn.nar.realtor/sites/default/files/documents/NAR_2022_Constitution_and_Bylaws..pdf.

14  NAR otherwise denies the allegations in Paragraph 71.

15      72.    NAR admits that all REALTORS® agree to follow NAR's Code of Ethics as a

16  condition of their membership and that REALTORS® can be subject to potential sanctions when

17  found to have violated that Code.  NAR admits that such sanctions could potentially include

18  expulsion of an individual from membership with no reinstatement privilege for a specified period

19  of one (1) to three (3) years, with reinstatement of membership to be by application only after the

20  specified period of expulsion.  Suspension of REALTOR® membership will, in most instances,

21  have no effect on MLS participatory or user/subscriber privileges, but NAR admits that

22  REALTOR® principals who belong to an MLS that requires membership in a local REALTOR®

23  association can have their MLS access cut off if REALTOR® membership is suspended.  NAR

24  otherwise denies the allegations in Paragraph 72.

25      73.    NAR admits that it publishes a Handbook on Multiple Listing Policy, which contains

26  some rules and policies that are mandatory for REALTOR® association-owned MLSs.  NAR denies

27  that any rule or policy in its Handbook on Multiple Listing Policy is called the "mandatory offer of

28  compensation rule" or "the mandatory co-mingling rule."  NAR's Handbook on Multiple Listing

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

Policy is available at https://www.nar.realtor/handbook-on-multiple-listing-policy.  NAR otherwise denies the allegations in Paragraph 73.

74.    NAR denies the allegations in Paragraph 74.

75.    NAR denies the allegations in Paragraph 75.

76.    NAR admits the allegations in Paragraph 76.

77.    NAR admits that it instructs REALTOR® association-owned multiple listing services to comply with mandatory multiple listing service rules.  NAR denies that it instructs its members to comply non-mandatory rules and otherwise denies the allegations in Paragraph 77.

78.    NAR admits that REALTOR® association-owned multiple listing services must conform their governing documents to the mandatory MLS policies established by the National Association's Board of Directors to ensure continued status as member boards and to ensure coverage under NAR's master professional liability insurance program.  NAR denies that REALTOR® association-owned multiple listing services must conform their governing documents to non-mandatory MLS policies established by the National Association's Board of Directors to ensure continued status as member boards and to ensure coverage under NAR's master professional liability insurance program.  NAR otherwise denies the allegations in Paragraph 78.

79.    NAR admits that it intends for REALTOR® association-owned multiple listing services to comply with mandatory polices.  NAR denies that it intends for REALTOR® association-owned multiple listing services to comply with non-mandatory polices and otherwise denies the allegations in Paragraph 79.

80.    NAR denies the allegations in Paragraph 80.

81.    NAR denies the allegations in Paragraph 81.

82.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82 about Zillow and therefore denies them.  NAR denies the remaining allegations in Paragraph 82.

83.    NAR denies the allegations in Paragraph 83.

84.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 84 and therefore denies them.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

85.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 85 and therefore denies them.

86.    NAR denies the allegations in Paragraph 86.

87.    NAR denies the allegations in Paragraph 87.

88.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 88 about Zillow and therefore denies them.   NAR otherwise denies the allegations in Paragraph 88.

**F.      The Resulting Harm To Competition**

89.    NAR denies the allegations in Paragraph 89.

90.    NAR denies the allegations in Paragraph 90.

91.    NAR denies the allegations in Paragraph 91.

92.    NAR denies the allegations in Paragraph 92.

93.    NAR denies the allegations in Paragraph 93.

94.    NAR denies the allegations in Paragraph 94.

95.    NAR denies the allegations in Paragraph 95.

96.    NAR denies the allegations in Paragraph 96.

97.    NAR denies the allegations in Paragraph 97.

**G.      The Root Of The Harm Lies Within NAR/MLS Anticompetitive Rules**

98.    NAR denies the allegations in Paragraph 98.

99.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 99 and therefore denies them.

100.    NAR admits it publishes a Handbook on Multiple Listing Policy, which includes guidelines for multiple listing services.  NAR's Handbook on Multiple Listing Policy is available at https://www.nar.realtor/handbook-on-multiple-listing-policy.  NAR denies that any rule addresses "the clear segregation" of MLS listings.  NAR otherwise denies the allegations in Paragraph 100.

