UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW, INC.; ZILLOW GROUP, INC.; ZILLOW HOMES, INC.; ZILLOW LISTING SERVICES, INC.; TRULIA, LLC; and THE NATIONAL ASSOCIATION OF REALTORS, <br><br> Defendants. | C21-312 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on the motion to dismiss, docket no. 115, filed by Counterclaim-Defendant REX – Real Estate Exchange, Inc. ("REX"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**<u>Background</u>**

On January 27, 2022, the National Association of REALTORS® ("NAR") filed its responsive pleading, docket no. 114. In its responsive pleading, NAR raises a counterclaim against REX for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). Countercl. at ¶¶ 68–75 (docket no. 114). NAR alleges that REX has made numerous "false and misleading statements of fact in commercial advertisements about

ORDER - 1

REX's products, services and commercial activities." *Id.* at ¶ 69.  NAR challenges a number of statements posted on REX's website, www.rexhomes.com, concerning whether REX's clients pay buyer-agent commission fees and whether REX's technology is innovative, as well as statements alleging that NAR has enacted anticompetitive policies that artificially inflate fees in real estate transactions.  *See id.* at ¶¶ 7–50.  NAR alleges that REX's statements have harmed NAR's goodwill and reputation with its own members and consumers.  *Id.* at ¶ 63.  REX now moves to dismiss NAR's counterclaim on grounds that NAR:  (i) lacks Article III standing, (ii) lacks statutory standing under the Lanham Act, and (iii) cannot use the Lanham Act to chill REX's constitutional right to challenge conduct it believes harms consumers.  *See generally* Mot. to Dismiss (docket no. 115).

**Discussion**

**1.     Article III Standing**

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  In its motion to dismiss NAR's counterclaim, REX presents a facial, rather than a factual, jurisdictional challenge.  A facial attack asserts that the allegations of the pleading are insufficient on their face to invoke federal jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  With respect to a facial challenge under Rule 12(b)(1), a plaintiff is entitled to the same safeguards that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Friends of Roeding Park v. City of Fresno*, 848 F. Supp. 2d 1152, 1159 (E.D. Cal. 2012).

The allegations of the complaint are presumed to be true, *id.*, and the Court may not consider matters outside the pleading without converting the motion into one for summary judgment, *see White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

To bring suit in federal court, a plaintiff must have suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States Constitution. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Three elements are required to establish the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal citations and quotations omitted). A plaintiff must clearly allege facts demonstrating every element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal citations and quotations omitted).

An organization can bring suit in federal court under two theories of standing: (i) by suing on its own behalf, or (ii) by suing on behalf of its members. In this case, NAR brings the counterclaim on its own behalf. *See* Countercl. at ¶ 53 (claiming that

ORDER - 3

NAR has been harmed by REX's allegedly false advertisements). Like any individual, to sue on its own behalf, an organization must demonstrate that it suffered an injury in fact. *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). "An organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" *Id.* (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)).[1] REX contends that NAR's counterclaim must be dismissed because NAR did not plead sufficient facts to establish that it suffered an injury in fact. NAR does not dispute that it failed to plead facts demonstrating a frustration of its organizational mission and a diversion of its resources. Rather, NAR argues that it pleaded sufficient facts to establish that it suffered a reputational injury. In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, (2021), the Supreme Court explained that "various intangible harms," such as reputational harm, can qualify as concrete injuries for standing purposes. *Id.* at 2204; *see also Meese v. Keene*, 481 U.S. 465, 479 n.14 (1987) ("[T]he risk of this reputational harm, as we have held earlier in this opinion, is sufficient to establish appellee's standing to litigate the claim on the merits.").

NAR cites *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001), and *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989), for the proposition that an organization's allegations of reputational injury, standing alone, are

---

[1] *See also Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004); *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).

ORDER - 4

sufficient to establish injury in fact.  These cases, however, do not support NAR's argument.  Unlike in *Walker*, in which the organization was not paid for its services for several months, was the subject of a performance complaint to a third party, lost staff time responding to retaliatory activities, and lost other contracts, *see* 272 F.3d at 1124, in this matter, NAR fails to allege anything more than generalized reputational harm.[2]  The organization in *Walker* also alleged that it "suffered injury in its ability to carry out its purposes . . . ."  *Id.* at 1124.  Likewise, in *Presbyterian Church*, the Ninth Circuit found that various church plaintiffs sufficiently alleged injury analogous to reputational or professional harm that "interfered with the churches' ability to carry out their religious mission."  870 F.2d at 522–23.  The churches alleged that government surveillance efforts occurring in the churches "impaired the churches' ability to carry out their religious missions" by deterring members from attending religious observances.  *Id.* at 521–23.  The churches also alleged that "clergy time [was] diverted from regular pastoral duties" as a direct result of the challenged conduct.  *Id.* at 522.  Unlike the organizations in *Walker* and *Presbyterian Church*, NAR does not allege a frustration of its mission or a diversion of its resources.

