The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

REX - REAL ESTATE EXCHANGE, INC.,

   Plaintiff,

   v.

ZILLOW, INC., et al.,

   Defendant.

Case No. 2:21-CV-00312-TSZ

**ZILLOW DEFENDANTS' MOTION TO COMPEL**

**NOTE ON MOTION CALENDAR:**
September 9, 2022

**ORAL ARGUMENT REQUESTED**

ZILLOW DEFENDANTS' MOTION
TO COMPEL: 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A. REX Largely Ceases Operations, Blaming Zillow and NAR ........................... 2

    B. Zillow Seeks to Confirm REX Has Adequately Preserved Relevant Information and Documents, to No Avail ........................................................ 3

    C. REX Amends its Initial Disclosures and Zillow Propounds Interrogatory No. 8 .................................................................................................................. 4

    D. REX Admits to Destruction of Potentially Relevant Material ........................... 5

    E. REX Provides Insufficient Responses to Discovery Inquiries ........................... 6

    F. Zillow Has in Good Faith Conferred with REX to Resolve This Dispute ......... 7

III. ARGUMENT ........................................................................................................................ 8

    A. REX Appears To Be Flouting its Preservation Obligations ............................... 8

    B. REX's Objections to Interrogatory No. 8 Are Baseless ................................... 10

    C. The Court Should Compel REX to Answer Interrogatory No. 8 and Designate a Rule 30(b)(6) Representative ....................................................... 12

IV. CONCLUSION ................................................................................................................... 12

ZILLOW DEFENDANTS' MOTION
TO COMPEL: 2:21-CV-00312-TSZ

- i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ball v. Manalto, Inc.*,
    No. C16-1523 RSM, 2017 WL 1788425 (W.D. Wash. May 5, 2017).................................8

*Glob. Music Rts., LLC v. Radio Music License Comm., Inc.*,
    No. CV 16-9051 TJH (ASX), 2020 WL 10692695 (C.D. Cal. Aug. 3, 2020).......................9

*Knickerbocker v. Corinthian Colleges*,
    298 F.R.D. 670 (W.D. Wash. 2014).............................................................................2, 8

*Lauer v. Longevity Med. Clinic PLLC*,
    No. C13-0860-JCC, 2014 WL 5471983 (W.D. Wash. Oct. 29, 2014) ............................8, 10

*Siskiyou Buckle Co., Inc. v. GameWear, Inc.*,
    No. CV 09-3073-CL, 2011 WL 13248530 (D. Or. Nov. 3, 2011).........................................9

*WeRide Corp. v. Kun Huang*,
    No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .............................9

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ...........................................................................................................8

Fed. R. Civ. P. 30(a) .............................................................................................................12

Fed. R. Civ. P. 30(b)(6) ....................................................................................................2, 12

Fed. R. Civ. P. 37(e) ...............................................................................................................9

LCR 37(a)(1) .........................................................................................................................7

## I.   INTRODUCTION

A party initiating a lawsuit has a fundamental obligation to preserve documents that the party knows, or should reasonably know, will be relevant to the litigation. But Plaintiff REX – Real Estate Exchange, Inc. ("REX") has failed to meet this most basic of discovery obligations and has stonewalled nearly every attempt to investigate the extent of its deficiencies. Worse, Plaintiff's failure to do so relates directly to an event that Plaintiff claims is the result of Defendants' alleged unlawful conduct. Such duplicity is not acceptable.

Since initiating this litigation in March 2021, REX—a self-proclaimed disruptive discount real estate brokerage—has now shuttered its residential business and laid off most of its employees, publicly placing the blame for its failure squarely on alleged actions by Zillow and NAR. In the aftermath of these layoffs, public sources reported that REX's employees were being told to keep their laptops as severance. Highlighting the perils of such a practice—buried in a footnote in a filing to this Court earlier this year—REX *admitted* to the destruction of documents on such a laptop by a former employee, who is a Court-ordered document custodian.[1]

Against this backdrop, Zillow has repeatedly sought assurances that REX has complied with its preservation obligations—including propounding an interrogatory seeking the identification of employees who were allowed to keep their REX issued laptops and the preservation efforts taken in relation thereto. *See* Ex. O, Zillow Defs.' Third Set of Interrogatories to Plaintiff REX – Real Estate Exchange, Inc. In addition, Zillow and NAR have sought confirmation that such employees received a litigation hold letter at the outset of this case. REX, however, has refused to provide any substantive response to Zillow's interrogatory or to provide sufficient information to address Defendants' reasonable inquiries about the extent of REX's failure to preserve information.

