The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| REX - REAL ESTATE EXCHANGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZILLOW, INC., et al., <br><br> Defendants. | Case No. 2:21-CV-00312-TSZ <br><br> **ZILLOW DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ZILLOW TO PRODUCE DOCUMENTS** <br><br> **NOTE ON MOTION CALENDAR:** <br> October 14, 2022 |

ZILLOW DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

**Table of Contents**

I.     FACTUAL BACKGROUND ................................................................................... 2

II.    ARGUMENT ........................................................................................................... 3

       A.     REX's Complaint Excludes FSBO Homes from the Relevant Market for Brokerage Services, Rendering FSBO Data Irrelevant to the Issue of Harm to Competition. ............................................................................. 3

       B.     FSBO Data Is Not Necessary for REX to Prove Its Own Harm. ....................... 8

       C.     Producing FSBO Data is Not Proportional to the Case. ................................... 8

III.   CONCLUSION ..................................................................................................... 11

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL     - i -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anderson v. Aset Corp.*,
    329 F. Supp. 2d 380 (W.D.N.Y. 2004) .................................................................................6

*Avila v. Bank of Am.*,
    No. 17-cv-00222-HSG, 2017 WL 4168534 (N.D. Cal. Sep. 20, 2017) ................................6

*In re B & J Inc.*,
    No. 6:19-CV-01440, 2021 WL 5622118 (W.D. La. Nov. 30, 2021) ....................................7

*Bolding v. Banner Bank*,
    No. C17-0601RSL, 2020 WL 3605593 (W.D. Wash. July 2, 2020) ....................................3

*CollegeNET, Inc. v. Common Application, Inc.*,
    711 Fed. Appx. 405 (9th Cir. 2017) .....................................................................................7

*In re eBay Seller Antitrust Litig.*,
    No. C09-0735RAJ, 2009 WL 10677051 (W.D. Wash. Aug. 17, 2009) ..............................4

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ......................................................................................3, 4, 7, 8

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) ............................................................................................6

*Hall v. Marriott Int'l, Inc.*,
    No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464 (S.D. Cal. May 12, 2021) .....................7

*Ivy Hotel San Diego, LLC v. Houston Cas. Co.*,
    No. 10cv2183-L (BGS), 2011 WL 13240367 (S.D. Cal. Oct. 20, 2011) ..............................7

*New Park Entm't LLC v. Elec. Factory Concerts, Inc.*,
    No. Civ.A. 98-775, 2000 WL 62315 (E.D. Pa. Jan. 13, 2000) ......................................4, 8, 9

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
    838 F.2d 360 (9th Cir. 1988) ................................................................................................7

*Philips N. Am., LLC v. Summit Imaging Inc.*,
    No. C19-1745JLR, 2020 WL 1515624 (W.D. Wash. Mar. 30, 2020) ..................................6

*Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*,
    No. CV 19-3957 TJH (ASx), 2020 WL 7636281 (C.D. Cal. Jan. 2, 2020) ......................4, 8

*Strickland Real Estate Holdings, LLC v. Texaco, Inc.*,
    No. C16-0653-JCC, 2016 WL 7243711 (W.D. Wash. Dec. 15, 2016) .................................9

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
    No. C14-013151 RAJ, 2016 WL 1597102 (W.D. Wash. Apr. 20, 2016) .............................3

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL                - ii -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
  676 F.2d 1291 (9th Cir. 1982) ......................................................................................... 7

*Vident v. Dentsply Int'l, Inc.*,
  No. SA CV 06-1141 PSG (ANx), 2008 WL 4384124
  (C.D. Cal. Aug. 29, 2008) ............................................................................................. 4

**Statutes**

15 U.S.C. § 15 ......................................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 26(b) ..................................................................................................... 3, 8, 9

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

REX's numerous discovery requests for listings-related data are massively overbroad and immensely burdensome. Nonetheless, after extensive meeting and conferring regarding those requests, Zillow agreed that it would produce data regarding MLS and REX property listings in hundreds of Metropolitan Statistical Areas ("MSAs"), from 2017 to present, as well as data regarding visitor views related to those listings. That comprises millions of records. And from those records, REX can assess consumer viewings of its listings, as well as multiple millions of MLS listings, both before Zillow's change to the two-tab display, and after. REX does not object to Zillow's production of those records. Instead, it wants more; this time, REX seeks data relating to for-sale-by-owner ("FSBO") listings on Zillow's websites.

