THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REX – REAL ESTATE EXCHANGE, INC., a
Delaware corporation,

        Plaintiff,

        v.

ZILLOW, INC., a Washington corporation;
ZILLOW GROUP, INC., a Washington
corporation; ZILLOW HOMES, INC., a
Delaware corporation; ZILLOW LISTING
SERVICES, INC., a Washington corporation;
TRULIA, LLC, a Delaware limited liability
company; and THE NATIONAL
ASSOCIATION OF REALTORS, an Illinois
trade association,

        Defendants.

No. 2:21-cv-00312-TSZ

**AGENDA FOR STATUS
CONFERENCE**

        Pursuant to the Court's Minute Order (D.E. 265), the parties met and conferred to agree on a tentative agenda for the status conference to be held on April 25, 2023, at 10:00 a.m.

**Issue 1: Trial Date**

        **Plaintiffs' Position on Defendants' Request for a Continuance**

        Plaintiff again adamantly opposes any extension of the trial date. The Court has twice denied the same request and, although nothing has changed since Defendants' prior attempts, Defendants persist in seeking delay, now for the third time.

        The parties are fully engaged in discovery to prepare this case for trial, producing documents and taking and defending various fact depositions.  Not only have the parties agreed on dates for the remaining fact depositions that have been noticed, they have locked down a schedule for all expert depositions.  Tellingly, Defendants do not complain about any delays in discovery.

AGENDA FOR STATUS CONFERENCE
Case No. 2:21-cv-00312-TSZ

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Ste 1200
Fort Lauderdale, FL 33301
Phone (954) 356-0011

They do not seek to extend discovery deadlines or the deadlines for dispositive motions.  Rather, they seek to continue only the trial date.  At the March 16, 2023 status conference, discussing Defendants' request to defer the trial date, the Court said, "I'm reluctant to change things", and Defendants have not provided any new reason for doing so.  Tr. of Status Conference at 56 l.12.

Defendants' central argument is that the amount of time the Court itself allotted for the resolution of dispositive motions is inadequate.  However, the Court established the schedule presumably after taking all relevant considerations into account.  That schedule, which is demanding but reasonable and to which the parties are prepared to adhere, requires the filing of dispositive motions by June 15th, 2023, and posits a trial date in mid-September 2023.

The Court also has twice rejected Defendant NAR's claim that it will be prejudiced if required to try this case and the *Burnett/Sitzer* case on the heels of each other and should so rule again. First, the commencement date of the *Burnette/Sitzer* case is not etched in stone and could change.  Last December the District Court granted the defendants motion for a continuance and ordered the courtroom deputy to set a trial date "in late 2023." *Burnett v. Natl. Assn. of Realtors*, 19-CV-00332-SRB, at *1 (W.D. Mo. Dec. 13, 2022) (Dkt. No. 1016). Subsequently the Court entered an Amended Notice of Hearing setting the jury trial for October 16, 2023. *Burnett v. Natl. Assn. of Realtors*, 19-CV-00332-SRB, at *1 (W.D. Mo. Dec. 19, 2022) (Dkt. No. 1020). Indeed, there is an appeal pending in the 8th Circuit from a district court ruling that will likely require a postponement of the trial if the appeal is not resolved by the trial date. *See* Status Report, *Burnett v. Natl. Assn. of Realtors,* 19-CV-00332-SRB, at *1 (W.D. Mo. Mar. 27, 2023) (Dkt. No. 1032).  But even if the trial date remains the same, Defendant NAR has more than ample resources to handle both cases. Its counsel are from two of the largest and most prestigious law firms in the United States and those firms easily can staff and, in fact, are staffing both cases.  Moreover, Defendant NAR was prepared to go to trial in the *Burnett/Switzer* case in February, 2021 before the trial was continued, and so

presumably has already done much of the trial preparation work.

Both NAR and Zillow tout the strength of their forthcoming summary judgment motions as a basis for seeking a continuance.   While this is not the time or place to brief summary judgment motions, because Defendants have chosen to advance arguments on the merits, REX responds briefly to their contentions.  NAR argues that REX will not be able to show an agreement between NAR and Zillow in violation of Section 1 of the Sherman Act because the Segregation Rule is an optional rule, meaning that NAR MLSs are not required to adopt it.   That is the very argument this Court rejected in its order denying Defendants' motion to dismiss.  In that order, Dkt. 98 at 12, this Court said: "the Supreme Court has concluded that the interpretation and promotion of a trade association's 'so-called voluntary standards' by the association's agents and members could be deemed to be "repugnant to the antitrust laws," and the association 'should be encouraged to eliminate the anticompetitive practices of all its agents acting with apparent authority.'" *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 561–62, 570 & 574 (1982). This Court found that REX had adequately alleged "brokerages, agents, and even customers allegedly have no choice but to comply with NAR's so-called optional rules. *See Hydrolevel*, 456 U.S. at 570 (emphasizing that the trade association was 'in reality an extra-governmental agency, which prescribes rules for the regulation and restraint of interstate commerce')[.]"

