1

2

3

4

5

6

7

8

9

10

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11 | REX – REAL ESTATE EXCHANGE, INC.,

Case No. 2:21-cv-00312-TSZ

12 |         Plaintiff,

13 |      v.

**PLAINTIFF REX'S CONSOLIDATED MOTION FOR PARTIAL SUMMARY JUDGMENT**

14 | ZILLOW, INC., et al.

**ORAL ARGUMENT REQUESTED**

15 |         Defendants.

NOTE ON MOTION CALENDAR: June 30, 2023

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

28

# TABLE OF CONTENTS

STATEMENT OF UNDISPUTED FACTS ...........................................................................1

    A.    NAR ................................................................................................................1

    B.    NAR's MLS Rules ........................................................................................3

    C.    Zillow ............................................................................................................6

    D.    REX ...............................................................................................................9

    E.    Zillow's Attempted Amendments to NAR Rules ......................................10

    F.    Additional Undisputed Facts Relating Solely to Counts II and IV ..........11

SUMMARY JUDGMENT STANDARD ..........................................................................13

ARGUMENT ...................................................................................................................14

    I.    The Undisputed Facts Establish an Agreement for Purposes of The Sherman Act, Section 1. .............................................................................14

        A.    Legal Standard................................................................................14

        B.    Legal Analysis ...............................................................................14

    II.    The Undisputed Facts Establish "Falsity" for Purposes of the Lanham Act and the Washington Consumer Protection Act .......................................19

        A.    Legal Standard................................................................................19

        B.    Legal Analysis ...............................................................................22

        a.    Zillow's presentation of its property search results as "Agent Listings" and "Other Listings", was literally false because REX listings were falsely grouped with "Other Listings" even though REX's homes for sale were all listed by licensed real estate agents. ...........22

        b.    Zillow's two-tab configuration also misled consumers, causing them either to believe they had seen all listings (often not even noticing there was a secondary tab) or to believe REX's listings were inferior. .................................................................................................23

            1.    Zillow's new two-tab configuration misled consumers into believing they had seen all agent listings when they had not...........23

            2.    Zillow's new two-configuration misled consumers into believing REX's listings were inferior. ..............................................24

        c.    Zillow's display of REX listings as "Other Listings" rather than "Agent Listings" is a misleading representation that also violates the first element Washington's Consumer Protection Act (CPA). RCW 19.86.020. ..................................................................................................25

CONCLUSION .................................................................................................................26

**TABLE OF AUTHORITIES**

**Cases**

*2301 M Cinema LLC v. Silver Cinemas 9 Acquisition Co.*,
  342 F. Supp. 3d 126 (D. D.C. 2018) ........................................................................ 18

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ................................................................................................ 18

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
  456 U.S. 556 (1982) ................................................................................................ 19

*American Tobacco v. United States*,
  328 U.S. 781 (1946) ................................................................................................ 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 16

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ........................................................................... 22, 27

*Associated Press v. United States*,
  326 U.S. 1 (1945) .................................................................................................... 19

*Blalock v. Ladies Pro. Golf Ass'n*,
  359 F. Supp. 1260 (N.D. Ga. 1973) ........................................................................ 16

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ................................................................................ 17

*C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*,
  131 F.3d 430 (4th Cir. 1997) .................................................................................. 24

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 15

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
  228 F.3d 24 (1st Cir. 2000) ..................................................................................... 23

*Clorox Co. v. Reckitt Benckiser Group PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) ............................................................... 23, 25

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ............................................................................. 22, 27

*Esco Corp. v. United States*,
  340 F.2d 1000 (9th Cir. 1965) ................................................................................ 17

*Flowserve Corp. v. Hallmark Pump Co*,
  2011 WL 1527951 (S.D. Tex. 2011) .................................................................. 22, 24

*Gold Medal LLC v. USA Track & Field*,
  187 F.Supp.3d 1219 (D. Or. 2016) ......................................................................... 18

MOTION FOR PARTIAL SUMM JUDG                iii
Case No.2:21-cv-00312-TSZ

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
　No. CIV. A. 88-499, 1990 WL 127124 (D.N.J. Aug. 30, 1990), *aff'd*, 995 F.2d 425 (3d Cir.
　1993) ................................................................................................................................. 16

*In re Citric Acid Litig.*,
　191 F.3d 1090 (9th Cir. 1999) .......................................................................................... 17

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
　933 F.3d 1136 (9th Cir. 2019) .......................................................................................... 17

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*,
　19 F.3d 125 (3d Cir. 1994) ................................................................................................ 24

*Lumber Products Ass'n v. United States*,
　144 F.2d 546 (9th Cir. 1944) ............................................................................................ 18

*Mayor & City Council of Balt. Md. V. Citigroup*,
　709 F.3d 129 (2d Cir. 2013) .............................................................................................. 17

*Mut. Pharm. Co. v. Ivax Pharms., Inc.*,
　459 F. Supp. 2d 925 (C.D. Cal. 2006) ........................................................................ 24, 28

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
　290 F.3d 578 (3d Cir. 2002) .............................................................................................. 24

*O.M. by and through Moultrie v. National Women's Soccer League, LLC*
　(D. Or. 2021) ..................................................................................................................... 18

*Panag v. Farmers Ins. Co. of Wash.*,
　204 P.3d 885 (Wash. 2009) ............................................................................................... 29

*PermaLife Mufflers v. Int'l Parts Co.*,
　392  U.S. 134 (1968) ......................................................................................................... 17