101.    NAR admits that at its 2000 Midyear meeting NAR's Board of Directors approved refinements to existing policy which authorize MLS participants to display on their websites the listings of other participants and that this policy is known as NAR's IDX Policy.   NAR admits that

1   an IDX feed allows agents who are members of the MLS to have online access to MLS listings and

2   to make these listings publicly visible on their websites.  NAR otherwise denies the allegations in

3   Paragraph 101.

4          102.   NAR admits that its Handbook on Multiple Listing Policy includes polices that

5   address how IDX data can be used.  NAR admits that some optional policies in the Handbook on

6   Multiple Listing Policy, if adopted by an MLS, would address MLS participants' web displays.

7   NAR admits that Paragraph 102 includes a quotation from Section 18.3.11 of its Handbook on

8   Multiple Listing Policy.  NAR admits that Section 18.3.11 of its Handbook on Multiple Listing

9   Policy is an optional policy.  NAR admits that Section 18.3.11 of its Handbook on Multiple Listing

10   Policy appears as an optional policy in model rules other than for an MLS Operated as a Committee

11   of an Association of Realtors.  NAR otherwise denies the allegations in Paragraph 102.

12          103.   NAR admits that Bright MLS is one of the larger MLSs in the country.  NAR

13   otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the

14   allegations in Paragraph 103 and therefore denies them.

15          104.   NAR denies the allegations in Paragraph 104.

16          105.   NAR currently lacks knowledge or information sufficient to form a belief about the

17   truth of the allegations in Paragraph 105 and therefore denies them.

18          106.   NAR denies that any rule in its Handbook on Multiple Listing Policy requires "the

19   clear segregation" of MLS listings.  NAR otherwise currently lacks knowledge or information

20   sufficient to form a belief about the truth of the allegations in Paragraph 106 and therefore denies

21   them.

22          107.   NAR denies the allegations in Paragraph 107.

23          **H.**      **The Change In Zillow's Display Is Deceptive And An Illegal Restraint Of Trade**

24          108.   NAR denies the allegations in Paragraph 108.

25          109.   NAR admits that Bob Goldberg gave the keynote address at NAR's 2017 Leadership

26   Summit.  NAR otherwise denies the allegations in Paragraph 109.

27          110.   NAR denies the allegations in Paragraph 110.

28

NAR's Answer and Counterclaim
Case No. 2:21-cv-00312-TSZ     10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

111.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 111 and therefore denies them.

112.    NAR denies the allegations in Paragraph 112 concerning NAR. NAR otherwise currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112 and therefore denies them.

113.    NAR denies the allegations in Paragraph 113.

114.    NAR denies the allegations in Paragraph 114.

115.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115 and therefore denies them.

116.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116 and therefore denies them.

117.    NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117 and therefore denies them.

118.    The allegations in Paragraph 118 contain legal conclusions as to which no response is required. To the extent a response is required, NAR denies the allegations in Paragraph 118.

## V.    THE RELEVANT MARKETS AND DEFENDANTS' MARKET POWER

119.    NAR denies the allegations in Paragraph 119.

120.    NAR denies the allegations in Paragraph 120.

121.    NAR denies the allegations in Paragraph 121.

122.    NAR denies the allegations in Paragraph 122 concerning NAR. NAR otherwise currently lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 122 and therefore denies them.

123.    NAR denies the allegations in Paragraph 123.

## VI.    ANTICOMPETITIVE CONDUCT

124.    NAR denies the allegations in Paragraph 124.

125.    NAR denies the allegations in Paragraph 125.

126.    NAR denies the allegations in Paragraph 126.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    11

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1

## VII.    ANTICOMPETITIVE EFFECTS

2        127.    NAR denies the allegations in Paragraph 127.

3        128.    NAR currently lacks knowledge or information sufficient to form a belief about the

4    truth of the allegations in Paragraph 128 and therefore denies them.

5        129.    NAR currently lacks knowledge or information sufficient to form a belief about the

6    truth of the allegations in Paragraph 129 and therefore denies them.

7        130.    NAR denies the allegations in Paragraph 130.

8

## VIII.    CLAIMS

9

## COUNT I - UNREASONABLE RESTRAINT ON TRADE IN VIOLATION OF

10

## SECTION I OF THE SHERMAN ACT, 15 U.S.C. § 1

11        131.    NAR incorporates by reference its responses to Paragraphs 1-130.

12        132.    NAR admits that the language quoted in Paragraph 132 is contained in Section 1 of

13    the Sherman Act.

14        133.    NAR denies the allegations in Paragraph 133.

15        134.    NAR denies the allegations in Paragraph 134.

16        135.    NAR denies the allegations in Paragraph 135.

17        136.    NAR denies the allegations in Paragraph 136.

18        137.    NAR denies the allegations in Paragraph 137.

19        138.    NAR denies the allegations in Paragraph 138.

20        139.    NAR denies the allegations in Paragraph 139.

21        140.    NAR denies the allegations in Paragraph 140.