In this case, NAR contends that REX has harmed NAR through the following allegedly false claims:  (i) REX offers low commissions and has superior technology,

---

[2] In *Walker*, the Ninth Circuit reviewed a district court order concerning summary judgment.  272 F.3d at 1124 ("Because this case is at the summary judgment stage, the [organization] must support [its] allegations with 'specific facts.'" (citing *Lujan,* 504 U.S. at 561)).  Accordingly, the Ninth Circuit used a different legal standard than the standard applicable to this Court's consideration of REX's motion to dismiss.

ORDER - 5

(ii) NAR has artificially inflated commissions and hindered the development of technology for home listings, and (iii) NAR has engaged in unlawful or unfair conduct. Countercl. at ¶ 73.  NAR does not allege that any consumers or brokers have withheld trade from NAR as a result of the advertisements.  Instead, NAR alleges, in a conclusory fashion, that its "goodwill and reputation, both with its own members and consumers, has been harmed." *Id.* at ¶ 63.  NAR has not, however, alleged facts explaining how REX's purportedly false advertisements have frustrated its mission or caused it to divert its resources.  Nor has NAR alleged sufficient facts to explain how REX's advertisements to consumers harm NAR's reputation and goodwill among its own members, who NAR does not claim were misled.  *See id.* at ¶ 1 ("[REX's] marketing and [public relations] campaign is built on outright falsehoods and statements that—at best—are likely to mislead or confuse consumers.").  The allegations in NAR's counterclaim are insufficient to show that the reputational harm it has allegedly suffered is concrete and particularized.

Therefore, the Court concludes that NAR has not alleged facts sufficient to demonstrate an injury in fact for Article III standing.

**2.    Statutory Standing and First Amendment Protection**

REX also argues, under Rule 12(b)(6), that NAR has failed to state a claim for false advertising under the Lanham Act because NAR lacks statutory standing and is allegedly using the Lanham Act to chill REX's constitutional rights.

**a.    Rule 12(b)(6) Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

ORDER - 6

contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on REX's motion to dismiss, the Court must assume the truth of the NAR's allegations and draw all reasonable inferences in its favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the counterclaim sufficiently state a "plausible" ground for relief. *See Twombly*, 550 U.S. at 570.  If the Court dismisses the counterclaim or portions thereof, it must consider whether to grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

      **b.**     **Statutory Standing Under the Lanham Act**

REX contends that NAR lacks statutory standing to bring a claim for false advertising.  A claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), requires proof of the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  The Lanham Act does not allow all factually injured parties to recover. *Lexmark Int'l, Inc. v.*

ORDER - 7

1 *Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  Instead, "a direct application
2 of the zone-of-interests test and the proximate-cause requirement supplies the relevant
3 limits on who may sue."  *Id.* at 134.  First, "to come within the zone of interests in a suit
4 for false advertising under [the Lanham Act], a [party] must allege an injury to a
5 commercial interest in reputation or sales."  *Id.* at 131–32.  Next, under the proximate-
6 cause requirement, a party ordinarily must show economic or reputational injury flowing
7 directly from the deception that occurs when the alleged false advertisements cause
8 consumers to withhold trade from the claimant.  *Id.* at 133.  When the parties are in direct
9 competition, a misrepresentation will give rise to a presumed commercial injury that is
10 sufficient to establish standing.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820,
11 827 (9th Cir. 2011).

12     NAR satisfies the zone-of-interests test in this case because NAR alleges an injury
13 to a commercial interest in its reputation.  Countercl. at ¶ 63; *see also Lexmark*, 572 U.S.
14 at 131–32.  Accordingly, the Court turns to the proximate-cause requirement.  In its
15 responsive pleading, NAR admits that it "is a trade association with approximately 1.5
16 million members and that it advocates for the interests of buyers and sellers of residential
17 real estate and for brokers."  Answer at ¶ 23 (docket no. 114).  In contrast, REX is a
18 licensed broker and employs licensed real estate agents in various states, including
19 Washington.  Am. Compl. at ¶ 39 (docket no. 99).  NAR acknowledges that it "is not a
20 competitor to REX and is not claiming it was injured because it is a competitor to REX,"
21 Countercl. at ¶ 52, so NAR is not entitled to a presumption of commercial injury.