Given REX's allegations that its business faltered and failed as a result of actions taken by Zillow and NAR, the information contained on the laptops of its former employees, which may shed light on, among other things, other reasons for REX's failings entirely unrelated to

---

[1] *See* ECF 138 at 10 n.3 ("Angela Cook, who was included on REX's Amended Rule 26 disclosures *wiped her laptop after she was let go* and before current counsel was retained." (emphasis added)).

Zillow or NAR, is not only relevant but potentially critical to Zillow's defenses. Accordingly, Zillow respectfully requests that this Court order REX to provide the information Zillow has sought in its discovery request through an interrogatory response and a 30(b)(6) deposition.

## II.   BACKGROUND

On March 9, 2021, REX filed its original complaint in this litigation, along with a Motion for a Preliminary Injunction, alleging that defendants Zillow[2] and the National Association of Realtors ("NAR") (collectively, "Defendants") violated state and federal antitrust and consumer protection laws. *See* ECF 1, 5. At a minimum, that filing triggered an obligation for REX to maintain and preserve its documents.[3] After the denial of REX's motion for preliminary injunction, the parties began propounding discovery requests on one another in October and November 2021, and the Court entered an ESI Protocol on January 20, 2022. *See* ECF 113.

### A.   REX Largely Ceases Operations, Blaming Zillow and NAR

Nearly half a year after filing this lawsuit, REX quietly began layoffs in August of 2021. Najemy Decl.,[4] Ex. A, THE AMERICAN GENIUS, *Has REX Homes finally ceased operations?* (May 11, 2022). Then, in May 2022, news articles reported that REX might be ceasing operations entirely, and winding down. One article, published on May 11, reported that "[a]fter two rounds of layoffs, a restructure to join MLSs, and swirling rumors regarding leadership, staffers tell us [REX] has crumbled" and "it appears that as of today, [REX] has ceased operations." *Id*. The article further reported, "In August of 2021, REX Homes laid off 60 staff without severance, and on October 7th, 2021, REX Homes had their second round of layoffs – both times, staff said they were not initially given severance pay." *Id.* Another article reported that, during a Zoom call on May 6, 2022, REX's CEO announced that "the vast majority of [REX's] 180 workers would be laid off" and urged employees "to quickly clean out their desks."

---

[2] REX's initial Complaint named Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., Zillow Group Marketplace, Inc., and Trulia, LLC. *See* ECF 1. On March 30, 2021, Zillow Group Marketplace, Inc. was dismissed. *See* ECF 36. The remainder of the Zillow-affiliated entities named in the Complaint are collectively referred to herein as "Zillow" or the "Zillow Defendants."

[3] REX's obligation to preserve documents began earlier than the filing of its original complaint, at the time it anticipated bringing litigation against Zillow and NAR and should have known "evidence may be relevant to … future litigation." *See Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677 (W.D. Wash. 2014).

[4] Exhibits cited herein are to the Declaration of Laura Najemy in Support of Zillow Defs.' Motion to Compel.

ZILLOW DEFENDANTS' MOTION
TO COMPEL:  2:21-CV-00312-TSZ         - 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Ex. B, REALTRENDS, *REX lays off most of its employees, sources say* (May 11, 2022). It appears that what is left of REX is a "B-to-B" business "helping corporate landlords buy and sell homes." Ex. C, REALTRENDS, *REX survives as facilitator for corporate landlords* (May 23, 2022).