REX claims that it is entitled to all of the listings and engagement data for FSBO homes in all the same geographies for which Zillow has produced REX and MLS data. Yet, FSBO data is clearly irrelevant to REX's affirmative claims because the antitrust market REX defined in its Complaint is limited to "brokered" transactions which, by definition, exclude FSBO sales. And REX does not need FSBO data to show harm to REX, a point that REX admits in its Motion. Instead, REX wants these additional data records because they *may* show "an analogous" decline in the number of views of FSBO listings. *See* Mot. to Compel at 4, ECF No. 162. That, however, is far from the relevancy showing required for production, particularly given the significant burden it would impose on Zillow. Accordingly, REX's Motion should be denied.

***First***, FSBOs are outside the relevant market REX defined for purposes of its antitrust claim, and thus any impact on FSBOs is irrelevant to assessing harm to competition in this litigation. In its Complaint, REX defined a market for "brokerage services" that on its face *excludes* FSBOs. There are no allegations in the Complaint that FSBOs compete with REX or other participants in REX's alleged market for brokerage services. Because harm to competition must occur in the same relevant market as the alleged anticompetitive conduct, and because REX has alleged a market that excludes FSBOs, FSBO data is irrelevant.

***Second***, data regarding FSBO listings is not needed to show alleged harm to REX. REX alleges that Zillow's two-tab display has impacted ***REX's*** listings. Zillow has agreed to

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL                - 1 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

produce—and is producing—data that directly addresses any impact that its two-tab display may have had *on REX's listings*, which REX concedes it can use to evaluate its own harm. Because REX is not a FSBO and does not have FSBO listings, it is irrelevant to REX's claims whether FSBOs have experienced any change since the adoption of the two-tab display.

***Third***, the FSBO data that REX has requested is overly burdensome for Zillow to produce and disproportionate to the issues in the case. At minimum, gathering the requested FSBO data would involve *multiple* Zillow employees and take up *multiple days* of *each employee's* time in addition to their already-existing daily workloads. Given that REX has received reams of data regarding its own listings and MLS listings, the burden Zillow would incur in producing FSBO data far outweighs any benefit that REX would get from the production of this additional, and irrelevant, data.

## I. FACTUAL BACKGROUND

REX served Zillow with over fifty (50) Requests for Production seeking an extensive amount of information and data, including "***all*** data on consumer and real estate brokerage usage of Zillow sites" as well as information on daily views and showing requests "for ***each listing*** (REX and ***all other listings*** as well) in REX markets." *See* Mot. at 2 (emphasis added). After receiving Zillow's responses and objections to these massively overbroad requests, REX narrowed its requests to two tranches of data it wanted from Zillow, "listings data" and "website activity" data. Declaration of Laura Najemy, October 11, 2022 ("Najemy Decl."), Ex. 1. These two tranches of data became the focal point of the parties' negotiations concerning Zillow's data production, superseding several of REX's requests for production. *Id.*, Ex. 2.

Zillow agreed to produce information relating to REX listings and those of hundreds of Multiple Listing Services ("MLS")—the MLSs that serviced the same geographies as REX. *Id.*, Ex. 3. Throughout the meet and confer process, however, Zillow made clear that FSBO data was not relevant to the issues in the litigation because FSBOs are not in the market that REX defined in its Complaint. *See* ECF No. 163-3; ECF No. 163-4. Accordingly, Zillow has never agreed to production of such data.

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL — - 2 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    Despite multiple meet and confers on various issues, REX never again raised FSBO data
2    until the eve of Zillow's data productions.  Those productions, on September 21, 2022 and
3    September 30, 2022, included millions of records from 2017 to present for MLSs and REX in
4    hundreds of MSAs.  *See* Declaration of Tim Hunt, October 11, 2022 ("Hunt Decl."), ¶ 7.  The
5    parties met and conferred on September 20 and Zillow again re-stated its position that FSBO
6    data is irrelevant to this litigation and overly burdensome for Zillow to produce, before reaching
7    impasse on the issue.