NAR notes that 30% of the MLSs have not adopted the Segregation Rule, which means, of course, that 70% have.   Those MLSs did not just happen to adopt the Segregation Rule.  They adopted it because NAR, though its members, promulgated it.  The record is replete with statements about the anticompetitive effects of the Segregation Rue and with statements from Zillow that once Zillow (or Zillow employees) joined NAR and the various NAR affiliated MLSs, Zillow was required to adopt, abide by, and enforce the Segregation Rule – even though Zillow repeatedly said it did not like the rule and considered it anti-consumer.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrary to NAR's assertion, the fact that the Segregation Rule is optional does not immunize NAR from antitrust liability.  In 2008, NAR settled a Sherman Act claim brought against it by the U.S. Department of Justice challenging a NAR rule that allowed brokers to "opt out" of providing their listings to non-traditional brokers to the detriment of those innovative brokers who were using the internet to compete with traditional brick and mortar brokers.  In settling the case, NAR agreed to eliminate those opt-out provisions that DOJ contended violated the Sherman Act, even though they were voluntary.  *See*, *e.g.*,  DOJ's Competitive Impact Statement in *United States v. National Association of Realtors*, Case No. 1:05-cv-05140, at 10-16 (N.D. Ill. June 12, 2008).

Zillow's argument that it did not enter into an agreement with NAR fares no better. This Court also rejected that argument in denying Defendants' motion to dismiss.  In its order, this Court said: "As the Supreme Court has held, '[c]oncerted efforts to *enforce* (rather than just agree upon) private product standards face more rigorous antitrust scrutiny.' *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 n.6 (1988) (emphasis in original)."  In its order (at 11), the Court found that REX alleged more than "Zillow's mere act of entering agreements with MLSs[.]"  Citing *Toscano v. Prof. Golfers Assoc.*, 258 F.3d 978, 984 (9th Cir. 2001)), the Court found: "Because the complaint also alleges that Zillow went a step further—e.g., by affirmatively redesigning its websites to enforce an allegedly misleading labeling system—Plaintiff has plausibly alleged that Zillow agreed to use the MLS rules to restrain trade. *See id.*"

Here, the record confirms the allegations in the amended complaint.  It establishes that Zillow redesigned its web site, implementing a two-tab display in order to comply with and enforce the Segregation Rule for all its listings, with a devastating impact on REX, which saw the views on its listings plummet.  Zillow's contention that REX will not be able to show an impact on competition is refuted by numerous Zillow documents showing the adverse impact of the display change on REX and on For Sale By Owner Homes.  The record further establishes that Zillow shared its new

display with MLSs  before going live with its display change, to make sure the new web site complied with all of NAR's rules, including the Segregation Rule; that Zillow implemented automated systems to ensure it placed listings on the Other Listings tab if required to do so by the Segregation Rule; and also that Zillow shifted listings from the Agent Listings tab to the Other Listings tab, when necessary to enforce the Segregation Rule because a listing was inadvertently placed on the wrong tab.

Finally, NAR's and Zillow's contention that REX is seeking to attack the Buyer Broker Commission Rule and that Rule is not adequately pled in its amended complaint ("AC") is wrong. REX alleges in its AC, and not just in its expert report, that the Buyer Broker Commission Rule inflates real estate commissions and the Segregation Rule protects those inflated commissions from competition.  The AC alleges that they Buyer Broker Commission Rule inflates commissions, citing the rule by name (AC at ¶¶ 30, 38) and also repeatedly describing the impact of the rule on commission rates without citing the Rule by name (AC at ¶¶ 31-33, 35 58, 70, 73, 82 ).  The Court cited some of those paragraphs and acknowledged the relevance of the Buyer Broker Commission Rule when it denied Defendants' motions to dismiss. Defendants seize on a statement by counsel, but such a statement cannot and does not negate the allegations in the AC.  The AC also alleges that the Segregation Rule precludes REX from competing and stifles competition more generally.  (AC at ¶¶ 8-9, 60, 70, 89-97, 107, 114-117, 124-125, 128-130).