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*
　227 F.3d 489 (5th Cir. 2000) ............................................................................................ 24

*Scotts Co. v. United Indus. Corp.*,
　315 F.3d 264 (4th Cir. 2002) ............................................................................................ 24

*Scotts Co. vs. United Indus. Corp.*,
　315 F.3d 264 (4th Cir. 2002) ............................................................................................ 24

*Short v. Demopolis*,
　691 P.2d 163 (Wash. 1984) ............................................................................................... 28

*Soremekun v. Thrifty Payless, Inc.*,
　509 F.3d 978 (9th Cir. 2007) ............................................................................................ 15

*Southland Sod Farms v. Stover Seed Co.*,
　108 F.3d 1134 (9th Cir. 1997) ...................................................................................... 22, 23

*TrafficSchool.com, Inc. v. Edriver Inc.*,
　653 F.3d 820 (9th Cir. 2011) ................................................................................... 22, 23, 25

*United Broth. of Carpenters & Joiners of Am. v. United States,*
   330 U.S. 395 (1947) ................................................................................ 18

*United States v. Apple, Inc.,*
   791 F.3d 290315 (2d Cir. 2015) ............................................................ 19

*West Penn Allegheny Health System, Inc. v. UPMC,*
   627 F.3d 85 (3d Cir. 2010) ..................................................................... 17

**Statutes**

15 U.S.C. § 1 ................................................................................................ 16

15 U.S.C. § 1125 ............................................................................ 16, 22, 25

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 15

Lanham Act ..................................................................................... 16, 24, 25

Sherman Act .......................................................................................... passim

Washington Consumer Protection Act, RCW 19.86.020 ..................... 17, 32, 33

Washington Consumer Protection Act, RCW 19.86.030 ........................... 1, 14

MOTION FOR PARTIAL SUMM JUDG          v          BOIES SCHILLER FLEXNER LLP
Case No.2:21-cv-00312-TSZ                            401 E. Las Olas Blvd, Suite 1200
                                                  Fort Lauderdale, FL 33301
                                                  (954) 540-6219

1

2

**PLAINTIFF REX'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE AGREEMENT ELEMENT OF SECTION 1 OF THE SHERMAN ACT AND LITERAL FALSITY UNDER THE LANHAM ACT**

3

4

5

Plaintiff REX – Real Estate Exchange, Inc. moves for entry of an order granting summary

6

7

judgment on two discrete issues because the evidence establishes as a matter of law: (i) the existence

8

of an agreement for purposes of the Sherman Act, Section 1 claim as stated in Count I and of the

9

Washington Consumer Protection ACT, RCW 19.86.030, as stated in Count VI; and (ii)  falsity

10

within the meaning of the Lanham Act and the Washington Consumer Protection Act claims as

11

stated in Counts II and IV.

12

**STATEMENT OF UNDISPUTED FACTS**

13

14

**A.  NAR**

15

The National Association of REALTORS® ("NAR") is the world's largest trade association,

16

representing 1.5 million members.[1] NAR Members belong to one or more of some 1,300 local

17

associations/boards and 54 state and territory associations of REALTORS®.[2]

18

"A primary responsibility of an association of Realtors® is to protect the interests of the

19

association and its members." Ex. 1 NAR0001650 at '6733.[4] To that end, NAR promulgates

20

policies, rules and guidance, as well as a Code of Ethics to which it demands strict adherence. Ex.

21

22

23

24

[1] *See* https://www.nar.realtor/newsroom/nar-fact-sheet.

[2] *See* https://www.nar.realtor/about-nar.

25

[3] NAR's CEO has stated: "First and foremost, it's imperative that we are not just the National Association OF

26

REALTORS®, we are also the National Association FOR REALTORS®. Every action we take is geared to making sure our members come first. CEO Update - 2017 Board of Directors, National Association of REALTORS (Nov. 6, 2017). https://www.nar.realtor/ceo-update-2017-board-of-directors (emphasis in original).

27

[4] "Ex." Citations refer to the Exhibits attached to the Declaration of Carl E. Goldfarb filed in support of this motion.

28

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

1, at '681.  Because NAR rules govern most residential home sales across the nation, they can have significant economic impact on one of the most important transactions in many Americans' lives.[5]

NAR and its MLSs (discussed below) have been repeatedly the focus of regulatory scrutiny regarding anti-competitive conduct. Most recently, the United States Department of Justice ("DOJ") appealed a district court order curtailing its investigation into a new NAR mandatory rule governing the inputting of listings into MLSs. *Id.* In its brief, DOJ stated NAR's new rule was "[p]rompted by competition from upstart listing services" and "restricts the choices available to home sellers and listing brokers who want to market homes outside the NAR affiliated MLS system and potentially excludes new listing services that seek to compete against MLSs for home listings." *Id.* This case challenges concerted conduct by NAR and Zillow to exclude REX, an internet-based disrupter that sought to reduce or even eliminate buyer-broker commissions, from the residential real estate brokerage market.



---

[5] *See* https://www.justice.gov/atr/case/national-association-realtors-v-united-states-america-et-al.
[6] The DOJ recently stated, in describing NAR's relationship with its MLSs, that: "NAR controls these MLSs nationwide through its roughly 1,400 local associations or boards." https://www.justice.gov/atr/case/national-association-realtors-v-united-states-america-et-al.
[7] *See also* https://www.brightmls.com/article/nar-mls-policies-update.