22        141.    NAR denies the allegations in Paragraph 141.

23

## COUNT II – FALSE ADVERTISING IN VIOLATION OF SECTION 1125 OF THE

24

## LANHAM ACT, 15 U.S.C. § 1125 (AGAINST ZILLOW)

25        142.    Because Count II is not asserted against NAR, no response is required.  To the extent

26    a response is required, NAR incorporates by reference its responses to Paragraphs 1-141.

27        143.    Because Count II is not asserted against NAR, no response is required.  To the extent

28    a response is required, NAR denies the allegations in Paragraph 143.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

144.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 144.

145.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 145.

146.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 146.

147.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 147.

148.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 148.

149.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 149.

150.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 150.

151.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 151.

152.    Because Count II is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 152.

**COUNT III – FALSE ADVERTISING IN VIOLATION OF SECTION 1125 OF THE LANHAM ACT, 15 U.S.C. § 1125 (AGAINST NAR)**

153.    Because Count III was dismissed with prejudice by the Court (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 153.

154.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 154.

155.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 155.

156.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 156.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

157.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 157.

158.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 158.

159.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 159.

160.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 160.

161.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 161.

162.    Because Count III was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 162.

**COUNT IV – UNFAIR OR DECEPTIVE ACT OR PRACTICE VIOLATING RCW 19.86.020 OF THE WASHINGTON CONSUMER PROTECTION ACT (AGAINST ZILLOW)**

163.    Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR incorporates by reference its responses to Paragraphs 1-162.

164.    Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 164.

165.    Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR denies the allegations in Paragraph 165.

166.    Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 166 and therefore denies them.

167.    Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 167 and therefore denies them.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

168.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 168 and therefore denies them.

169.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 169 and therefore denies them.

170.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 170 and therefore denies them.

171.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 171 and therefore denies them.

172.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 172 and therefore denies them.

173.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 173 and therefore denies them.

174.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 174 and therefore denies them.

175.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 175 and therefore denies them.

176.     Because Count IV is not asserted against NAR, no response is required.  To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 176 and therefore denies them.

NAR's Answer and Counterclaim
Case No. 2:21-cv-00312-TSZ                               15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

177. Because Count IV is not asserted against NAR, no response is required. To the extent a response is required, NAR currently lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 177 and therefore denies them.

178. Because Count IV is not asserted against NAR, no response is required. To the extent a response is required, NAR denies the allegations in Paragraph 178.

**COUNT V – UNFAIR OR DECEPTIVE ACT OR PRACTICE VIOLATING RCW 19.86.020 OF THE WASHINGTON CONSUMER PROTECTION ACT (AGAINST NAR)**

179. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 179.

180. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 180.

181. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 181.

182. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 182.

183. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, , and NAR thus denies the allegations in Paragraph 183.

184. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 184.

185. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 185.

186. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 186.

187. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 187.

188. Because Count V was dismissed by the Court with prejudice (see ECF 108), no response is required, and NAR thus denies the allegations in Paragraph 188.

**COUNT VI – CONSPIRACY TO RESTRAIN TRADE VIOLATING RCW 19.86.030 OF THE WASHINGTON CONSUMER PROTECTION ACT**

189.    NAR incorporates by reference its responses to Paragraphs 1-188.

190.    NAR admits that the Washington Consumer Protection Act includes the language quoted in Paragraph 190.

191.    NAR denies the allegations in Paragraph 191.

192.    NAR denies the allegations in Paragraph 192.

193.    NAR denies the allegations in Paragraph 193.

194.    NAR denies the allegations in Paragraph 194.

195.    NAR denies the allegations in Paragraph 195.

196.    NAR denies the allegations in Paragraph 196.

197.    NAR denies the allegations in Paragraph 197.

198.    NAR denies the allegations in Paragraph 198.

199.    NAR denies the allegations in Paragraph 199.

200.    NAR denies the allegations in Paragraph 200.

201.    NAR denies the allegations in Paragraph 201.

**COUNT VII – DEFAMATION**

202.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF 108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline, no response by NAR is required, and NAR thus denies the allegations in Paragraph 202.

203.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF 108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline, no response by NAR is required, and NAR thus denies the allegations in Paragraph 203.

204.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF 108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline, no response by NAR is required, and NAR thus denies the allegations in Paragraph 204.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                17

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1    205.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

2    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

3    no response by NAR is required, and NAR thus denies the allegations in Paragraph 205.

4    206.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

5    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

6    no response by NAR is required, and NAR thus denies the allegations in Paragraph 206.

7    207.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

8    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

9    no response by NAR is required, and NAR thus denies the allegations in Paragraph 207.