22

23

ORDER - 8

A plaintiff must plead some factual support to allege a plausible commercial injury. *Thermolife Int'l, LLC v. NeoGenis Labs, Inc.*, No. 18-cv-2980, 2019 WL 1438293, at *6 (D. Ariz. Apr. 1, 2019). The counterclaim alleges that REX published false statements about its own services "to persuade consumers to use its services instead of those offered by multiple listing services and members of NAR." Countercl. at ¶ 61. Because NAR does not bring the counterclaim on behalf of its members, NAR must allege facts showing that its reputational injury flows directly from REX's purportedly false advertisements and that REX's "deception of consumers cause[d] them to withhold trade from [NAR]." *Lexmark*, 572 U.S. at 133.

NAR alleges that REX's statements have harmed its reputation and goodwill among consumers and its own members. Countercl. at ¶¶ 63 & 73. NAR also alleges that "[w]hen consumers are deceived into avoiding multiple listing services they lose the pro-competitive benefits created by multiple listing services. Sellers lose exposure to the largest available pool of buyers. Buyers lose access to the largest available pool of properties for sale." *Id.* at ¶ 62. But, importantly, NAR has not alleged that any consumers or brokers have withheld trade from NAR itself. Thus, NAR's allegations are insufficient to plausibly allege statutory standing under the Lanham Act.

      **c.**     **First Amendment Protection**

REX also asserts that NAR has failed to state a Lanham Act claim for the following reasons: (i) REX's statements are not statements of fact made in commercial speech, and (ii) the *Noerr-Pennington* doctrine protects REX's right to challenge NAR's allegedly anticompetitive conduct.

ORDER - 9

i.  **Statements of Fact and Commercial Speech**

A claim for false advertising under the Lanham Act requires proof of a false statement of fact in a defendant's commercial advertisement. *Southland Sod Farms*, 108 F.3d at 1139. "Specific, quantifiable 'statements of facts' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626, 2020 WL 4039322, at *3 (N.D. Cal. July 17, 2020) (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008)). Commercial speech is "usually defined as speech that does no more than propose a commercial transaction." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). Nevertheless, "speech that does not propose a commercial transaction on its face can still be commercial speech." *Id.* (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–68 (1983)). A court must employ a "fact-driven" analysis when determining whether speech is commercial in nature. *Id.* (citation omitted).

REX argues that NAR has failed to sufficiently plead a Lanham Act claim for false advertising because the statements that NAR challenges are not statements of fact and were not made in commercial speech; however, "[t]hese are both factual inquiries that cannot be resolved on a 12(b)(6) motion." *See Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188, 2012 WL 5499871, at *3 (W.D. Wash. Nov. 13, 2012). In this case, NAR challenges a number of statements posted on REX's website, such as: "REX charges a low fee by totally eliminating the buyer side agent commission," "[e]ven if

your buyer is working with a non-REX agent, REX doesn't ask sellers to cover the cost," and "REX's services cost significantly less when compared with those of traditional real estate agents."  Countercl. at ¶¶ 8, 9 & 11.  NAR also alleges that REX posted statements on its website blaming NAR's rules and policies for "inflating consumer home prices by as much as $50 billion per year," while claiming that REX saves its customers "an average of $10,435 off their home sales."  *Id.* at ¶¶ 12 & 13.  Additionally, NAR alleges that REX falsely claims its technology is innovative when compared to the Multiple Listing Service ("MLS") system, which allows REX to "reduce costs for all involved—REX charges a fixed 2% covering both sides of the transaction instead of the 5-6% customarily enforced by MLS participants."  *Id.* at ¶ 29.  Although REX contends that its statements are constitutionally protected opinions about the legality of NAR's business model, NAR has alleged that posts on REX's website are false advertisements designed to promote REX's business and influence consumers to use REX's services.  NAR has identified specific statements that contain verifiable characteristics of REX's business.  That REX made certain statements to the media, and later posted those statements on its website, *see*, *e.g.*, Countercl. at ¶ 49, does not change the result at this stage of litigation.  Indeed, republication and dissemination of statements made to the media can constitute commercial speech.  *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, No. CV11-3473, 2015 WL 12683192, at *7 (C.D. Cal. Aug. 21, 2015).  NAR has plausibly alleged that the statements on REX's website are false statements made in commercial advertising.