Around the time REX was shuttering its residential real estate business, it also replaced its original litigation counsel.[5] Public statements by REX executives (and REX's own discovery responses in this matter[6]) have blamed Zillow and NAR's allegedly anticompetitive conduct for its downsizing. Ex. F, INMAN, *Demise of discount brokerage REX may be imminent, reports indicate* (May 11, 2022); Ex. C.

### B. Zillow Seeks to Confirm REX Has Adequately Preserved Relevant Information and Documents, to No Avail

On May 12, 2022, the day following the article reporting that REX had "crumble[d]," Zillow wrote to REX asking REX to confirm in writing, that: "(a) REX has fully preserved all documents and other materials relevant to this litigation. . . ; and (b) in the winddown of REX's business operations, you and your client have made, and will undertake, all efforts to ensure that materials relevant to this litigation are not lost, destroyed or otherwise disposed." Ex. G, Letter from Jurata to Goldfarb (May 12, 2022). Shortly thereafter, counsel for Zillow discovered a former REX employee's May 8, 2022 post on Glassdoor (an online database of company reviews) providing "Advice to [REX] Management" that, "When you lay people off, don't tell them that their laptop is their severance." *See* Ex. H, Glassdoor Review (May 8, 2022).

REX did not respond to Zillow's May 12 letter. Zillow wrote again to REX on May 24, seeking a response to its earlier letter and raising the report regarding REX executives informing employees that they could keep their laptops as "severance." Ex. I, Letter from Jurata to Goldfarb (May 24, 2022). The letter specifically asked REX to confirm that it was ensuring all information available on REX-issued laptops of custodians was "appropriately accounted for in

---

[5] In April 2022, REX retained new counsel: Carney Badley Spellman, P.S. and Boies Schiller Flexner LLP. *See* ECF 125-134. On May 18, Foster Garvey, REX's initial attorneys, withdrew representation. ECF 135. On July 1, 2022, Foster Garvey provided notice of an attorneys' lien. Ex. D. McCarty Law PLLC, also attorneys for REX since the commencement of this litigation, has not yet filed a notice of withdrawal. The law firm of Lehotsky Keller LLP withdrew in January 2022. ECF 111.

[6] REX has also claimed in discovery that "due to Zillow's and NAR's anticompetitive conduct," it had "let about 250 employees go since January 2021." Ex. E, Plaintiff's Response to Zillow Defs.' Third Set of Interrogatories.

[REX's] preservation efforts." *Id.*  On May 25, REX responded that it "is cognizant of its discovery obligations, and has already taken steps to ensure it can fulfill its discovery obligations and will continue to take necessary steps to meet its discovery obligations."  But the letter provided no further detail and wholly ignored Zillow's requests pertaining to the preservation of REX-issued laptops.  Ex. J, Letter from Goldfarb to Jurata (May 25, 2022).  The next day, Zillow again wrote to REX to seek confirmation as to REX's document retention of employees' REX-issued laptops.  Ex. K, Letter from Jurata to Goldfarb (May 26, 2022).

### C. REX Amends its Initial Disclosures and Zillow Propounds Interrogatory No. 8

On May 26, 2022, REX served Amended Initial Disclosures, which removed 16 of the REX employees (or former employees) previously identified as likely to have discoverable or relevant information in REX's Initial Disclosures.[7]  *Compare* ECF 138-2, Plaintiff's Initial Disclosures ("REX's Initial Disclosures"), *with* ECF 138-5, Plaintiff's Amended Rule 26 Initial Disclosures ("REX's Amended Initial Disclosures").  Notably, the 16 removed individuals included six real estate agents who submitted declarations in support of REX's Motion for Preliminary Injunction.  *Compare* ECF 138-2, at 3-4, 8 *and* ECF 6, 9-14, *with* ECF 138-5.  According to their LinkedIn profiles, at least 14 of those 16 individuals were no longer employed by REX as of May 2022.  *See* Ex. L.