## II.  ARGUMENT

Parties are only entitled to discovery of "nonprivileged matter[s] that [are] relevant to ***any party's claim or defense*** and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Whether a matter is "relevant" is determined by the parties' pleadings.  *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, No. C14-013151 RAJ, 2016 WL 1597102, at *2–*3 (W.D. Wash. Apr. 20, 2016) (granting Huawei's motion for a protective order noting that "T-Mobile's requests and interrogatories are not relevant to any claim or defense in this case").  Even REX acknowledges this requirement.  Mot. at 6 ("At this juncture, the test is whether the requested information is relevant ***based on the pleadings***. . . ." (emphasis added)).  Discovery that veers into "side shows" or collateral issues is not permitted.  *See Bolding v. Banner Bank*, No. C17-0601RSL, 2020 WL 3605593, at *2 (W.D. Wash. July 2, 2020) (holding that information sought by defendant related to a "collateral issue" that was not "relevant to any claim or defense asserted in [the] litigation").  REX's requested discovery is nothing more than an unjustified fishing expedition.

### A.  REX's Complaint Excludes FSBO Homes from the Relevant Market for Brokerage Services, Rendering FSBO Data Irrelevant to the Issue of Harm to Competition.

To have any bearing on an antitrust case, discovery regarding harm must focus on the relevant market because harm to competition must occur within the same relevant market as the alleged anticompetitive conduct.  *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) ("Under § 1, 'the plaintiff has the initial burden to prove that the challenged restraint has a

substantial anticompetitive effect that harms consumers *in the relevant market*.'" (emphasis added) (citation omitted)). The analysis of a defendant's "business practices and their anticompetitive impact" should not "look[] beyond [the] [relevant] markets[.]" *Id.* at 992.

Given this requirement, in antitrust discovery disputes such as the instant Motion, courts determine relevance based on the relevant market as pled in the complaint. *See, e.g.*, *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, No. CV 19-3957 TJH (ASx), 2020 WL 7636281, at *5 (C.D. Cal. Jan. 2, 2020) ("In an antitrust case, courts generally limit discovery to the ambit of the applicable market."); *In re eBay Seller Antitrust Litig.*, No. C09-0735RAJ, 2009 WL 10677051, at *3 (W.D. Wash. Aug. 17, 2009) (narrowing plaintiffs' requested discovery because the court could not "fathom the relevance of information related to online payment systems generally" when the plaintiffs defined the relevant market to be online auction services and person-to-person payment systems); *Vident v. Dentsply Int'l, Inc.*, No. SA CV 06-1141 PSG (ANx), 2008 WL 4384124, at *2 (C.D. Cal. Aug. 29, 2008) ("[T]he definition of the relevant market in [this antitrust] case determines the scope of allowable discovery."); *New Park Entm't LLC v. Elec. Factory Concerts, Inc.*, No. Civ.A. 98-775, 2000 WL 62315, at *6 (E.D. Pa. Jan. 13, 2000) (denying motion to compel "information regarding nonmusical events" because the information was not relevant to plaintiff's allegations where plaintiff defined the relevant market as "[t]he popular music concert promotion business").

In bringing its Complaint, REX determined what it believes is the relevant market. That market, as pled, does not include FSBOs. REX's Complaint defines the relevant market as "the market for the provision of real estate ***brokerage services to sellers and buyers*** of residential real estate in local markets throughout the country where REX operates." Am. Compl. ¶ 119, ECF No. 99 (emphasis added). On its face, REX's market includes only those firms that provide brokerage services. As set forth in REX's Complaint, there are three requirements that a purported market participant must meet in order to be considered "in" the alleged market:

- First, the participant must compete with NAR, MLS members, and REX "in the market for the provision of ***real estate brokerage services*** to sellers and buyers of residential

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL         - 4 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

real estate in local markets throughout the country where REX operates." *Id.* (emphasis added).

- Second, the participant must "compete to attract buyers and/or sellers to *facilitate residential real estate transactions in return for fees, often in the form of percentage-based commissions*." *Id.* (emphasis added).

- And third, the participant "*must maintain licenses* to provide residential real estate brokerage services." *Id.* (emphasis added).

FSBOs do not meet any of these three criteria alleged by REX. Nowhere does REX explain—in its Motion, Complaint, or otherwise—how FSBOs compete with **brokers** for **brokerage services**, and that's because they don't. Homeowners selling their own homes do not offer their services to other individuals looking to buy or sell homes, as brokers like REX do. Additionally, as REX explains in its Complaint, homes that are for sale *by owner* are represented by individual homeowners, not licensed residential real estate agents. *See, e.g.*, Am. Compl. ¶ 95 ("Consumers who purchase FSBOs must negotiate directly with the homeowner."). While a homeowner with a FSBO listing may well be competing with other listings—including those represented by licensed agents—in a different market for the purchase and sale of homes, that is distinct from competing *to provide brokerage services* to consumers who wish to buy or sell homes.