Thus, while Defendants contend the strength of their forthcoming summary judgment motions justify a continuance, REX is equally confident of the strength of its forthcoming oppositions. REX strongly believes the trial date should remain unchanged and looks forward to its day in court.

### NAR's Position

REX's sole remaining claim against NAR is based on 15 U.S.C. § 1, which requires REX to prove an agreement.  In its amended complaint, REX alleged there was an agreement between Zillow

and NAR to change the Zillow website to "segregate, conceal, and demote non-MLS listings," ECF 99 ¶ 60, by complying with an optional NAR rule: Section 18.3.11 of NAR's Handbook on Multiple Listing Policy. *Id.* ¶102 & n.11 ("The segregation rule appears in NAR's IDX optional rules . . . . Under this rule, MLS member brokers must display listings received from fellow MLS brokers through the IDX fees separately from listings received from non-MLS brokers."); *id.* ¶104 ("Zillow's website redesign, which demotes non-MLS listings, is driven by its voluntary membership in the NAR and MLSs and the agreed adherence to their rules."); *id.* ¶106 ("Beginning in January 2021, Zillow applied the clear-segregation rule to separate MLS and non-MLS listings.").

When NAR moved to dismiss the amended complaint, it noted Section 18.3.11 is an optional NAR policy, and multiple listing services are free to decide whether to allow commingling of non-MLS and MLS listings, which negates REX's claim that Zillow was segregating listing because of an agreement between Zillow and NAR to implement Section 18.3.11.  Accepting the truth of REX's allegations, as it was required to at the pleading stage, the Court concluded that REX had plausibly alleged Section 18.3.11 could constitute an unlawful agreement because REX claimed "brokerages, agents, and even customers allegedly have no choice but to comply with NAR's so-called optional rules." *Id.* at 12 (emphasis added).  The Court thus allowed this claim to discovery because REX had sufficiently alleged that "absent NAR's actions in drafting the rules and effectively forcing Zillow and other MLS participants to comply with them, Zillow would not have changed its websites."  ECF 98, at 8 (emphasis added).

At summary judgment, when the Court no longer is required to accept the truth of REX's allegations, NAR will show that there is no genuine dispute that Section 18.3.11 is optional, and all decisions relevant to commingling and segregation are independently made by multiple listing services, not NAR.   For example, contrary to what REX alleged and argued at the pleading stage, it is undisputed that NAR has not and does not discipline multiple listing services that do not adopt Section 18.3.11 and that 30% of multiple listing services affiliated with NAR have not adopted Section 18.3.11.   That means more than one hundred MLSs affiliated with NAR do not require segregation of MLS and non-MLS listings.  For example, CRMLS (covering Los Angeles) did not

require segregation at the time of the Zillow website change.  And REColorado (covering Denver) repealed its version of Section 18.3.11 after Rex filed it complaint without even telling NAR (since the rule is optional, no action from NAR was required).  As these undisputed facts make clear, NAR does not enforce Section 18.3.11 or require multiple listing services to adopt it.  Thus, even if Section 18.3.11 did not exist, nothing would be different (some multiple listing services would choose to require segregation, some would not).

This undisputed evidence will dispose of REX's antitrust claims at summary judgment because there will be no evidence to support the agreement alleged by REX in its amended complaint. REX's counsel conceded as much as the last status conference, when he told the Court that REX's case is now about allegations that were not in its amended complaint, but instead were first made in REX's expert reports.  3/16/2023 Tr. at 20:8-10 ("MR. BOIES: Our complaint was not about the buyer broker commission rule. Our expert report is all about the buyer broker commission rule.").  It is improper to try to amend a complaint by expert report, ignoring the requirements of Rule 15, and REX's maneuver shows that REX now intends to try a different case, about a different rule, than what is described in its amended complaint.

NAR therefore respectfully requests that, at the upcoming status conference, the Court continue the September 18 trial date to provide adequate time to hear argument and rule on NAR's summary judgment motion before the parties engage in the extensive costs and burdens of trial preparation.  Under these circumstances, NAR also respectfully asks the Court not to simultaneously impose on NAR the costs of preparing to try this case and the *Sitzer* trial in the Eastern District of Missouri, which is set for an October 16 trial date (which will be tried by the same lead trial counsel and with most of the same witnesses who also appear before this Court if REX's claims were to proceed to trial).

**Zillow's Position**

At the March 16, 2023, status conference, this Court indicated that the April status conference should be used to address whether the September trial date should be moved, at least in part to ensure that "key motions" can be "decided early enough so" the parties "know where everyone is going."