NAR is a bottoms-up organization of realtors where members get together and propose rules through local, state, and national associations, and a top-down organization where those rules get promulgated and imposed on members who are competitors in the local residential real estate brokerage services markets. Ex. 4, Evans Report at ¶¶ 18, 40, 159, 227. There is no meaningful economic distinction between NAR, the members who collectively develop, adopt, and promulgate rules, and the NAR MLSs that are made up of essentially those same members. *Id.* at ¶ 40.

### B. NAR's MLS Rules

NAR publishes an MLS Handbook with a series of policy statements as well as model rules and bylaws for NAR MLSs. *See* Ex. 1, '674 (Section C) and '697 (Section F).

Some of NAR's model rules are "mandatory," while others are "optional" or "informational" or "recommended." Ex. 1, at '651. The preface of the Handbook states:

> This Handbook is intended to guide member associations of Realtors® in the operation of multiple listing services consistent with the policies established by the National Association's Board of Directors.
>
> . . .
>
> Association and association-owned MLSs must conform their governing documents to the mandatory MLS policies established by the National Association's Board of Directors to ensure continued status as member boards and to ensure coverage under the master professional liability insurance program.

Ex. 1, at '653. If a NAR MLS adopts an "optional" rule, that Rule becomes mandatory for members and participants of that MLS.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

NAR's MLS rules are a "standard template used by many MLS[s]." Ex. 8, ZG_00058910 at '944; *see also* https://www.nar.realtor/handbook-on-multiple-listing-policy ("The Handbook includes model enabling ***provisions for insertion in*** association bylaws authorizing establishment of a multiple listing service ***<u>and bylaws and rules and regulations for MLSs</u>*** which will permit optimum service and efficiency.") (emphasis added).

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

One of NAR's Model Rules is the mandatory "Buyer Broker Commission Rule" Ex. 1, at '701-702. The Buyer Broker Commission Rule requires the listing agent to make a mandatory offer of compensation to all buyers' agents. Ex. 1, at '701-702. In other words, an MLS participant cannot submit a listing for display without offering to share the total commission on either a percentage or dollar-amount basis with the buyer's agent. Ex. 1, at '701-702.

In its recent filing, DOJ stated with respect to the Buyer Broker Commission Rule: "By effectively affording sellers' brokers control over what buyers pay their brokers, the rule could curtail price competition among buyer-brokers." DOJ further stated, "Potentially exacerbating these effects, buyer-brokers could steer customers to higher-commission listings – or discourage sellers' agents from offering lower commissions."[8]

---

[8] https://www.justice.gov/atr/case/national-association-realtors-v-united-states-america-et-al.

An IDX (i.e., Internet Data Exchange) feed is a means of transmission of MLS listings that is governed by NAR's IDX policies and rules. Ex. 1, at '688-689. Pursuant to NAR's IDX policy, MLS Participants are permitted to display all MLS listings together on their websites. Ex. 10, Hendricks Decl. ¶ 7; Ex. 11, May 2023 Beardsley Tr. 22:10–14. NAR model rule 18.2.2 states that NAR MLS participants "may not use IDX-provided listings for any purpose other than display as provided for in these rules." Ex. 1, at '796.

Only qualifying MLS Participants may obtain listing data via IDX feeds. *See* Ex. 1, at '688. NAR requires that an "MLS Participant" at least hold a current, valid real estate broker's license *and* offer or accept cooperation and compensation to and from other participants *or* be licensed or certified to engage in the appraisal of real property. Ex. 1, at '667-68.

To obtain IDX-compliant listings, an MLS Participant enters into an IDX agreement with an MLS whereby the MLS Participant agrees to comply with NAR's IDX policy and rules as adopted by the MLS in exchange for being able to display the MLS's listings on its website. *See* Ex. 1, at '688.

The Segregation Rule is an optional Rule. It governs the display of home listings data via IDX and permits MLSs to display non-MLS data only if it is displayed separately from MLS listings. *See* Ex. 1, at '750 and '798. Under the Segregation Rule, "[l]istings obtained through IDX feeds from REALTOR® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources." *Id*.

███████████████████████████████████████████████████
███████████████████████████████████ There is no evidence that any NAR MLS would have adopted the Segregation Rule if it was not a NAR rule. In fact, when NAR amended the Segregation

1  Rule in 2014, the NAR MLSs subsequently adopted the amended rule as well.  Ex.  13, Evans Reply
2  Report at ¶28 n.60.

3        The Segregation Rule was proposed and developed by NAR members and adopted by a
4  NAR committee and NAR governance through the bottoms-up process and then promulgated by
5  NAR through the top-down process. *Id.* at ¶¶ 11-13.
6

7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████

9        The Commingling Rule is a mandatory rule. Ex. 6, at 160:5-12. It effectively limits what
10  listings MLSs can display separately by providing for the "commingling" of all ***MLS*** listings --but
11  not non-MLS listings. Ex. 1, at '1749. [9]  It states: "[a]n MLS participant (or where permitted locally,
12  an MLS subscriber) may co-mingle the listings of other brokers received in an IDX feed with listings
13  available from other MLS IDX feeds, provided all such displays are consistent with the IDX rules,
14  and the MLS participant (or MLS subscriber) holds participatory rights in those MLSs." Ex. 1,
15  '1749.
16

17        **C.  Zillow**
18  ████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████████████
20  ██████████████████████████
21
22  ████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████████████
24  ██████████████████████████████████    ██████████████████████████████
25
26  _____
27  █ ██████████████████████████████████████████████████████████
28  ████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 [10] Zillow defines its "partners" as including "agents, brokers, [and] MLSs."
https://www.zillowgroup.com/industry/;

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  Those listings were not visible

22  unless a consumer first clicked on the "Other listings" tab.