10    208.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

11    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

12    no response by NAR is required, and NAR thus denies the allegations in Paragraph 208.

13    209.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

14    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

15    no response by NAR is required, and NAR thus denies the allegations in Paragraph 209.

16    210.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

17    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

18    no response by NAR is required, and NAR thus denies the allegations in Paragraph 210.

19    211.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

20    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

21    no response by NAR is required, and NAR thus denies the allegations in Paragraph 211.

22    212.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

23    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

24    no response by NAR is required, and NAR thus denies the allegations in Paragraph 212.

25    213.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

26    108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

27    no response by NAR is required, and NAR thus denies the allegations in Paragraph 213.

28

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                18

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1    214.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

2  108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

3  no response by NAR is required, and NAR thus denies the allegations in Paragraph 214.

4    215.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

5  108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

6  no response by NAR is required, and NAR thus denies the allegations in Paragraph 215.

7    216.    Because Count VII, as asserted against NAR, was dismissed by the Court (see ECF

8  108) and REX did not amend its complaint to maintain Count VII by the Court-ordered deadline,

9  no response by NAR is required, and NAR thus denies the allegations in Paragraph 216.

## IX.    PRAYER FOR RELIEF

11    The allegations following Paragraph 216 are REX's prayer for relief, to which no response

12  is required.  To the extent a response is required, NAR denies any allegations following Paragraph

13  216 and denies that REX is entitled to any relief.

## X.    DEMAND FOR JURY TRIAL

15    REX's demand for a jury trial asserts no allegations and therefore requires no response.

16  NAR demands a jury trial on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    19

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

## AFFIRMATIVE DEFENSES

### First Defense

REX's claims are barred, in whole or in part, because REX lacks standing to pursue its asserted claims.

### Second Defense

The NAR rules identified in REX's amended complaint each have a legitimate business justification.

### Third Defense

The NAR rules and NAR conduct identified in REX's amended complaint are lawful, justified, procompetitive, pro-consumer; are carried out in NAR's legitimate business interests; and constitute bona fide competitive activity, the benefits of which outweigh any alleged anticompetitive effects.

### Fourth Defense

REX's claims are barred, in whole or in part, because, to the extent any damages do exist, they were caused by REX's failure to mitigate its damages, through co-listing, choosing to advertise on platforms other than Zillow, or otherwise.

## COUNTERCLAIM

1.      Contrary to its marketing, REX is not an innovator.  Its marketing and PR campaign is built on outright falsehoods and statements that—at best—are likely to mislead or confuse consumers.

2.      REX claims it was founded to be "the first licensed residential brokerage that uses AI and big data to push past the outmoded business practices of traditional realtors with the goal of providing dramatically better outcomes and experiences for both buyers and sellers at a dramatically lower cost."

3.      From its inception, REX has sought to draw a distinction between its services and those offered by members of NAR by publicly promoting itself as an "innovator" and accusing NAR and its members of engaging in illegal or unfair conduct.

4.      Yet, as detailed below, REX is a follower that provides the same types of services as thousands of other brokerages have long provided before it, and often in ways that are cheaper and better than REX.

5.      REX's marketing is therefore likely to mislead or confuse consumers by falsely claiming REX's clients pay no buyer-agent commissions, that its technology is innovative, and that its seller side commissions are low.

6.      Instead of accurately marketing its services, REX has attacked NAR with falsities in an attempt to mislead or confuse consumers into thinking REX is something that it is not.

### *REX Falsely Claims Its Clients Do Not Pay Buyer-Agent Commissions*

7.      REX maintains a website at www.rexhomes.com, where it publicly advertises its services to home buyers and sellers.

8.      On its website, REX claims:  "Traditional agents charge 5-6%. Discount brokers, like Redfin, say they only charge a 1% "listing fee", but if you read the fine print, you will see it's more like 4% total, since sellers also pay the buyer's agent commission. ***REX charges a low fee by totally eliminating the buy side agent commission.*** By using data and technology to identify buyers directly, REX can charge less and make the selling experience a breeze." Exhibit 1 (emphasis added).

NAR's ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    21

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

9.      In a blog post on its website, REX claims a benefit of its model for home sellers is: "**No buyer's agent fee** – This can save you thousands of dollars. ***Even if your buyer is working with a non-REX agent, <u>REX doesn't ask sellers to cover the cost</u>***."  Exhibit 2 (emphasis added)

10.     In another blog post, REX claims that when a seller chooses to list her home with REX, "no additional buyer's agent commission [is] required."  Exhibit 3.

11.     The blog post continues: "REX's services cost significantly less when compared with those of traditional real estate agents," who are "members of the National Association of Realtors (NAR)."  Exhibit 3.