ORDER - 11

### ii. The *Noerr-Pennington* Doctrine

Finally, REX argues that NAR is barred from bringing its counterclaim because the *Noerr-Pennington* doctrine shields REX from liability. Under the *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Although the doctrine arises from anti-trust law, the Supreme Court has expanded its application outside the antitrust field, *id.* at 930; however, "[n]either the United States Supreme Court nor the Ninth Circuit Court of Appeals has addressed the applicability of the *Noerr–Pennington* doctrine specifically to claims that arise under Section 43(a) of the Lanham Act," *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1084 (C.D. Cal. 2010).[3] NAR does not contend that the *Noerr–Pennington* doctrine cannot be applied to false advertising claims under the Lanham Act. Instead, NAR argues that the challenged statements do not relate to litigation or REX's efforts to petition the government.

Communications are protected under the *Noerr–Pennington* doctrine, "so long as they are sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935. Communications "incidental to a lawsuit" also fall within the protection of the *Noerr–Pennington* doctrine. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991,

---

[3] Other courts have held that the *Noerr–Pennington* doctrine should be applied to such claims. *See*, *e.g.*, *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV13-196, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013); *AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, No. SACV16-624, 2017 WL 3891214, at *3 (C.D. Cal. Jan. 19, 2017).

1007 (9th Cir. 2008). For example, in *Sliding Door Co. v. KLS Doors, LLC*, the court determined that the *Noerr–Pennington* doctrine barred defendants' claim for false advertising because the communication at issue, an email sent to consumers informing them that plaintiff had sued defendant for patent infringement, was sufficiently related to the petitioning activity of filing the lawsuit. 2013 WL 2090298, at *5–7.

Here, REX asserts that its efforts before the courts, the Department of Justice, and Congress, are protected speech under the under the *Noerr–Pennington* doctrine. REX argues that it has engaged in a campaign against NAR and its anticompetitive practices since 2018. REX further contends that it has successfully petitioned the Department of Justice to file a lawsuit against NAR and has defeated NAR's motions, docket nos. 84 and 101, to dismiss its antitrust claims in this action. The Court is not, however, convinced that the statements at issue in the counterclaim are incidental to REX's petitioning activities. NAR challenges a number of statements on REX's website in which REX describes its own services and technology, and how its services compare to those offered by individuals and organizations affiliated with NAR. *See*, *e.g.*, Countercl. at ¶ 8 ("REX charges a low fee by totally eliminating the buy side agent commission."), ¶ 9 ("Even if your buyer is working with a non-REX agent, REX doesn't ask sellers to cover the cost.") & ¶ 13 ("By removing the obligation to pay two agent commissions for a single transaction, [REX] save[s] [its] customers an average of $10,435 off their home sales."). NAR also challenges statements on REX's website in which REX describes the purported effect of NAR's rules and policies. *See*, *e.g.*, *id* at ¶ 12 (quoting a blog post on REX's website alleging that NAR's rules "inflat[e] consumer home prices by as much as

ORDER - 13

$50 billion per year"). These statements, which NAR alleges are contained in commercial advertisements on REX's website, are not sufficiently related to REX's petitioning activities.

Accordingly, the Court does not grant the motion to dismiss based on REX's argument that the communications at issue are non-commercial statements of opinion, or that its statements are protected by the *Noerr-Pennington* doctrine.

**3.    Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). A district court may exercise its discretion and deny leave to amend for a variety of reasons, including undue delay, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of amendment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). REX contends that amendment would be futile, but the Court is not convinced, and therefore exercises its discretion to grant NAR leave to amend its counterclaim.[4]

Therefore, NAR's counterclaim, docket no. 114, is DISMISSED with leave to amend.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

---

[4] In its reply, docket no. 119, REX argues for the first time that amendment would be futile because NAR's action is barred by the statute of limitations. Although NAR has not filed a surreply requesting that the Court strike this argument, *see* LCR 7(g), the Court is not required to consider it, and the argument is not persuasive at this stage of the proceeding.

ORDER - 14

(1) The motion to dismiss, docket no. 115, filed by Counterclaim-Defendant REX is GRANTED. NAR's counterclaim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), docket no. 114, is DISMISSED without prejudice and with leave to amend;

(2) NAR shall file any amended counterclaim on or before June 6, 2022; and

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 22nd day of April, 2022.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER - 15