On June 1, 2022, REX finally responded to Zillow's inquiry regarding REX-issued laptops, confirming only that REX had taken and was taking additional steps to preserve information on "the laptops of its ***designated custodians*** and of the other current and former employees on its ***amended*** Rule 26 disclosures."  Ex. M, Letter from Goldfarb to Jurata (June 1, 2022) (emphasis added).  Still having received no answer to whether REX's former employees were allowed to leave with their REX-issued laptops before they were appropriately preserved, Zillow reminded REX that relevant information to the parties' claims or defenses, which REX

---

[7] It appears that REX amended its Initial Disclosures to remove several individuals in response to NAR's request that REX "expand its custodian list to include all persons identified as potential trial witnesses in its initial disclosures." ECF 138, at 3 (citing ECF 138-4, Bonanno Decl., Ex. 3 (Mar. 23, 2022 Email from Bonanno to Hodges)).

had a duty to preserve, "could well be present on the laptops of former REX employees, including those identified by REX in its originally served Rule 26 disclosures, who have now been removed by REX in its amended disclosures, and who previously provided declarations in support of REX's motion for a preliminary injunction just last year." Ex. N, Letter from Jurata to Goldfarb (June 1, 2022). Zillow once again requested confirmation that REX was "ensuring that all information available on REX-issued laptops of any former REX employees is appropriately accounted for in its preservation efforts." *Id.*

On the same day, in light of REX's recent layoff of the majority of its employees and its apparent practice of allowing former employees to retain REX-issued laptops, Zillow propounded Interrogatory No. 8. That interrogatory requested the following:

> Identify all employees (by name, last position/job title held while employed at REX, and last day of employment at REX) who have left REX, including any employees whose employment was involuntarily terminated, since January 2021 and state whether such employees were permitted to retain any REX-issued laptops.

Ex. O, Zillow Defs.' Third Set of Interrogatories to Plaintiff REX – Real Estate Exchange, Inc.[8]

### D.  REX Admits to Destruction of Potentially Relevant Material

On June 21, REX disclosed for the first time—buried in footnote 3 to its Joint Submission regarding REX's Disclosure of Custodians Pursuant to this Court's ESI Order—that Angela Cook, a former REX employee who REX had identified as an individual that it may call to testify at trial, had "wiped her laptop after she was let go." ECF 138 at 10 n.3; *see* ECF 138-2, ECF 138-5. Notably, REX failed to mention this document destruction in ***any*** of its letters in response to Zillow's questions regarding REX's document preservation efforts. REX represented that although counsel ensured Ms. Cook's emails and documents saved on shared drives have been preserved, "ESI exclusively on her laptop will be ***impossible to obtain*** at this time." ECF 138 at 10 n.3 (emphasis added).

On June 27, the Court entered an Order requiring that REX include Ms. Cook as a

---

[8] After receiving Interrogatory No. 8 and in response to Zillow's June 1 letter, REX claimed that it has no obligation to respond to "letters from Zillow seeking to obtain through a letter writing campaign information about REX's discovery preservation measures." Ex. P, Letter from Goldfarb to Jurata (June 6, 2022). REX did not confirm, and to date has not confirmed, the extent of any preservation of the REX-issued laptops of former REX employees.

custodian and finding that Ms. Cook is "likely to have relevant ESI in [her] possession, custody, or control." ECF 139, Minute Order at 2-3. Following the Court's order, NAR requested a meet and confer with REX about REX's document preservation practices, including "(1) the steps REX has taken to preserve documents *for each REX custodian*; (2) when REX first learned that Ms. Cook's documents were deleted; (3) what steps REX has taken to recover Ms. Cook's deleted documents; and (4) whether any documents held by other custodians or *persons identified on any of REX's disclosures* have been deleted." Ex. Q, Excerpted email from Bonanno to Goldfarb (June 28, 2022) (emphasis added).