Contradicting the allegations in the operative Complaint, REX now attempts to amend its Complaint through its Motion, claiming that "the services provided by homeowners who list their homes for sale *without a seller-agent* are in the relevant market." Mot. at 6 (emphasis added). But this ignores the fact that the alleged market in REX's Complaint requires transactions in which there is both a buyer and seller agent. Am. Compl. ¶ 119 ("NAR, through its members, and MLS members compete with REX in the market for the provision of real estate brokerage services to *sellers and buyers* of residential real estate. . . ." (emphasis added)). And the new claim that FSBOs somehow compete with REX also ignores that REX's Complaint expressly explains how REX's business operations are fundamentally different than FSBO

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL - 5 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

transactions:

> To the extent that consumers view homes in the "other" category, they will see REX homes alongside FSBOs and foreclosures. But those properties present a buyer experience easily distinguished from purchasing a REX home. Consumers who purchase FSBOs must negotiate directly with the homeowner. Buyers of REX homes negotiate with a licensed REX agent. And, in the event the buyer of a REX home does not already have an agent, REX will assign a separate, experienced agent to represent the buyer at no cost to buyer or seller.

Am. Compl. ¶ 95. REX's Complaint sets the bounds of discovery to which it is entitled, and there is no interpretation where FSBOs fit into REX's market for brokerage services, as explained above.

REX's Motion is a transparent attempt to rewrite the relevant market alleged in its Complaint in an effort to make FSBO listings somehow relevant. However, courts routinely reject parties' attempts to rewrite pleadings through motions practice. *See, e.g.*, *Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 WL 1515624, at *7 (W.D. Wash. Mar. 30, 2020) ("Philips cannot re-write their complaint in their opposition brief."); *Avila v. Bank of Am.*, No. 17-cv-00222-HSG, 2017 WL 4168534, at *4  (N.D. Cal. Sep. 20, 2017) ("Plaintiff cannot rewrite its complaint now in its opposition to the motion to dismiss. . . ."); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Anderson v. Aset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004) ("[T]he complaint says what it says, and a memorandum of law is not a proper vehicle for rewriting or amending the complaint."). Accordingly, REX should not be allowed to amend its Complaint and change the relevant market it has pled via its Motion.

Unable to overcome that its Complaint on its face expressly defines a market that excludes FSBO transactions, REX instead points to the entirely irrelevant fact that NAR, in an earlier motion to dismiss, claimed that REX's alleged market was "implausible." *See* Mot. at 5. But whatever NAR thought of the market is beside the point. The operative document for defining the relevant market is REX's Complaint, which makes clear that FSBO homes do not

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

meet the three necessary criteria to be in that relevant market. *See supra* at 4-5 (setting forth requirements for REX's alleged market). Nor does the fact that REX's Complaint alleges harm to entities such as FSBOs, *see* ECF No. 98 at 16 n.6, mean that FSBOs are included in the relevant market. As the Ninth Circuit has explained, to be included in the same relevant market, products or services must compete with one another. *See Qualcomm*, 969 F.3d at 992–93. Since REX's Complaint makes clear that REX does not compete with FSBOs for the provision of brokerage services, any alleged harm to FSBOs is irrelevant.

REX should not be allowed to use discovery as a fishing expedition. Having pled a relevant market in its Complaint that clearly excludes FSBO transactions, REX cannot premise the need for discovery on the fact-based nature of market definition. Contrary to what REX argues in its Motion, it is not asking "to explore through discovery facts relevant to its own theories regarding the [defining] of [market]," *see* Mot. at 6 (brackets in original); instead, it is seeking discovery that ***contradicts*** its own theories. That is not allowed, and none of the cases REX cites suggest otherwise.[1] Moreover, none of REX's cited cases (none of which are antitrust cases) stand for the proposition that a party can take discovery contrary to the operative complaint just because the court may make a determination on the issue at some future point.[2] Because FSBOs are not in REX's market for brokerage services as pled by REX, they are irrelevant to harm to competition (the purpose for which REX purportedly requests such data). REX's request for FSBO data should be denied.