Tr. of Status Conference ("Tr.") 56:11-15 (March 16, 2023); *see* Tr. 55:21-23 (this Court indicating the parties should "get a better fix on [the trial date] at the next status conference we have").  As this case approaches the close of discovery, REX has revealed that it lacks evidence to support the primary antitrust claim it pled in its First Amended Complaint ("FAC"), and, like NAR, Zillow expects that summary judgment proceedings will impact the scope of trial.

In the FAC, REX brings a narrow challenge to the Segregation Rule and Zillow's supposed website changes because of it.  The antitrust count challenges only the "agreement … to boycott and deprive non-MLS, non-NAR members … effective access to prominent Zillow residential real estate aggregator websites."  FAC ¶ 135; *see also id*. ¶¶ 132-141.  Elsewhere, REX makes clear that "Zillow's agreement to comply with rules that segregate MLS listings on their websites" is what "violates federal and state antitrust law."  *Id*. ¶ 118; *see also id*. ¶¶ 89-118, 124-30.

At summary judgment, Zillow will show that REX lacks evidence to establish that Zillow's website design (1) results from an agreement to restrain trade or (2) harms competition.  Indeed, REX has effectively abandoned its obligation to find evidence supporting its Segregation-Rule-based claim.  Instead, after surviving a motion to dismiss on the alleged agreement and injury in the FAC, REX now wants to litigate other NAR policies, unrelated to Zillow or REX's alleged injuries, such as the so-called "Buyer Broker Commission Rule," as well as some other, vague conspiracy among agents to inflate real estate broker commissions.  Tr. 17:19-20; Tr. 18:16-19, 19:8-12.

REX lacks evidence to tie Zillow to its new theories, and, more fundamentally, REX cannot rely on evidence relating to these new theories because they are not in the FAC.  As this Court explained, "if it's not in the complaint, it may not see the light of day during trial." Tr. 20:13-14; *accord Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908-09 (9th Cir. 2011); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).  There can be no doubt that the Buyer Broker Commission Rule theory is not in the FAC: REX admitted the "complaint was not about the buyer broker commission rule," Tr. 20:8-10, and this Court explained that it did not "see, in reading the complaint as it's presently drafted, that this … buyer broker commission rule is implicated."  Tr. 19:25-20:4; *see* Minute Order Extending Deadlines 1 (Jan. 11, 2023), Dkt. 247 ("On December 12,

2022, Plaintiff's expert Dr. David Evans submitted a report that appears to substantially expand Plaintiff's theory of harm in this action."). Indeed, the Buyer Broker Commission Rule is referenced only in the background of the FAC, *e.g.*, FAC ¶¶ 30, 38, 58, 73, 82, and never is tied to REX's claim.

Accordingly, REX will be unable to support its claim. It cannot offer evidence relating to these new theories, and, at the same time, REX has fatally undermined the Segregation-Rule theory it originally brought. This Court's summary judgment ruling stands to impact the scope and length of trial, including whether there should be a trial at all. Zillow therefore agrees with NAR that the trial date should be moved to give the parties the benefit of that ruling before preparing for trial.

## Issue 2: Richard Barton Deposition

Plaintiff has noted the deposition of Zillow's Chief Executive Officer, Richard Barton. Zillow and REX are conferring on whether that deposition is appropriate, but anticipate they may need this Court's assistance in resolving the issue. If so, the parties will brief the issue and respectfully request the Court not to resolve this dispute until that briefing is completed.

## Issue 3: Production of Materials Related to REX's Alleged Damages

Defendants claim that in its damages expert report, REX calculates financial injury arising from an abandoned initial public offering, which REX alleges is the result of Defendants' conduct. According to Defendants, the parties disagree over the scope of REX's document production on this issue, and Defendants may pursue the issue by filing an appropriate motion.

REX's position is that Defendants misrepresent the basis for the damages opinion of REX's expert; REX's expert does not calculate REX's "financial injury" based on an abandoned initial public offering." That being said, Defendant Zillow has propounded Requests For Production 147 and 148 concerning REX's efforts to fundraise in the capital markets after Defendants inflicted the antitrust injury that caused REX to fail. These requests are sub-sets and entirely duplicative of Defendant Zillow's RFPs 23 and 94, in response to which REX has produced all responsive non-privileged documents, generated by the agreed upon search terms.

**Issue 4: Expert Depositions Conducted After Discovery Cutoff**

The Parties have stipulated, and respectfully request Court approval, to take the following expert depositions after the May 26 discovery cutoff to accommodate scheduling issues: Zillow's Antitrust Expert: May 30, 2023; Plaintiffs' Economic Expert, Dr. David Evans:  June 1, 2023.  The parties have agreed that Defendants will not use the fact that these depositions are being taken during the week after the current close of discovery as a basis for seeking to continue the trial date.