23  Even though REX listings were submitted by licensed real estate agents, Zillow did not place

24  them under "Agent Listings" but rather, included them under the "Other Listings" tab.

25

26  _____

27  [11] See https://www.zillowgroup.com/news/nar-appointees/ .

[12] Zillow also redesigned Trulia's website and mobile display

28

MOTION FOR PARTIAL SUMM JUDG          8          BOIES SCHILLER FLEXNER LLP
Case No.2:21-cv-00312-TSZ                              401 E. Las Olas Blvd, Suite 1200
                                                       Fort Lauderdale, FL 33301
                                                       (954) 540-6219

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**D.  REX**

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

9

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

Until Zillow joined NAR and implemented its two-tab display in January 2021, REX listings were displayed along with all other residential listings when a consumer searched on Zillow.

After Zillow rolled out its two-tab display, all of REX's listings were relegated to the second, seldom-visited tab labeled "Other Listings" and the views on REX's listings plummeted. Evans Reply Report at ¶ 54;

**E.  Zillow's Attempted Amendments to NAR Rules**

---

[13] In its opening brief the DOJ stated with respect to the Buyer Broker Commission Rule: "By effectively affording sellers' brokers control over what buyers pay their brokers, the rule could curtail price competition among buyer-brokers." DOJ further stated, "Potentially exacerbating these effects, buyer-brokers could steer customers to higher-commission listings – or discourage sellers' agents from offering lower commissions." https://www.justice.gov/atr/case/national-association-realtors-v-united-states-america-et-al.

### F.  Additional Undisputed Facts Relating Solely to Counts II and IV

After Zillow implemented the two-tab display, the consumer experience of Zillow's landing page changed in important ways.  Specifically:

- ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

   Consumers and even real estate professionals reported that they were actually confused by Zillow's new search listings practice. For example:

- ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████

- ████████████████████████████████████████████

██████████████████████████████████████

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ                    12

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

1

2

3

4

5     Zillow misled them by

6  representing that REX's listings were not "Agent Listings" and by disparaging REX's listings by

7  placing them under the "Other Listings" tab.

8                    **SUMMARY JUDGMENT STANDARD**

9         Summary judgment is appropriate if there is no genuine dispute as to any material fact and

10  the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party

11  bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*

12  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party will have the burden of proof at

13  trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

14  moving party. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). On an issue

15  where the nonmoving party will bear the burden of proof at trial, the moving party can prevail

16  merely by pointing out to the district court that there is an absence of evidence to support the non-

17  moving party's case. *Celotex Corp.,* 477 U.S. at 325. If the moving party meets the initial burden,

18  the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial

19  to defeat the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

20        That standard is met here, and this Court should enter a partial summary judgment

21  establishing for purposes of trial that the defendants entered into an agreement or conspiracy, an

22  essential element of REX's Sherman Act, Section 1 claim. *See, e.g., Gulfstream III Assocs., Inc. v.*

23  *Gulfstream Aerospace Corp.*, No. CIV. A. 88-499, 1990 WL 127124, at *3 (D.N.J. Aug. 30, 1990),

24  *aff'd*, 995 F.2d 425 (3d Cir. 1993) (granting in part plaintiffs' motion for partial summary judgment

on Plaintiffs' claim under Section 1 that the parties had entered into an agreement, here an agreement to exchange pricing information); *Blalock v. Ladies Pro. Golf Ass'n*, 359 F. Supp. 1260, 1268 (N.D. Ga. 1973) (granting plaintiff's motion for summary judgment "to the limited extent of ruling that plaintiff's suspension by her competitors defendants Sullivan, Rankin, Craft, Zavichas and Miller through the mechanism of defendant LPGA, was in violation of § 1 of the Sherman Act"). The Court also should grant summary judgment for REX on the issue of "falsity", an element of REX's Lanham Act, 15 U.S.C. § 1125, and Washington Consumer Protection Act, RCW 19.86.020, claims as stated in Counts II and IV.

## ARGUMENT

### I.    The Undisputed Facts Establish an Agreement for Purposes of The Sherman Act, Section 1.

#### A.  Legal Standard

To demonstrate that a restraint violates Section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must prove (1) the existence of a contract, combination of contracts, or conspiracy among two or more persons or distinct business entities, (2) by which the persons or entities intend to harm or restrain trade or commerce among several states, (3) which actually injures competition, and (4) that the injury to the plaintiff flowed from an anti-competitive aspect of the practice under scrutiny. *See Brantley v. NBC Universal, Inc.,* 675 F.3d 1192, 1197 (9th Cir. 2012). *See also In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019). Plaintiff REX seeks partial summary judgment only as to the first element, *i.e.*, "a contract, combination of contracts, or conspiracy" among the defendants.[14]

#### B.  Legal Analysis

---

[14] The Washington Consumer Protection Act makes unlawful "[e]very contract, combination, or conspiracy in restraint of trade or commerce." RCW 19.86.030.