12.     In the same blog post, REX claims that NAR's rules and policies "guarantee[] real estate agents a certain commission on each transaction while inflating consumer home prices by as much as $50 billion per year."  Exhibit 3.

13.     REX further claims on its website: "By removing the obligation to pay two agent commissions for a single transaction, [REX] save[s] [its] customers an average of $10,435 off their home sales – while also helping them find additional savings on mortgage, escrow, title, and insurance."  Exhibit 4.

14.     On the homepage of its website, REX claims: "At REX, you've been trusting us to help buy or sell your home for years.  We recognize that opportunity is everywhere, which is why we've decided to begin listing on the MLS — ***all while still bypassing traditional agent fees***, saving you money." Exhibit 5 (emphasis added).

15.     Contrary to these claims, sellers who list their homes for sale with REX do in fact pay buyer-agent commissions.

16.     In a public interview, REX's General Counsel, Michael Toth, admitted that home sellers working with REX "absolutely" pays buyer agent commissions.  Exhibit 6.

17.     In Toth's own words:  "[I]f we have a seller who's selling a home and there's an agent who's representing the buyer who's looking for a certain commission and the seller is willing to pay that commission once it comes up and it's negotiated, then absolutely with the seller's wishes we will represent that seller and pay out that commission at close."  Exhibit 6.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

18.     Moreover, in this litigation, REX's CEO, Jack Ryan, admitted that REX "assist[s] in facilitating the payment of a buyer commission by requesting that buyer agents disclose their fee and that it be negotiated, adjusting the closing price of the house if requested." ECF 8 ¶ 9.

19.     REX's claims about buyer-agent commissions are likely to mislead consumers.

20.     REX's advertising boasts, repeatedly and without reservation, that home sellers who list their homes with REX do not pay buyer-agent commissions.

21.     REX's advertisements do not adequately disclose that when a home buyer is represented by an agent and refuses to pay her agent's fee out of her own pocket, the home seller may have to pay some or all of the commission owed to the buyer's agent to close the sale.

22.     At best, REX's business model is premised on offering sellers a discounted commission, but there is nothing novel or innovative about REX's approach.

23.     Beyond REX, there are many other brokerage firms and agents—including members of NAR—that offer sellers commissions that are below 3%.

24.     For example, Redfin, a brokerage firm based in Seattle, Washington, which is a member of NAR, publicly advertises a 1.5% commission for home sellers.

25.     But Redfin, unlike REX, simultaneously discloses: "Buyer's agent fee not included, e.g., if buyer's agent fee is 2.5%, seller will pay a total fee of 3.5%."

***REX Falsely Claims Its Technology Is Innovative and Allows REX to Lower Commissions***

26.     REX boasts that it has superior technology that, unlike multiple listing services, can proactively identify the perfect buyer for a seller's property using artificial intelligence and data analytics.

27.     For example, REX's website states:  "Our tech geniuses have come up with algorithms and computations that use data and AI to find qualified buyers.  We then actively market your home to those buyers across a broad range of targeted channels like Zillow, Trulia, Google, Facebook, Instagram, Bing, as well as in print. Simply put, we don't wait for your perfect buyer to find us. We find them." Exhibit 1.

28.     In other public advertisements on its website, REX states:

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    23

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1
2
3

> We created REX in 2015 to be the first licensed residential brokerage that uses AI and big data to push past the outmoded business practices of traditional realtors with the goal of providing dramatically better outcomes and experiences for both buyers and sellers at a dramatically lower cost.

4
5

> ***Critically, we exist outside what is known as the Multiple Listing Service (MLS) system***, the loose confederation of realtor organizations that maintain artificially high fees even though the Internet has radically reduced the value traditional realtors offer to consumers.

6
7

> That sets us apart from other real estate firms that describe themselves as technology-enabled disrupters ***but remain compliant with the MLS***, a confederation of around 750 realtor organizations that maintain restrictive practices.

8   Exhibit 7 (emphasis added)

9       29.    Later in the same blog post, REX claims:

10
11

> As a technology company, REX started by collecting data from a wide variety of sources – from census data to purchaser habits at big box retailers – and then organizing it in a secure cloud environment where it can be easily accessed and studied.

12
13

> Using machine learning, we've built predictive analytics that can target and accurately match sellers and buyers of properties.

14

> ***By more efficiently pairing sellers and buyers, we can reduce costs for all involved--REX charges a fixed 2% covering both sides of the transaction instead of the 5-6% customarily enforced by MLS participants***.

15
16   Exhibit 7 (emphasis added).