### E. REX Provides Insufficient Responses to Discovery Inquiries

On July 1, 2022, REX responded to Zillow's Interrogatory No. 8, claiming that the information requested was not relevant or proportionate to the needs of this case. Ex. E, Plaintiff's Response to Zillow Defs.' Third Set of Interrogatories. Despite the Court's Order just days before requiring REX to designate custodians based on its original Initial Disclosures, REX's response noted that it "already provided information" regarding the laptops of employees listed on REX's *Amended* Initial Disclosures, ignoring the numerous former employees that had been removed from REX's Amended Initial Disclosures but who were earlier identified as having relevant information.[9] On July 13, 2022, Zillow sent a letter to REX noting these deficiencies in REX's response and demanding an immediate meet and confer to discuss the basis for REX's objections if REX was not going to promptly supplement its inadequate response. Ex. R, Letter from Najemy to Goldfarb (July 13, 2022). REX did not even bother to acknowledge this letter.

On July 15, all parties met and conferred regarding REX's document preservation practices generally, centered around REX's failure to preserve Ms. Cook's documents. Though REX supplied some information regarding Ms. Cook's laptop, REX's counsel did not definitively respond to Defendants' questions concerning even the most basic information regarding REX's preservation efforts, including, but not limited to:

---

[9] Zillow does not know whether these employees, like Angela Cook, retained their laptops after they left REX, but would have expected such information in response to Interrogatory No. 8.

- Whether REX issued a litigation hold for this case and if so, when, and to whom it was sent;

- What documents were preserved for custodians and when those documents were preserved;

- Whether any documents held by other custodians or persons identified on any of REX's disclosures have been deleted;[10]

- Details regarding the steps the e-discovery vendor took to attempt to recover information from Ms. Cook's laptop;

- The date that REX's current law firm learned Ms. Cook had wiped her laptop;[11]

- Whether Ms. Cook specifically received a litigation hold and, if so, when; and

- What documents Ms. Cook did and did not delete.

*See* Ex. S, Letter from Najemy to Goldfarb (July 26, 2022), at 4. Having received no further response from REX regarding its document preservation efforts or a meet and confer about Interrogatory No. 8, Zillow sent REX a letter on July 26 again raising the deficiencies in REX's Interrogatory No. 8 response and REX's delay in responding to basic questions about REX's document preservation efforts. *Id*. Zillow demanded a complete response to Interrogatory No. 8 as well as the information regarding REX's document preservation efforts.

Although REX provided a narrow response on July 27 regarding Ms. Cook's documents, *see* Ex. T, Letter from Goldfarb and Ungaro to Najemy (July 27, 2022), it provided no additional information regarding Interrogatory No. 8 or REX's document preservation more generally. Following the parties' meet and confer on August 10, REX confirmed on August 12 that it would not be supplementing its response to Interrogatory No. 8. Ex. U, Email from Goldfarb to Beringer (Aug. 12, 2022).

### F. Zillow Has in Good Faith Conferred with REX to Resolve This Dispute

Pursuant to LCR 37(a)(1), Zillow certifies that it has in good faith conferred with REX to try to resolve the disputes in the instant Motion without Court action. The parties met and

---

[10] Notably, when Zillow raised that REX never responded to Zillow's request for a meet and confer on Interrogatory No. 8, REX's counsel refused to discuss the interrogatory, claiming it unrelated to the topic of the meet and confer. *See* Ex. S, at 3-4.

[11] Counsel generally represented that they became aware that Ms. Cook had erased her laptop after REX had already made its Initial Disclosures but provided no specific date.

conferred over Zoom on July 15 and August 10.  The parties also have exchanged numerous letters for over three months regarding the issues raised herein, and are now at an impasse.[12]

### III.    ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Ball v. Manalto, Inc.*, No. C16-1523 RSM, 2017 WL 1788425, at *2 (W.D. Wash. May 5, 2017) (quoting Fed. R. Civ. P. 26(b)(1)).  "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Lauer v. Longevity Med. Clinic PLLC*, No. C13-0860-JCC, 2014 WL 5471983, at *3 (W.D. Wash. Oct. 29, 2014).