---

[1] *See In re B & J Inc.*, No. 6:19-CV-01440, 2021 WL 5622118 (W.D. La. Nov. 30, 2021) (dispute regarding whether discovery related to the value of a barge should be permitted, and where no antitrust claims appear to have been at issue); *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464 (S.D. Cal. May 12, 2021) (dispute in false advertising case regarding statute of limitations, with no apparent antitrust claims); *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10cv2183-L (BGS), 2011 WL 13240367 (S.D. Cal. Oct. 20, 2011) (insurance coverage dispute regarding breach of contract and breach of covenant of good faith and fair dealing, with no apparent antitrust claims). Notably, in *Ivy Hotel* the court allowed the plaintiff to explore "theories regarding the meaning of ***contractual terms***," *id.* at *3 (emphasis added), not "theories regarding the [defining] of [market]," which a plaintiff must plead and self-define in an antitrust case. Mot. at 6.

[2] Those cases cited by REX, in which courts have held that a merits decision regarding market definition was premature, are inapposite and were all raised in a different procedural posture than the instant discovery dispute. *Cf. CollegeNET, Inc. v. Common Application, Inc.*, 711 Fed. Appx. 405 (9th Cir. 2017) (appeal from grant of motion to dismiss based on antitrust injury); *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360 (9th Cir. 1988) (appeal from judgment); *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291 (9th Cir. 1982) (appeal from judgment).

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

### B. FSBO Data Is Not Necessary for REX to Prove Its Own Harm.

REX must prove harm, if any, that *it* suffered in order to recover damages. *See* 15 U.S.C. § 15 ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages *by him sustained*. . . ." (emphasis added)). REX is a licensed broker. Am. Compl. ¶ 39. It is not a FSBO. Whether or not there has been any effect on FSBO listings as a result of Zillow's two-tab display is therefore entirely irrelevant to the actual question at issue: has REX been harmed, and what data may or may not demonstrate that.

REX concedes in its Motion that it will be able to analyze the impact of Zillow's display change on REX's listings with data pertaining only to REX:

> REX can show the impact of Zillow's display change *on REX's listings* through a before and after analysis of the average number *of views REX's listings* received by comparing, for example, the views of its listings across markets before and after Zillow's display change.

Mot. at 4 (emphasis added). This should be the end of the inquiry. Zillow has already agreed to provide, and has produced, data regarding REX's listings. Nothing more is needed for REX to prove up its purported harm. REX's request for FSBO data is unnecessary and should be denied.

### C. Producing FSBO Data is Not Proportional to the Case.

Without any ability to link FSBO listings to REX's own harm or damages, or harm to competition, *see Qualcomm*, 969 F.3d at 992 ("Parties whose injuries . . . are experienced in another market do not suffer antitrust injury."), the only other purpose FSBO data could serve is to "corroborat[e] . . . REX's position that the two-tab display proximately caused REX economic harm." Mot. at 4. But discovery—even in antitrust cases such as this one—is not unlimited and must be proportional to the needs of the case. *See Radio Music*, 2020 WL 7636281, at *2 ("[U]nder amended Rule 26(b), discovery must be 'proportional to the needs of the case. . . .' This proportionality requirement 'is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation.'" (internal citations omitted)); *New*

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL — - 8 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Park*, 2000 WL 62315, at *6 ("This court agrees with the defendants that information regarding nonmusical events is not relevant to plaintiff's allegations. If it has some marginal value, the burden and expense of producing the information outweighs the likelihood of finding relevant material."); *see also* Fed. R. Civ. P. 26(b)(1).  In assessing proportionality, courts consider factors including "the importance of the discovery in resolving the issues [in the litigation], and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Here, because FSBO data is immaterial to the litigation, it cannot be said to go to the heart of any issue that REX has raised.  *Cf. Strickland Real Estate Holdings, LLC v. Texaco, Inc.*, No. C16-0653-JCC, 2016 WL 7243711, at *2 (W.D. Wash. Dec. 15, 2016) (granting motion to compel where discovery requests sought to establish contents of a lease that went "to the heart of th[e] dispute, albeit in a circumstantial manner").  Further, even assuming *arguendo* that there is any marginal relevance of FSBO data, which there is not, Zillow's burden in producing such data far outweighs any marginal relevance.  As explained below, production of this data would be a significant undertaking.

REX has requested two separate sets of data pertaining to listings displayed on Zillow:

- **"Listings Data,"** *i.e.*, data containing information such as date of listing, listing price, and property characteristics.  To avoid unnecessary duplication where a listing is posted on Zillow without any substantive change, REX has requested that this data be de-duplicated to the best of Zillow's ability.  This means, for instance, that if a listing is posted on Zillow for 30 days but has only one change, such as going from an "Active" listing to a "Pending" listing, that would ideally translate to only two data points in Zillow's data set rather than 30 points of data (one for each day).