DATED: April 18, 2023

BOIES SCHILLER FLEXNER LLP

By:/s/ Ursula Ungaro
By:/s/ Stephen N. Zack
Ursula Ungaro (*Admitted Pro Hac Vice*)
Stephen N. Zack (*Admitted Pro Hac Vice*)
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
Email: uungaro@bsfllp.com
        szack@bsfllp.com

By:/s/ Carl E. Goldfarb
Carl E. Goldfarb (*Admitted Pro Hac Vice*)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: cgoldfarb@bsfllp.com

By:/s/ David Boies
David Boies (*Admitted Pro Hac Vice*)
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
Email: dboies@bsfllp.com

McCARTY LAW PLLC

COOLEY LLP

By: /s/ Christopher B. Durbin
Christopher B. Durbin (WSBA No. 41159)
1700 Seventh Avenue
Suite 1900
Seattle, WA 98101-1355
Phone: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

By:/s/ Ethan Glass
By:/s/ Samantha A. Strauss
Ethan Glass (*Admitted pro hac vice*)
Samantha A. Strauss (*Admitted pro hac vice*)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Phone: (202) 776-2244
Fax: (202) 842-7899
eglass@cooley.com
sastrauss@cooley.com

By:/s/ Sarah M. Topol
Sarah M. Topol (*Admitted pro hac vice*)
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
stopol@cooley.com

By:/s/ Michael D. Bonanno

By:/s/ Darren L. McCarty
By:/s/ Cristina M. Moreno
Darren L. McCarty (*Admitted Pro Hac Vice*)
Cristina M. Moreno (*Admitted Pro Hac Vice*)
1410B West 51st Street
Austin, TX 78756
Telephone: 512-827-2902
Email: darren@mccartylawpllc.com

**Attorneys for Plaintiff REX-Real Estate Exchange, Inc.**

By:/s/ Kathleen Lanigan
By:/s/ Peter Benson
By:/s/ Michael Sebring
Michael D. Bonanno (*Admitted pro hac vice*)
Kathleen Lanigan (*Admitted pro hac vice*)
Peter Benson (*Admitted pro hac vice*)
Michael Sebring (*Admitted pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, Suite 900
Washington, D.C. 20005
Phone: (202)538-8000
Fax: (202) 538-8100
mikebonanno@quinnemanuel.com
katlanigan@quinnemanuel.com
peterbenson@quinnemanuel.com
michaelsebring@quinnemanuel.com

**Attorneys for The National Association of Realtors®**
\*\*Pursuant to this Court's Electronic Filing Procedure III L, the electronic signatory has obtained approval from all other signatories.

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:/s/ Aravind Swaminathan
By:/s/ Nicole Tadano
Aravind Swaminathan (WSBA No. #33883)
Nicole Tadano (WSBA No. 40531)
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: 206-839-4300
Facsimile: 206-839-4301
Email: aswaminathan@orrick.com
ntadano@orrick.com

By:/s/ Naomi J. Scotten
Naomi J. Scotten (*Admitted Pro Hac Vice*)
51 West 52nd Street

New York, NY 20005
Telephone: 212-506-5000
Email: nscotten@orrick.com

By:/s/ Laura B. Najemy
Laura B. Najemy (*Admitted Pro Hac Vice*)
lnajemy@orrick.com
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone: 617-880-1800

By:/s/ Paul Stancil
Paul Stancil (*Admitted Pro Hac Vice*)
pstancil@orrick.com
609 Main Street
40th Floor
Houston, TX 77002
Telephone: 713-658-6446

DECHERT LLP

By: /s/ John Jurata
John "Jay" Jurata (*Admitted Pro Hac Vice*)
jay.jurata@dechert.com
1900 K Street, NW
Washington, DC 20006
Telephone: 202-261-3440

By: /s/ Russell P. Cohen
Russell P. Cohen (*Admitted Pro Hac Vice*)
russ.cohen@dechert.com
One Bush Street
Suite 1600
San Francisco, CA 94104
Telephone: 415-262-4506

***Attorneys for Defendants Zillow, Inc.,
Zillow Group, Inc., Zillow Homes, Inc.,
Zillow Listing Services, and Trulia, LLC***

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on April 18, 2023, I caused a true and correct copy of the foregoing to be

3 filed in this Court's CM/ECF system, which will send notification of such filing to counsel of record.

4      DATED: April 18, 2023

5

6

7                               By: */s/ Nicole Tadano*                                        

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28