In the context of a Sherman Act, Section 1 claim, the threshold for proving the existence of an agreement is straight forward. All that is required is that the evidence show a "meeting of minds." *American Tobacco v. United States*, 328 U.S. 781,810 (1946) (circumstances must reveal "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement); *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010). Proof of a formal or explicit agreement is not necessary. *See Interstate Circuit v. United States,* 306 U.S. 208. (1939). The understanding may be tacit and can arise without verbal communication. *See, Mayor & City Council of Balt. Md. V. Citigroup,* 709 F.3d 129, 136 (2d Cir. 2013). Even a "knowing wink or nod" can be sufficient to prove an agreement. *Esco Corp. v. United States,* 340 F.2d 1000, 1007 (9th Cir. 1965). Moreover, that the parties to the agreement did not have identical motives or that one party was coerced to participate, does not preclude the finding of an agreement for the purposes of Section 1. *See, e.g. PermaLife Mufflers v. Int'l Parts Co*., 392  U.S. 134, 142 (1968) , *overruled on other grounds by Copperweld*, 467 U.S. at 765-766; *Albrecht v. Herald Co*.,, 309 U.S. 145, 150 n.6 (1968)*, overruled on other grounds by State Oil Co. v. Kahn*, 522 U.S. 3 (1997); *United States v. Apple Inc*., 791 F.3d 290 , 317-18 (2d Cir),. , *cert. denied*, 136 S. Ct. 1376 (2015). The "agreement" can be proven by direct or circumstantial evidence, or both. *See In re Citric Acid Litig*., 191 F.3d 1090 (9th Cir. 1999) (genuine issue of fact can be shown by direct or circumstantial evidence in case alleging conspiracy to fix prices in violation of Sherman Act); *2301 M Cinema LLC v. Silver Cinemas 9 Acquisition Co*., 342 F. Supp. 3d 126, 136 (D. D.C. 2018).

With respect to trade associations, courts have recognized that for purposes of a Section 1 claim, the "agreement" may be inferred from the enforcement of privately promulgated rules that restrain trade.  In *Allied Tube & Conduit Corp. v. Indian Head, Inc*., the Supreme Court held: "[c]oncerted efforts to enforce (rather than just agree upon) private product standards face more

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

1   rigorous antitrust scrutiny." 486 U.S.at 501 n.6 (1988) (emphasis in original); *see also, Lumber*

2   *Products Ass'n v. United States,* 144 F.2d 546 (9th Cir. 1944) (finding enforcement "by the Union

3   Group by picketing, work stoppages and other means, preventing the use of materials purchased in

4   violation of the terms of the contract.") *Id.* at 548 (emphasis added), *rev'd on other grounds, United*

5   *Broth. of Carpenters & Joiners of Am. v. United States,* 330 U.S. 395 (1947).[15]

6

7          Courts also recognize that the enforcement of so-called "voluntary" rules can violate the

8   antitrust laws.  Consistent with Supreme Court and Ninth Circuit precedent, this Court, in its order

9   denying Defendants' motion to dismiss  this Court said: "the Supreme Court has concluded that the

10  interpretation and promotion of a trade association's 'so-called voluntary standards' by the

11  association's agents and members could be deemed to be "repugnant to the antitrust laws," and the

12  association 'should be encouraged to eliminate the anticompetitive practices of all its agents acting

13  with apparent authority.'" (MTD Op. ECF No. 98 at 12; citing *Am. Soc'y of Mech. Eng'rs, Inc. v.*

14  *Hydrolevel Corp.,* 456 U.S. 556, 561–62, 570 & 574 (1982).) This Court went on to hold "Because

15  the complaint also alleges that Zillow went a step further—e.g., by affirmatively redesigning its

16  websites to enforce an allegedly misleading labeling system—Plaintiff has plausibly alleged that

17  Zillow agreed to use the MLS rules to restrain trade." *Id.* at 11.

18         Finally, for the purposes of this narrowly focused motion, it is well recognized that

19  associations do not avoid antitrust liability by hiding behind or acting through third-party

20  intermediaries.  Business, professional, trade, and sports organizations and associations are all

21

22

23  _____

24  [15] *See also O.M. by and through Moultrie v. National Women's Soccer League, LLC* (D. Or. 2021) (Section 1 agreement
    existed where Plaintiff established concerted action between the League, which passed a rule requiring all players to

25  be at least 18 years of age, and the member teams, which enforced the rule); *Gold Medal LLC v. USA Track & Field,*
    187 F.Supp.3d 1219 (D. Or. 2016) (Chewing gum manufacturer's allegation that organization that hosted Olympic

26  Trials for United States Olympic Teams would enforce United States Olympic Committee's (USOC) policy forbidding
    athletes from competing at Olympic Trials in apparel bearing individual sponsorship was sufficient to allege Section 1

27  agreement, even if organization did not play role in creating USOC's policies.)

28

subject to federal antitrust laws if their members demonstrate a "a conscious commitment to a common scheme designed to achieve an unlawful objective." *United States v. Apple, Inc.*, 791 F.3d 290315 (2d Cir. 2015). When an association member, like Zillow here, "surrender[s] himself completely to the control of the association" in a "contractual restraint of interstate trade, designed in the interest of preventing competition," then a rule that imposes "duties and restrictions in the conduct of separate businesses" demonstrates an agreement for purposes of Section 1 of the Sherman Act. *Associated Press v. United States,* 326 U.S. 1 at 8 and 19 (1945).