17       30.    On its website, REX further claims: "REX uses smart, direct and cost-effective

18   marketing to drive traffic to each listing through proprietary data-driven algorithms.   Smarter

19   marketing enables us to sell homes faster, while avoiding buy-side agent commissions of 2-3%."

20   Exhibit 8.

21       31.    All of these claims made by REX about its technology and its superiority to the

22   multiple listing service system are false or—at minimum—are likely to mislead consumers.

23       32.    Contrary to its marketing that it uses artificial intelligence to market properties

24   directly to buyers, REX has claimed that its ability to display its listings on Zillow's website, in its

25   preferred location, is "necessary to compete" and that "without access to aggregators like Zillow,

26   REX is deprived of a level playing field." ECF 5 at 10-11.

27       33.    According to REX's CEO, "REX listings' inclusion on Zillow's sites has been

28   critical to REX's ability to reach consumers directly." ECF 8 ¶ 19.

NAR's ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                          24

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

34.     In other words, the viability of REX's business hinges on its ability to access and use proprietary technology that was built by one of its putative competitors on the exact terms that it wants.

35.     In this litigation, REX also submitted an email, received from one of its customers, in which the customer wrote, "Wow!!! NO SHOWINGS THIS PAST WEEKEND!! . . . We would like to get this [property] on MLS ASAP.  The REX marketing is not working."  ECF 10, Ex. C.

36.     If REX's technology in fact did what it claims—finding buyers using artificial intelligence outside of the multiple listing service—REX could not claim, as it has in this lawsuit, that it must have access to Zillow's website, on the first tab, to compete.

37.     The foregoing false and misleading claims about REX's technology have been specifically promoted by REX to convince consumers that there is something special about REX's services that allow it to unlock lower prices without using multiple listing services to find in-market buyers.

38.     REX's CEO has publicly stated:

> ***What happens in the traditional process is you ask to list your home, and someone puts up a yard sign, and they put it on the MLS.***
>
> That's a very passive activity and most people—most vendors of products—don't put it on a website and say 'That's enough. I hope someone checks out this website.'
>
> What we do is much more than an agent does because we have PhDs from the best schools in the country predicting who we think within a certain radius or square mile or demographic is the best buyer for your home, and then dropping them a note.

Exhibit 9.

39.     In another public interview, REX's CEO stated:

> [W]e find buyers by going to the internet directly, find them on the web directly through ways of putting out ads. And we see who hits on the ad digitally.  Where they live, what their demographics are, and we find other people just like those people who may want to see this home.  So go around the MLS, go around agents, go directly to people on the web.  . . .
>
> So most people come to sell their home and then we target people who would like to buy that home.  ***Not using the MLS, not using agents, but just using digital technology to identify them.***  So we can attach a physical address to an IP address. So we think that if you live in this home that you're a good buyer of this other home, we can drop an ad right into your computer to let you know about that home.

Exhibit 10.

NAR's Answer and Counterclaim
Case No. 2:21-cv-00312-TSZ                    25

*REX Falsely Claims NAR Is Anti-Consumer and Engaged in Criminal Conduct*

40.     Unable to gain traction in the marketplace with its preferred approach—offering fees that are no lower than its competition and relying on technology built by someone else—REX had to find someone else to blame for its faults.

41.     REX has publicly advertised that NAR and its members, including REALTOR® association-owned multiple listing services, have conspired to suppress competition and artificially inflate prices.

42.     For example, REX has advertised that "the National Association of Realtors (NAR), which represents more than 1.3 million Realtors, has enacted a series of anti-competitive policies – including making agent commissions non-negotiable to brokers who want to put their listings on the MLS – to prevent competitors from offering consumers lower transaction fees." Exhibit 4.

43.     NAR rules and multiple listing service policies never prohibit negotiations between the listing broker and a cooperating broker at any time during the transaction.

44.     Standard of Practice 3-3 from NAR's Code of Ethics & Standards of Practice expressly authorizes the listing broker and cooperating broker to come to an agreement to change cooperative compensation, and that can happen before a property is shown, after showing, or even after an offer is accepted.

45.     REX also has publicly claimed that NAR and multiple listing services are engaged in criminal activity—repeatedly calling them a "cartel."

46.     Indeed, notwithstanding the Court's June 9, 2021 order, in which "[t]he Court discourage[d] any future use of the term 'cartel' to describe Defendants' conduct, which is neither persuasive nor remotely accurate," ECF 80 at 11 n.7, REX has continued to call publicly label NAR a cartel.

47.     Less than one month after the Court's order, on July 1, 2021, REX issued a press release in which the headline on REX's website called an investigation a "Probe into NAR Cartel's Practices."