Having brought this action, REX should not be allowed to evade discovery regarding its preservation of potentially important evidence—which recent developments have put in issue.  By alleging that actions by Zillow and NAR caused its business to collapse, REX's business operations and business decisions are directly relevant to the case.  REX's refusal to provide essential information regarding whether or not it has properly preserved evidence of former employees violates REX's discovery obligations under the Federal Rules, and REX should be ordered to comply with those discovery obligations.

### A.    REX Appears To Be Flouting its Preservation Obligations

Preservation of documents is critical to the discovery process and is triggered as soon as a party begins contemplating litigation.  *See Knickerbocker*, 298 F.R.D. at 677-78.  A party has an obligation to preserve "any documents or tangible items that the party knows or should know are relevant to the litigation, as well as to documents in the possession of employees who are 'key players' in the case," *id.*, that is, "those employees likely to have relevant information,"

---

[12] Zillow understands that NAR has made similar efforts to obtain information from REX about its document preservation efforts for former employees, and has been similarly stonewalled by REX in response.

*Glob. Music Rts., LLC v. Radio Music License Comm., Inc.*, No. CV 16-9051 TJH (ASX), 2020 WL 10692695, at *2 (C.D. Cal. Aug. 3, 2020). Under Rule 37(e), a court may order relief to a party prejudiced by the loss of information that was not appropriately preserved, including sanctions. Fed. R. Civ. P. 37(e).[13]

REX's duty to preserve evidence in this case was triggered at least as early as March 2021, when it filed its Complaint and Motion for Preliminary Injunction. And REX was undoubtedly obligated to preserve evidence in January 2022—a year after the litigation commenced and months after initial discovery requests had been served—when the Court ordered that REX and the other parties "shall preserve ***all discoverable*** *ESI* in their possession, custody, or control." ECF 113, at 7 (emphasis added). Yet, in May 2022, at the same time REX was apparently laying off most of its employees, a former REX employee posted on Glassdoor that REX was permitting its former employees to retain REX-issued laptops as "severance." *See* Ex. H, Glassdoor Review (May 8, 2022); *supra* Section I.A. REX also disclosed that former REX employee Angela Cook had destroyed the ESI on her laptop. ECF 138 at 10 n.3.

Zillow's efforts to ascertain whether document preservation issues may have occurred—especially concerning information on REX-issued laptops of former REX employees that were no longer in the possession, custody, or control of REX—were blocked at every turn. REX has stonewalled, either ignoring Zillow's questions entirely, or delaying by providing non-substantive answers. *Supra* Sections I.B, I.E. Zillow has made numerous attempts to get to the bottom of what REX has and, more importantly, has not done to preserve relevant documents in this case. But these questions remain unanswered after more than three months of diligent effort.

Zillow does not know the full extent of any document destruction, does not have a complete response to its Interrogatory No. 8, and does not have any substantive information backing up any of REX's representations about its discovery preservation efforts. If former

---

[13] *See also WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020) (awarding sanctions when the party spoliated ESI through the deletion of email accounts and computers of employees who left the party's employ, among other conduct); *Siskiyou Buckle Co., Inc. v. GameWear, Inc.*, No. CV 09-3073-CL, 2011 WL 13248530, at *8 (D. Or. Nov. 3, 2011) (awarding monetary sanctions when the party was "grossly negligent in its preservation of evidence" when it, among other conduct, failed to adequately instruct its employees regarding a litigation hold and failed to take steps to cease its ordinary, routine deletion practices).

REX employees—including individuals identified by REX on its Initial Disclosures—have taken with them or destroyed information relevant to the parties' claims or defenses that REX has not otherwise preserved, Zillow is entitled to know. This information should be readily available to REX, and any burden or expense of providing this information is small in comparison to the relative importance of these issues to the litigation.

### B. REX's Objections to Interrogatory No. 8 Are Baseless

Zillow propounded Interrogatory No. 8, asking REX to identify the employees who left since January 2021 and whether they were permitted to retain REX-issued laptops. Given REX's significant layoffs and apparent policy of allowing former employees to retain their REX-issued laptops as severance, this Interrogatory is plainly relevant as it would allow Zillow to determine if there were any preservation issues regarding those employees. Ex. O.