- **"Website Activity,"** *i.e.*, data regarding visitor views and searches for listings displayed on Zillow's platforms.  Unlike "listings data," REX has requested *daily* data of a listing's page views, unique visitors, appearance in search results, and connections between a listings viewer and agent.  This means that Zillow is expected to produce "website activity" information for *each day* that a listing (from the sources that Zillow agreed to produce) is displayed on Zillow.  A single listing could count for an inordinate number of "website activity" data points.

Contrary to REX's assertion, FSBO listings do not account for "likely no more than 6.2% of additional data," Mot. at 8, but could instead account for far more than that, based on the method

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL - 9 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

in which REX has requested that Zillow identify and produce data. Simply, one FSBO listing does not equal only one additional data point. Because REX has requested that Zillow provide *daily* information regarding certain aspects of listings such as views and appearance in search results, a FSBO listing will necessarily generate more than one data point—one for each day that it has been on Zillow. *See* Hunt Decl. ¶¶ 10–12. For instance, homeowners are responsible for posting their FSBO listings on Zillow, and listings may continue to accrue views and appear in search results even after the house has been sold, if a homeowner does not remove the listing immediately upon sale. *Id.* ¶ 11.

Identifying, querying, checking, and ultimately producing REX's requested data for FSBOs is also a significant strain on Zillow's internal resources. Gathering data is done by at least three separate Zillow employees—one for "listings data," one for Zillow's "website activity" data, and one for Trulia's "website activity" data. *Id.* ¶¶ 4, 14. For each of these employees, data identification and production is not their full-time job. *Id.* ¶ 15. Fulfilling REX's request would require that the employee gathering "listings data" spend approximately two (2) to three (3) uninterrupted business days identifying the necessary data universe, followed by one (1) to (2) additional days of passing the data to colleagues for use in querying "website activity" data and also uploading for counsel to produce. *Id.* ¶ 13. Then, to generate "website activity" data, two Zillow employees (one for Zillow and one for Trulia) would each spend approximately 12 business days identifying and querying FSBO data, followed by two (2) business days of quality checking the data, and at least part of another day uploading the data for counsel to produce. *Id.* ¶ 14. Notably, these estimates apply only if queries go as-intended and do not error or time-out when pulling the data. *Id.* ¶¶ 13–14. In total, Zillow estimates that it would take between three (3) and four (4) weeks of employee time—time that the employees are not focused on the work that they were hired to do—to pull and produce FSBO data that meets REX's parameters as negotiated by the parties.[3] *Id.* ¶ 16.

---

[3] Due to the amount of the time that it would take Zillow employees to identify and ready FSBO data for production, if the Court grants REX's Motion, Zillow requests that any order requiring production of FSBO data specify a date no earlier than four weeks from the date of the order for completion of such production.

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL - 10 -
No. 2:21-CV-00312-TSZ

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

Because the burden on Zillow to produce FSBO data would be excessive as compared to the marginal relevance (if any) of the data, REX's Motion should be denied.

### III.   CONCLUSION

Zillow respectfully requests that the Court deny REX's Motion in its entirety (ECF No. 162).

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Dated: October 11, 2022                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: *s/ Aravind Swaminathan*
Aravind Swaminathan (WSBA No. 33883)
aswaminathan@orrick.com


By: *s/ Nicole Tadano*
Nicole Tadano (WSBA No. 40531)
ntadano@orrick.com

701 Fifth Avenue
Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301


By: *s/ John "Jay" Jurata, Jr.*
John "Jay" Jurata, Jr. (Pro Hac Vice)
jjurata@orrick.com

1152 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 339 8400
Facsimile: (202) 339 8500


By: *s/ Russell P. Cohen*
Russell P. Cohen (Pro Hac Vice)
rcohen@orrick.com

405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773 5700
Facsimile: (415) 773 5759


By: *s/ Naomi J. Scotten*
Naomi J. Scotten (Pro Hac Vice)
nscotten@orrick.com

51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

ZILLOW DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

By: *s/ Laura Najemy*
Laura Najemy (Pro Hac Vice)
lnajemy@orrick.com

222 Berkeley Street
Suite 2000
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801

Attorneys for Defendants,
Zillow, Inc., Zillow Group, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Trulia, LLC

ZILLOW DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
No. 2:21-CV-00312-TSZ

- 13 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300