Applying the relevant case law identified above to the undisputed facts, many of which are based on direct evidence, REX has demonstrated an agreement for the purposes of Section 1. The undisputed facts lead inevitably to the following conclusions:

- As the Court has already ruled, when Zillow joined NAR, it agreed to enforce NAR's IDX policy and model rules to the extent adopted by the MLSs. Zillow MTD Op. at 11 ECF No. 98.

- When, after the launch of its two-tab display, MLSs complained about violations of the Segregation Rule to Zillow or NAR, Zillow enforced compliance with the Segregation Rule.

- NAR also refereed disputes that Zillow had with MLSs about whether Zillow's display was in compliance with the Segregation Rule. Zillow and the MLSs deferred to NAR's interpretation of the Segregation Rule.

- The NAR members and NAR MLSs and local associations of REALTORS® are indistinguishable from NAR itself.

- Zillow at least twice petitioned NAR – not the NAR MLSs – to eliminate the Segregation Rule.

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

17

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

- Zillow's senior executives joined NAR committees. Zillow had its employees who were licensed brokers join NAR and become NAR MLS Participants. As MLS Participants, they were required to comply with and enforce NAR's IDX policy, including the Segregation Rule to the extent adopted by the NAR MLS.

- Zillow chose to uniformly apply the Segregation Rule because it had been adopted by about 70 percent of the NAR MLSs.

- ███████████████████████████████████████████████████████████

  ██████████████████████████████████████████

- To comply with NAR's Segregation Rule, Zillow invested millions of dollars to redesign its website to create the two- tab display – a display that would comply with NAR's Segregation Rule.

- Under its redesigned website, Zillow created an automated system that enforced NAR's Segregation Rule by placing MLS listings under the Agent Listing tab and REX listings and FSBO listings, among others, under the Other Listings tab.

The Sherman Act, Section 1, prohibits agreements that "unreasonably" restrain trade. Zillow's agreement with NAR to apply and enforce the Segregation Rule is such an agreement because, ███████████████████████████████████████████████████████ But whether ████████████████████████████████████████████████████████████████████ the agreement between NAR and Zillow "unreasonably restrains trade" is an issue for another day. What is important here and what REX is asking the Court to acknowledge is that the undisputed facts, as stated above, more than satisfy the legal threshold for establishing an "agreement"

_____

██ ███████████████████████████████████████

actionable under the Sherman Act, Section 1. Accordingly, the Court should enter summary judgment on this single element of REX's claim – the "agreement."

## II.    The Undisputed Facts Establish "Falsity" for Purposes of the Lanham Act and the Washington Consumer Protection Act

With respect to Count II, REX's Lanham Act claim, REX is entitled to partial summary judgment on the element of "falsity" because Zillow falsely labeled REX listings as "Other Listings" rather than "Agent Listings" when REX's listings were in fact offered by licensed real estate agents. It is literally false not to characterize REX's listings as "Agent Listings." Placing REX listings in the "Other listings" category when juxtaposed with "Agent Listings" as the only other option is also literally false by necessary implication.

Zillow's display is not only false, it is also misleading. Consumers are being misled into believing they are looking at all properties offered by licensed agents when they are not. The two-tab configuration itself and the way the tabs are presented leads consumers either to miss entirely the second tab (containing REX's listings) or to believe REX's listings are inferior because of their placement in the second tab.

### A.  Legal Standard

To prove a claim for false advertising under the Lanham Act, REX must establish [1] "false or misleading" factual representation [2] "in commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). *See also Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

The elements of a Lanham Act § 43(a) false advertising claim in the Ninth Circuit are set out in *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). Plaintiff must prove:

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

19

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce;3 and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Id*. at 1139.  *See also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 828 (9th Cir. 2011) (reviewing the claim elements).

Misrepresentations and falsity on a *website* violate Section 43 (a) of the Lanham Act.  *See Flowserve Corp. v. Hallmark Pump Co,* 2011WL 1527951, at 8 (S.D. Tex. 2011) (granting summary judgment where defendant posted plaintiff's images on its website).  The Ninth Circuit's test for false advertising on the internet was articulated in *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820 (9th Cir. 2011):

"To succeed on an Internet false advertising claim, a plaintiff must show that a statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial segment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement."

*Id. a*t 829.

Presentations of products juxtaposed in a way that necessarily misrepresent their comparability or incomparability may constitute literal falsity. *See Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F. Supp. 3d 623, 638 (N.D. Cal. 2019). When REX's agents are explicitly relegated to "Other Listings" as juxtaposed with "Agent Listings", REX's licensed agents are misrepresented as non-agents in a paradigmatic example of literal falsity.

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

20

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

A statement may also be literally false by necessary implication.[17] "A claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997)).  *See also Scotts Co. vs. United Indus. Corp.*, 315 F.3d 264, 274 (4th Cir. 2002) (same); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002) (same).

Proof of actual deception and materiality are generally not required where an advertisement is literally false.[18]  *See Flowserve Corp. v. Hallmark Pump Co*, 2011WL 1527951, at 8 (S.D. Tex. 2011) (noting materiality and deception are generally presumed where there is literal falsity); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.* 227 F.3d 489, 497 (5th Cir. 2000) ("when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issuer of the impact the statements had on consumers.").