48.     The body of the piece included a quote from REX's CEO, who called NAR "the real estate cartel." Exhibit 11.

1  49. As another example, on July 8, 2021, Michael Toth, REX's General Counsel,

2 published an op-ed in the *Wall Street Journal* that was headlined, "Warning to the Real-Estate

3 Cartel." Exhibit 12. REX posted an excerpt from the article to its website on July 9, 2021, under

4 the same headline. Exhibit 13.

5  50. And on September 15, 2021, REX issued a press release in which Mr. Toth

6 characterized "NAR['s] . . . business model" as "cartel economics" and called NAR and its

7 members "the real estate cartel." Exhibit 14.

8    **REX's Campaign of Lies Has Disparaged NAR and Harmed Its Reputation**

9  51. REX's campaign of false claims about its own services, false statements about

10 multiple listing services affiliated with NAR, and false claims about NAR, including those identified

11 above, has deceived consumers.

12  52. NAR is not a competitor to REX and is not claiming it was injured because it is a

13 competitor to REX.

14  53. Nevertheless, as a result of REX's false claims, NAR has been harmed.

15  54. NAR is the owner of the REALTOR® registered collective membership mark, which

16 can only be used by real estate professionals who are members of NAR.

17  55. NAR publishes the Handbook on Multiple Listing Policy, which includes model

18 enabling provisions for the establishment and operation of a multiple listing services by associations

19 of REALTORS®.

20  56. The mandatory rules in the Handbook on Multiple Listing Policy establish, among

21 other things, a standard framework for MLS Participants to share listings data, including the

22 information fields to be shared with other brokers to deliver listings via websites, mobile apps, and

23 audio devices.

24  57. That framework reduces transaction costs by allowing multiple listing services to

25 pool the relevant data about listings in their local area and then syndicate that data to brokers and

26 online portals (like Zillow) so that information can be ingested and easily displayed to the public.

27  58. Multiple listing services increase competition. Without multiple listing services,

28 there likely would be separate systems of cooperation between buyers and sellers, and their agents,

NAR'S ANSWER AND COUNTERCLAIM      QUINN EMANUEL URQUHART & SULLIVAN, LLP
Case No. 2:21-cv-00312-TSZ   27    1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

fragmenting property information, and reducing the access buyers and sellers have to each other. Sellers benefit from multiple listing services by obtaining increased exposure to their property. Buyers benefit because they can obtain information about all MLS-listed properties while working with only one broker.  This lowers transaction costs, increases competition, and encourages fair housing.  Multiple listing services also level the playing field between brokerages, so that the smallest brokerage in town has access to almost all of the same inventory as the biggest, multi-state firm.

59.    REX's false public advertisements about its own services blame the mandatory rules in NAR's Handbook and Multiple Listing Policy for what it characterizes as "inflated fees."

60.    REX's false advertisements are specifically intended to convince consumers to use REX's services through the false allegation that NAR, through its rules governing multiple listing services, has artificially inflated commissions, hindered the development of technology for home listings, and engaged in unlawful or unfair conduct.

61.    REX has used false statements about its services in attempts to persuade consumers to use its services instead of those offered by multiple listing services and members of NAR.  For example, in the blog post in which REX claims that, when a seller chooses to list her home with REX, "no additional buyer's agent commission [is] required," REX goes on to claim that this differentiates REX's service from NAR members' services.  REX claims that its "services cost significantly less when compared with those of traditional real estate agents," and "[o]ne reason is that most working real estate agents are members of the National Association of Realtors (NAR)." Exhibit 3.  REX also claims that it "poses a direct challenge to the dual commission structure set by NAR, charging sellers a flat 2-2.5% listing fee without sacrificing any of the services offered to the buyer or seller."  *Id.*

62.    When consumers are deceived into avoiding multiple listing services they lose the pro-competitive benefits created by multiple listing services.  Sellers lose exposure to the largest available pool of buyers.  Buyers lose access to the largest available pool of properties for sale.

63.    As a result of REX's false statements, NAR's goodwill and reputation, both with its own members and consumers, has been harmed.

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1

**PARTIES**

2          64.      Counterclaim-Plaintiff National Association of REALTORS® is a non-profit

3   corporation under the laws of the State of Illinois with its principal place of business at 430 N

4   Michigan Avenue in the City of Chicago and State of Illinois.

5          65.      Counterclaim-Defendant REX – Real Estate Exchange, Inc. is a Delaware

6   corporation, with its principal place of business at 3300 N Interstate Hwy 35, Suite 149, in the City

7   of Austin and State of Texas.