REX has refused to respond. Yet REX has failed to credibly articulate why the information sought by Interrogatory No. 8 is irrelevant (it is not) or disproportionate (it is not) to the needs of the case. *See* Ex. E. It is REX's burden to explain its objections—not Zillow's. *Lauer*, 2014 WL 5471983, at *3.

Concerning relevance, REX claims "[t]he overwhelming majority" of the 250 employees let go since January 2021 "were salaried agents and non-managerial employees, whose employment at REX had no or at most *de minimis* relevance to the issues involved in this case." Ex. E. Yet, real estate agents, including salaried ones, are among the very declarants REX relied on in support of its Motion for Preliminary Injunction *and* disclosed in its Initial Disclosures. *See* ECF 6, Lawrence Decl. ¶¶ 1-2; ECF 9, Maggio Decl. ¶¶ 1-2; ECF 10, Van Ham Decl. ¶¶ 1-2; ECF 11, Echevarria Decl. ¶¶ 1-2; ECF 12, Reina Decl. ¶ 12; ECF 13, Rosenbaum Decl. ¶¶ 1-2; ECF 14, Kruse Decl. ¶¶ 1-2. Despite removing six of the seven agents from its Amended Initial Disclosures without explanation, REX admitted in its Initial Disclosures that each of these individuals was "likely to have discoverable information." *Compare* ECF 138-2 (identifying Todd Rosenbaum, Brandy Lawrence, Viktor Kruse, Raphael "Rio" Reina, Josephine Maggio, Phil Van Ham, and Randall Echevarria) *and* ECF 138-5 (identifying only Raphael "Rio" Reina). In its Motion for Preliminary Injunction, REX cited to the declarations of several REX

employees and salaried real estate agents to support its arguments that Zillow and NAR's alleged conduct injures competition and has irreparably harmed REX. *See* ECF 5 at 6, 13, 16, 18-22. Several of those declarants attached exhibits with their preliminary injunction declarations, at least some of which appear to be particularly relevant to Zillow's defenses.[14] For example, one concerns problems with REX's marketing,[15] and one concerns the ways in which buyers might access REX's listings on the "Other" tab of Zillow's website.[16] REX real estate agents, in particular these declarants, are likely to have information relevant to Zillow's defenses, yet are not accounted for in any of REX's representations regarding its preservation efforts.

Additionally, at least 19 of the 26 employees that REX identified in its Initial Disclosures, including real estate agent declarants, appear to have left REX since January 2021. *See* Ex. L. Thus, individuals likely to have discoverable—*i.e.*, relevant—information left REX since January 2021, and may be among the former employees REX permitted to retain REX-issued laptops, perhaps without REX preserving any information contained on those laptops. That REX made the conscious decision to shed these employees and remove at least some of them from its Amended Initial Disclosures does not change REX's discovery obligations, especially not when REX claims that Zillow and NAR are at fault for these very same layoffs. REX's claim that the employees who left since January 2021 had "no or at most *de minimis* relevance to the issues involved in this case" is dubious in light of its previous inclusion of them on its Initial Disclosures. Zillow should be entitled to test REX's self-serving claims.

REX claims the employees listed in its *Amended* Rule 26 disclosures are the only employees "whose laptops are potentially relevant." Ex. E. But this ignores, at minimum, the 16 employees who were identified as having relevant information in REX's Initial Disclosures, including six of the individuals who submitted declarations supporting REX's Motion for

---

[14] *See* ECF 9, Maggio Decl.; ECF 10, Van Ham Decl.; ECF 13, Rosenbaum Decl.

[15] REX quoted Exhibit C to the Van Ham Declaration, in which a client states, "The REX marketing is not working," to support REX's argument that Zillow's display change harmed REX's brand and goodwill, presumably because REX could no longer leverage Zillow's platform to market itself. ECF 5, at 20.