REX asserts there is ample evidence for the Court to find literal falsity has been established. Should the Court agree that Zillow's representations are literally false, it may then dispense with the

---

[17] Note that literal falsity by necessary implication is distinct from "implied falsity" which involves a statement that is "literally true [but] nonetheless likely to mislead or confuse consumers as evidence by consumer surveys." <u>*Mut. Pharm. Co. v. Ivax Pharms.*</u>, Inc., 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) (citing *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139-40 (9th Cir. 1997)).  Thus, so long as the contested statement is not literally true, no evidence of consumer deception is necessary to show a statement is misleading, as discussed below.  REX asserts there is no literally true way its listings can be identified as anything "other" than "agent listings".

[18] *See Mut. Pharm. Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception.") (citing *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 273 (4th Cir. 2002)); *Id.* ("If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.") (citing *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 434 (4th Cir. 1997)); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) ("If a plaintiff proves that the challenged commercial claims are "literally false," a court may grant relief without considering whether the buying public was actually misled."); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129–30 (3d Cir. 1994) ("If a plaintiff proves a challenged claim is literally false, a court may grant relief without considering whether the buying public was misled. A determination of literal falsity rests on an analysis of the message in context.") (internal citations omitted).

second and third elements (as to tendency to deceive and materiality), reserving for trial causation and injury.

### B. Legal Analysis

    **a. Zillow's presentation of its property search results as "Agent Listings" and "Other Listings", was literally false because REX listings were falsely grouped with "Other Listings" even though REX's homes for sale were all listed by licensed real estate agents.**

Zillow's choice to designate REX listings as "Other Listings" rather than "Agent Listings" was literally false on its face and by necessary implication. Zillow literally labeled REX agents as non-agents.

False advertising occurs when a defendant "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Here, Zillow misrepresented the nature and qualities of REX's goods and services by necessarily implying they were not "Agent Listings".

An advertisement that shows products or services grouped together as comparable, when the products in fact are not comparable, suffices to establish literal falsity by implication under the Lanham Act. *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 642) (N.D. Cal. 2019). Here, Zillow has grouped REX's listings under the "Other listings" tab with listings that are not comparable because, unlike REX's listings, they were not submitted by licensed agents. Thus, Zillow has falsely labeled and defined REX listings as not agent listings.[19]

---

[19] Zillow provides an FAQ (Frequently Asked Questions) page that addresses the question, "What's the difference between 'Agent Listings' and 'Other Listings'? The answer reveals Zillow's unstated distinction:

    "Agent Listings" are properties listed by real estate agents in the MLS. "Agent Listings" do not include homes for sale by owner, non-MLS auctions or foreclosures. "Other Listings" are for sale by owner, non-MLS auctions, foreclosures and other properties. "Other Listings" do not include properties listed by agents in the MLS.

https://zillow.zendesk.com/hc/en-us/articles/360056662414-New-Search-Toggle

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

In *TrafficSchool*, the defendant made a false statement that it was associated with state government, thereby misleading customers to believe they would be dealing with the state on license training. *TrafficSchool*, 653 at 829.  Similarly, in the instant case, Zillow misled customers to believe that listings under the "Other Listings" tab are not listings from licensed real estate brokers. REX employees are in fact licensed brokers and therefore, the depiction of them as non-brokers is literally false.

> **b. Zillow's two-tab configuration also misled consumers, causing them either to believe they had seen all listings (often not even noticing there was a secondary tab) or to believe REX's listings were inferior.**

In addition to the *literal falsity* (either explicitly, or by necessary implication) of labeling REX agents as non-agents, Zillow's listings configuration deceived customers to the detriment of REX by either: 1) obscuring REX listings to the point of invisibility or 2) positioning them as inferior—something to be overlooked or avoided.  The deliberately misleading presentation violates the Lanham Act.

> **1. Zillow's new two-tab configuration misled consumers into believing they had seen all agent listings when they had not.**

Because of the default positioning of "Agent Listings", and the manner in which both tabs are presented, Zillow's two-tab configuration causes consumers either not to see the second tab containing REX's listings or to believe they had seen all listings. Studies indicate that customers will be drawn to a visually more compelling tab. Here the default tab, "Agent Listings," was highlighted blue and the "other" tab was dull white. As a result, the un-highlighted tab is "likely to be missed."  Ex. 44 Expert Report of Aradhna Krishna, at 29. ██████████████

████████████████████████████████████████████████

MOTION FOR PARTIAL SUMM JUDG
Case No.2:21-cv-00312-TSZ

23

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

### 2. Zillow's new two-configuration misled consumers into believing REX's listings were inferior.

Zillow's new two-tab configuration (reinforced by the labeling) also implicitly conveyed that REX was an inferior "Other," violating the Lanham Act's prohibition against "misrepresenting . . . another person's goods or services in 'commercial advertising or promotion'." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).[20]

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████ Studies show use of that term has a negative effect on individuals' tendency to select the option termed "other". *Id.*

Academic studies show that in internet and website usage, a default positioning heavily influences consumer behavior. *Id.* at, 3-4, 15. Here, the "Agent Listings" tab was the default. This design misled consumers to believe the "Other Listings" tab represented a less qualified, competent, or otherwise desirable, option. *Id.* at 31-32. Studies also demonstrate that "other" is considered inherently inferior and the implication that REX employees are not licensed is a further misrepresentation of quality under the Act.  *Id.* at 26-28. Marketing that *misleads* consumers into thinking a product is more favorable violates the Lanham Act.  For example, courts in this circuit

---

[20] When used as a noun, "Other" can mean, "one considered by members of a dominant group as alien, exotic, threatening, or inferior." *See* http://www.merriam-webster.com/dictionary/other (last visited June 4, 2023)