8                      **JURISDICTION AND VENUE**

9          66.      This Court has subject matter jurisdiction over NAR's counterclaim under federal

10  law pursuant to 28 U.S.C. §§ 1331 and 1338.

11         67.      Venue for NAR's counterclaim is proper in this district under 28 U.S.C. § 1391(b)

12  and (c)(2) because, among other reasons, having filed its action in this district, REX is subject to

13  personal jurisdiction in this district and also subject to venue in this district.

14            **COUNTERCLAIM COUNT I: FALSE ADVERTISING**

15                **(LANHAM ACT 15 U.S.C. § 1125(a))**

16         68.      NAR realleges and incorporates by reference the allegations in Paragraphs 1-67 as if

17  stated herein.

18         69.      REX has, through its false statements about payment of buyer-agent commissions,

19  its statements about its purportedly innovative technology, and its statements about NAR, made

20  false and misleading statements of fact in commercial advertisements about REX's products,

21  services, and commercial activities.

22         70.      REX's conduct is knowing, intentional, and willful.  REX intended to, and did in

23  fact, confuse and mislead consumers into believing that sellers who list their homes for sale with

24  REX do not pay buyer-agent commissions; that REX's technology allows it to unlock lower prices

25  for clients without using multiple listing services to find in-market buyers; and that NAR, through

26  its rules governing multiple listing services, has artificially inflated commissions, hindered the

27  development of technology for home listings, and engaged in unlawful or unfair conduct.

28

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    29

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000

1    71.    REX's statements of fact are material and are likely to influence the purchasing

2  decisions of consumers.

3    72.    REX caused its false statements to enter interstate commerce.  REX published the

4  false statements on the internet and did so to deceive or mislead consumers in multiple markets and

5  multiple states.

6    73.    As a proximate result of REX's actions, NAR has suffered and is likely to continue

7  to suffer harm to its reputation and a lessening of the goodwill associated with its services and

8  commercial activities.  This harm is ongoing.  REX continues to harm NAR through false claims

9  that REX offers low commissions and superior technology while NAR has artificially inflated

10  commissions, hindered the development of technology for home listings, and engaged in unlawful

11  or unfair conduct.  NAR is entitled to injunctive relief under 15 U.S.C. § 1116(a), permanently

12  restraining REX from making false statements about its services and commercial activities and from

13  making false statements about NAR's services and commercial activities.

14    74.    Under 15 U.S.C. § 1117(a), NAR is entitled to an order requiring REX to account to

15  NAR for any and all profits derived by REX from its actions, and awarding all damages sustained

16  by NAR that were caused by REX's conduct, both to be increased in accordance with the applicable

17  provisions of law.

18    75.    REX's conduct also makes this an exceptional case under 15 U.S.C. § 1117(a), so

19  NAR is entitled to an award of attorneys' fees and costs.

20                              **PRAYER FOR RELIEF**

21  Wherefore, NAR requests the following relief:

22          a.    damages in an amount to be determined at trial;

23          b.    treble damages, pursuant to 15 U.S.C. § 1117(a);

24          c.    disgorgement of REX's illicit profits, pursuant to 15 U.S.C. § 1117(a);

25          d.    injunctive relief, including but not limited to an injunction barring REX's
26               conduct alleged herein;

          e.    declaratory relief as alleged herein;
27
          f.    attorneys' fees;
28

NAR'S ANSWER AND COUNTERCLAIM
Case No. 2:21-cv-00312-TSZ                    30

g.    costs; and

h.    such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, NAR demands a jury trial on all issues triable by a jury.

DATED: January 27, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Thomas C. Rubin*
Thomas C. Rubin, WSBA #33829
1109 First Avenue, Suite 210
Seattle, WA 98101
Tel: (206) 905-7000
Fax: (206) 905-7100
tomrubin@quinnemanuel.com

Ethan Glass (*pro hac vice*)
Michael D. Bonanno (*pro hac vice*)
Kathleen Lanigan (*pro hac vice*)
Peter Benson (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Tel: (202)538-8000
Fax: (202) 538-8100
ethanglass@quinnemanuel.com
mikebonanno@quinnemanuel.com
katlanigan@quinnemanuel.com
peterbenson@quinnemanuel.com

*Attorneys for Defendant and Counterclaim-Plaintiff National Association of REALTORS®*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on January 27, 2022, I caused a copy of the foregoing to be filed in this

3  Court's CM/ECF system, which will send notification of such filing to counsel of record.

4        DATED: January 27, 2022

5

6

7                               */s/ Thomas C. Rubin*
                                Thomas C. Rubin, WSBA #33829

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NAR's Answer and Counterclaim
Case No. 2:21-cv-00312-TSZ      32

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000