[16] In Exhibit A to the Maggio Declaration, the REX agent advises the client, "Buyers will now be searching in [the "Agents" and "Other"] tabs for homes." ECF 9, at 8. The REX agent further explains, "Most buyers are searching for homes by setting very specific parameters based on what they are looking for (price range, bed/bath count, pool, etc.)" and then suggests ways to "boost" the client's listing, suggesting that the "Other" tab does not keep buyers from finding the REX listing. *Id.*

ZILLOW DEFENDANTS' MOTION
TO COMPEL: 2:21-CV-00312-TSZ     - 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

Preliminary Injunction, but who do not appear in REX's Amended Initial Disclosures. As discussed above, all seven real estate agents who submitted declarations in support of REX's Motion for Preliminary Injunction are likely to have relevant information, but *six of the seven* agents were removed from REX's Amended Initial disclosures—without explanation. The roles of the remaining 10 of the 16 employees who were initially disclosed as likely to have discoverable information but were later removed include REX's Chief Technology Officer, Vice President of Business Development, Director of Analytics, Chief Data Scientist, and Regional Sales Managers. ECF 138-2, at 1-5. REX cannot credibly claim that the laptops of these individuals (who are not included in REX's Amended Initial Disclosures) are not relevant.

Finally, REX has never explained how providing a list of former employees who have kept their laptops after leaving is burdensome or disproportionate. Simply put, it is not.

### C. The Court Should Compel REX to Answer Interrogatory No. 8 and Designate a Rule 30(b)(6) Representative

In light of REX's failure to respond to Interrogatory No. 8 and provide basic information about REX's document preservation efforts, Zillow respectfully requests that the Court order REX to provide a complete response to Interrogatory No. 8—specifically, a list of all employees (by name, last position/job title held while employed at REX, and last day of employment at REX) who have left REX since January 2021, stating whether such employees were permitted to retain any REX-issued laptops. Zillow also requests that the Court order REX to designate one or more persons to testify as a Rule 30(b)(6) representative regarding REX's document preservations efforts in connection with this litigation. As such a deposition is necessary due to REX's conduct, Zillow requests that such deposition not be counted against Zillow's ten (10) depositions permitted without leave of Court under Rule 30(a).

### IV. CONCLUSION

For the foregoing reasons, Zillow respectfully requests that the Court compel REX to provide complete answers to Interrogatory No. 8. In addition, REX should be ordered to designate one or more persons to testify as a Rule 30(b)(6) representative regarding REX's document preservations efforts in connection with this litigation.

| | | |
|---|---|---|
| 1 | Dated: August 19, 2022 | ORRICK, HERRINGTON & SUTCLIFFE LLP |

By: *s/ Aravind Swaminathan*
Aravind Swaminathan (WSBA No. 33883)
aswaminathan@orrick.com


By: *s/ Nicole Tadano*
Nicole Tadano (WSBA No. 40531)
ntadano@orrick.com

701 Fifth Avenue
Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301


By: *s/ John "Jay" Jurata, Jr.*
John "Jay" Jurata, Jr. (Pro Hac Vice)
jjurata@orrick.com

1152 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 339 8400
Facsimile: (202) 339 8500


By: *s/ Russell P. Cohen*
Russell P. Cohen (Pro Hac Vice)
rcohen@orrick.com

405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773 5700
Facsimile: (415) 773 5759


By: *s/ Naomi J. Scotten*
Naomi J. Scotten (Pro Hac Vice)
nscotten@orrick.com

51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

By: *s/ Laura Najemy*
Laura Najemy (Pro Hac Vice)
lnajemy@orrick.com

222 Berkeley Street
Suite 2000
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801

Attorneys for Defendants,
Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Trulia, LLC

ZILLOW DEFENDANTS' MOTION
TO COMPEL: 2:21-CV-00312-TSZ         - 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record.

Dated: August 19, 2022

*s/ Nicole Tadano*
Nicole Tadano (WSBA No. 40531)

ZILLOW DEFENDANTS' MOTION
TO COMPEL: 2:21-CV-00312-TSZ   - 15 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300