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

1   have found that marketing that "ma[de] quinine sulfate appear more favorable than it otherwise

2   would in the eyes of the consumers" was misleading.  The deception involved actions that implicitly

3   made customers believe quinine sulfate was FDA approved and so more favorable.  *Mut. Pharm.*

4   *Co. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 940-41 (C.D. Cal. 2006).  The court concluded that

5   because the relevant audience "view[ed] all the drugs listed" by the website in a clinical price list as

6   presumably FDA-approved, such implications amounted to implied falsity. The defendants'

7   "specialized marketing channel . . . convey[ed] an actionable the false implication." *Id. at* 942.  Here,

8   Zillow's site redesign misled consumers into believing that whatever was under the "Agent Listings"

9
    tab was more favorable than the REX listings that were positioned under the "Other Listings" tab.

10

11
              **c.  Zillow's display of REX listings as "Other Listings" rather than
12                    "Agent Listings" is a misleading representation that also violates
                      the first element Washington's Consumer Protection Act (CPA).
13                    RCW 19.86.020.**

14
              The representation of REX listings as something "other" than "agent listings" is also literally

15
    false under the Washington Consumer Protection Act.  This false designation is a violation of

16
    Washington law that makes unlawful "[u]nfair methods of competition and unfair or deceptive acts

17
    of practices in the conduct of any trade of commerce." RCW 19.86.020.

18

19            The purpose of the CPA is to "complement the body of federal law governing restraints of

20
    trade, unfair competition and unfair, deceptive and fraudulent acts and practices in order to protect

21
    the public and foster fair and honest competition." RCW 19.86.920.  The CPA is to be "liberally

22
    construed that its beneficial purposes may be served." RCW 19.86.920.  *See also Short v.*

23
    *Demopolis,* 691 P.2d 163, 168 (Wash. 1984) (noting "legislative prescription to follow federal law

24
    . . . and to construe liberally the CPA").

25

26            To state a claim under RCW 19.86.020, a plaintiff must plausibly allege "(1) an unfair or

27
    deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4)

28

1    injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*,

2    204 P.3d 885, 889 (Wash. 2009).

3         To satisfy the first element, REX need only show "a representation, omission or practice that

4    is likely to mislead a reasonable consumer.*" Id.* at 895.   A plaintiff need not show the act in question

5    was intended to deceive, only that it had the capacity to deceive a substantial portion of the public.

6    *Id.* at 894. As discussed above, Zillow's omission of REX listings from "Agent Listings" and

7    inclusion among "Other Listings" is misleading and literally false and by necessary implication,

8    because REX's listings are in fact offered by licensed real estate agents.

9

10                                   **CONCLUSION**

11

12        Because the undisputed facts show that Zillow has enforced the NAR Segregation Rule,

13   which has been adopted by about 70% of the NAR MLSs, REX respectfully requests that this Court

14   find under controlling case law that Zillow and NAR have entered into an "agreement" for purposes

15   of Section 1 of the Sherman Act and the Washington Consumer Protection Act, and that because

16   REX's listings are by licensed agents, Zillow's two-tab display and placement of REX listings under

17   "Other Listings" are literally false and misleading for purposes of claims under the Lanham Act and

18   Section 19.86.020 of the Washington Consumer Protection Act.

19

20

21   I certify that this memorandum contains 8,252 words, in compliance with the Local Civil Rules.

22

23   Dated:  June 8, 2023              **BOIES SCHILLER FLEXNER LLP**

24                                    By:*/s/ Carl E. Goldfarb*
                                      Carl E. Goldfarb, Esq. (Admitted *Pro Hac Vice*)
25                                    BOIES SCHILLER FLEXNER LLP
                                      401 East Las Olas Blvd., Suite 1200
26                                    Fort Lauderdale, FL 33301
                                      Telephone: (954) 356-0011
27                                    Facsimile:  (954) 356-0022

28

1                                cgoldfarb@bsfll.com

2                                Ursula Ungaro, Esq.

3                                Stephen N. Zack, Esq.
BOIES SCHILLER FLEXNER LLP

4                                100 SE 2nd Street, Suite 2800
Miami, FL  33131

5                                Telephone: (305) 539-8400
Facsimile:  (305) 539-1307

6                                uungaro@bsfllp.com
szack@bsfllp.com

7

8                                James Denvir, Esq.
BOIES SCHILLER FLEXNER LLP

9                                1401 New York Ave, NW
Washington, D.C, 20005

10                              Telephone: (202) 237-2727
Facsimile: (202) 237-6131

11                              jdenvir@bsfllp.com

12                              David Boies, Esq.
BOIES SCHILLER FLEXNER LLP

13                            333 Main Street
Armonk, NY  10504

14                            Telephone: (914) 749-8200
Facsimile:  (914) 749-8300

15                            dboies@bsfllp.com

16

17                            ***Attorneys for Plaintiff***

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PARTIAL SUMM JUDG               27          BOIES SCHILLER FLEXNER LLP
Case No.2:21-cv-00312-TSZ                               401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 8, 2023, I served the foregoing document to be filed in this Court's CM/ECF system, which will send notification of such filing to the counsel of record.

By: <u>*/s/ Carl E. Goldfarb*</u>
CARL E. GOLDFARB

PLAINTIFF'S RESPONSE
Case No. 2:21-cv-00312-TSZ      1

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011