THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REX – REAL ESTATE EXCHANGE, INC.,

Plaintiff,

v.

ZILLOW, INC., et al.

Defendants.

Case No. 2:21-cv-00312-TSZ

**OPPOSITION TO ZILLOW'S MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
July 14, 2023

ORAL ARGUMENT REQUESTED

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................... III

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 1

ARGUMENT ...................................................................................... 8

    I.      Legal Standard ................................................................... 8

    II.     REX Has Direct and Circumstantial Evidence of an Agreement, Combination, or Conspiracy in Violation of the Sherman Act......... 8

          A.     The Evidence Is Disputed That Zillow Acted Independently and Consistent With a Proper Business Purpose .................. 9

          B.     On Balance, Switching to IDX Feeds for Listing Data Was "A Wash" ....................................................................... 11

          C.     Zillow Switched to IDX Feeds Because It Hoped to Make More Money From Joining the Collusive Agreement With NAR ................................................................................. 13

          D.     Zillow Had Significant Communications With NAR ......... 14

    III.    The Segregation Rule Has a Significant Adverse Impact on Competition.................................................................... 15

    IV.    Zillow's Motion for Summary Judgment on REX's Lanham Act Claim Should Be Denied................................................... 16

          A.     Zillow's Display Is "Commercial Speech" ........................ 17

                1.     *Ariix* Does Not Support Zillow's Argument ........... 17

          B.     Zillow's "User Tools" Argument Is Inapposite ................. 18

          C.     The Record Contains Substantial Evidence That Zillow's False New Display Injured REX........................................ 19

          D.     REX's Lanham Act Damages Are REX's Lost Future Profits ..................................................................................... 21

          E.     Damages Need Not Be Limited to Monetary Damages ...... 22

    V.    Zillow's Motion for Summary Judgment on Rex's State Law Claims Should Be Denied....................................................... 23

          A.     Summary Judgment Should be Denied as to REX's False Advertising Claim Pursuant to RCW 19.86.20.................. 23

          B.     Summary Judgment Should be Denied as to REX's Antitrust Claim Pursuant to RCW 19.86.030................................... 23

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ        i

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1

        C.      REX at a Minimum Is Entitled to Nominal Damages on Its
Defamation Claim ............................................................... 24

2

CONCLUSION .................................................... 24

3

CERTIFICATE OF SERVICE ............................................. 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ        ii

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

## TABLE OF AUTHORITIES

Page(s)

### Other Authorities

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) ...................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................8

*Ariix LLC. v. Nutrisearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ...........................................................................17, 18

*Bolger v. Youngs Drug Prods Corp.*,
463 U.S. 60 (1983) ................................................................................................17

*Campagnolo S.r.L. v. Full Speed Ahead, Inc.*,
No. C08-1372 RSM, 2010 WL 1903431 (W.D. Wash. May 11, 2010) ........................23

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
905 F. Supp. 2d 1235 (W.D. Wash. 2012) ................................................................22

*CertainTeed Corp. v. Seattle Roof Brokers*,
No. C 09-563 RAJ, 2010 WL 2640083 (W.D. Wash. June 28, 2010)..........................23

*Chaverri v. Platinum LED Lights LLC*,
No. CV-21-01700-PHX-SPL, 2022 WL 2275664 (D. Ariz. June 22, 2022) ................21

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) ...............................................................................23

*Feitelson v. Google, Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) ....................................................................15

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)................................................................................................24

*Hupp v. Jones*,
474 Fed. App'x 601 (9th Cir. 2012) ........................................................................24

*Interstate Circuit v. U.S.*,
306 U.S. 208 (1939)................................................................................................14

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*,
245 F. Supp. 2d 756 (E.D. Va. 2002).......................................................................22

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).....................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, (2014)...............................................................................................20

OPPOSITION TO ZILLOW'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ    iii

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

*Maffick LLC v. Facebook, Inc.*,
  No. 20-CV-05222-JD, 2021 WL 1893074 (N.D. Cal. May 11, 2021) ...........................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................................8, 9

*Murray Pub. Co. v. Malmquist*,
  66 Wash. App. 318, 832 P.2d 493 (1992) ......................................................................24

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
  435 U.S. 679 (1978) ........................................................................................................11

*Newman v. Google, LLC*,
  No. 20-CV-04011-LHK, 2021 WL 2633423 (N.D. Cal. June 25, 2021) ......................19

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
  32 F.4th 824 (9th Cir. 2022) ............................................................................. 10, 11, 16

*Pogrebnoy v. Russian Newspaper Distrib., Inc.*,
  289 F. Supp. 3d 1061 (C.D. Cal. 2017) .........................................................................22

*POM Wonderful LLC v. Purely Juice, Inc.*,
  No. CV-07-02633CAS(JWJX), 2008 WL 4222045 (C.D. Cal. July 17, 2008) .............21

*Prager Univ. v. Google, LLC*,
  951 F.3d 991 (9th Cir. 2020) ..........................................................................................19

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .................................................................................17, 21

*St. Louis Sw. Ry. Co. v. Dickerson*,
  470 U.S. 409 (1985) ........................................................................................................21

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  803 F.3d 1084 (9th Cir. 2015) ........................................................................................10

*State v. Black*,
  100 Wash. 2d 793, 676 P.2d 963 (1984) ........................................................................23

*Trafficschool.com, Inc. v. EDriver, Inc.*,
  653 F.3d 820 (9th Cir. 2011) ..........................................................................................22

*Yniguez v. State*,
  975 F.2d 646 (9th Cir. 1992) ..........................................................................................22

**Statutes**

15 U.S.C. § 1 ...........................................................................................................................23

15 U.S.C. § 1117...............................................................................................................21, 22

15 U.S.C. § 1125...............................................................................................................16, 21

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    iv

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) ..........................................................................................................8

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    v

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

## INTRODUCTION

In January 2021, Zillow agreed with NAR to segregate and demote the listings of non-NAR affiliated brokers, such as REX, which do not abide by NAR rules. It did so by implementing a two-tab search results page, designed specifically to comply with NAR's Segregation Rule, as part of an initiative it dubbed, "Project Bookshelf." Project Bookshelf turned on the lights, not for consumers, but for NAR and MLS members. The new layout separated MLS listings and non-MLS listings by defaulting to MLS listings.

In its summary judgment motion, Zillow baldly proclaims: "Over two years of litigation confirms that Zillow's decision to join Multiple Listing Services ("MLSs") around the country … was an independent business decision." To the contrary, the record shows that Zillow implemented its two-tab display to comply with and enforce NAR's Segregation Rule pursuant to an agreement with NAR which, at trial, REX will prove was anticompetitive and caused REX to fail.

The Court should deny Zillow's motion because the evidentiary record establishes both that Zillow entered into an anticompetitive agreement with NAR to implement and enforce NAR's Segregation Rule in violation of Section 1 of the Sherman Act and also that the two-tab display violated the Lanham Act. At a minimum, the material facts adduced in discovery with respect to each element of REX's claims are genuinely in dispute.

## BACKGROUND

Zillow proffers "Background" but does not claim the recited "facts" are undisputed or demonstrate the absence of a genuine issue of material fact. The material facts below are either undisputed and entitle REX to summary judgment or in dispute:

1.      NAR is the nation's largest trade association. It has more than 1.45 million members organized into local, state and territory associations.[1]  NAR's members serve on

---

[1] https://www.nar.realtor/newsroom/nar-fact-sheet

OPPOSITION TO ZILLOW'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    1

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

national committees that promulgate policies and rules that govern REALTORS® in the conduct of their business. Evans ¶ 18.[2]

2.      NAR members own or control Multiple Listing Services ("NAR MLSs") which receive and compile residential real estate listings in their respective territories. The listings are submitted by NAR members and can be published or displayed only by "MLS Participants." Evans ¶¶ 18-21, 34.

3.      NAR MLSs and their participating REALTORS® have monopoly power in their local markets over real estate brokerage services.  Evans ¶ 297.  NAR has monopoly power over the national market for real estate brokerage services.  *Id.*

4.      NAR publishes a Handbook on Multiple Listing Policy which contains policies, rules and model rules and bylaws, proposed by NAR committees, and adopted by the NAR's Board of Directors, and applicable to MLSs and MLS Participants. *See, e.g.,* Ex. 1, NAR0001650 (NAR 2021 Handbook on Multiple Listing Policy) [3]

5.      NAR members are licensed to use NAR's trademarks, including the REALTOR® logo, and MLSs are entitled to use the NAR MLS logo provided they comply with NAR's policies. *Id.* at '681.  If a NAR MLS fails to do so, NAR can revoke its charter and terminate its insurance coverage.[4]

6.      Pursuant to Section G of the Handbook, NAR members submitting listings to MLSs are required to comply with the Buyer Broker Commission rule ("BBCR") which requires that all listings be accompanied by non-negotiable offers of compensation to buyer agents. *Id.* at '701-702.

---

[2] References to "Evans ___ " are to REX expert David Evans's opening report.  Evans's reply report will be cited as "Evans Reply ___."

[3] Note: Numbered exhibits refer to exhibits previously filed in support of REX's Motion for Summary Judgment, Dkt. 332; Lettered exhibits refer to exhibits attached to the Declaration of Carl Goldfarb filed concurrently with the present motion.

[4] https://www.nar.realtor/about-nar/policies/charter-revocation-procedure ("NAR's Bylaws prohibit state and local associations from adopting any rule, regulation, practice or policy inconsistent with, or contrary to, any policy adopted by the NAR Board of Directors."); Ex. WW NAR0447581 (NAR requiring certification of compliance in order to maintain insurance coverage).

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    2                    BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

7.     While sellers can offer any amount of compensation to buyer-agents under the BBCR, seller-agents often instruct their clients that they need to offer commissions at the highest rate in their communities to induce buyer-agents to bring clients who may be interested in their homes.[5]  The BBCR thus artificially inflates commission rates to supra-competitive levels.

8.     In 2001, NAR formulated and promulgated its IDX policies and rules, which govern the electronic display of listings by MLS Participants.  "IDX" is an acronym for Internet Data Exchange."  *Id.* at '688-689.

9.     NAR members can display IDX-compliant listings if they qualify as "MLS Participants."  MLS Participants agree to abide by NAR's IDX policies and model rules and to "actively endeavor." MLS Participants "actively endeavor" when they make non-negotiable offers of compensation to buyer-brokers as required by the BBCR. *Id.* at '688.

10.    The Segregation Rule, Model Rule 18.3.11, is an optional rule that is part of NAR's IDX policies and model rules.  *Id.* at '750, '798.  It has been adopted by 71% of NAR MLSs. Ex. 12 – at response to Interrogatory No. 4.

11.    NAR promulgated the Segregation Rule in 2001 and amended it in 2014. Ex. XX, NAR0001114 at '117-'118; Ex. YY NAR0000937 at '939. The Segregation Rule as amended requires separating MLS and non-MLS listings.  It states: "Listings obtained through IDX feeds from REALTOR® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources." Ex. 1 at '750, '798.

---

[5] https://www.nar.realtor/blogs/culture-scan/how-to-answer-the-commission-question ("In the end, every time you cut your commission you are throwing away profit. That profit could be used to reinvest into your business and/or bolster your children's college savings fund. Every time you accept less, you say to yourself you aren't worth the money. This will eventually cripple your belief system. So the next time a buyer or a seller tries to negotiate your commission, what will you say? Really you only have two choices. You can demonstrate the value of what you can do for your client, or you can sacrifice your future and self-esteem by accepting less than you deserve.")

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    3

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

12.     The Segregation Rule also expressly incorporates and includes the Comingling Rule, 18.2.10, which permits a participant to commingle only MLS data, and so prohibits an MLS from barring the comingling of such data. *Id.* at '749, '797.

13.     Zillow wears two hats; it is a broker, and also an aggregator of residential real estate listings that it makes available to consumers on the internet without charge. As an aggregator, Zillow competes with Realtor.com, Redfin, and other platforms. Zillow's platforms are used by about two-thirds of home buyers to search for homes,[6] followed at a substantial distance by Realtor.com, which is currently operating under a NAR license, with about a 20.2% share of views and Redfin (a NAR member) with about a 13.4% market share. Evans ¶ 249, Table IV-1. Both Realtor.com and Redfin effectively prohibited REX from listing its homes on their platforms.

14.     Zillow also operates Premier Agent and Premier Agent Flex programs from which it derives significant revenue. Premier Agents are mainly buyer-brokers who pay Zillow for advertising on its platform in exchange for leads on buyers looking to purchase homes. Ex. 2, Samuelson Decl. ¶ 13.  In the Premier Agent Flex program, brokers with successful track records are hand-picked by Zillow to receive buyer leads in exchange for sharing their buyer broker commissions with Zillow when a transaction closes. Ex.UUU, ZG_00216406 at '412-27.

15.     Zillow's revenue generating customers are thus real estate brokers and agents who have a financial interest in maintaining excessive buyer broker commission rates.

16.     Until January of 2021 when Zillow transitioned to IDX feeds for its listings, Zillow obtained its listings from multiple sources through syndication feeds, broker feeds and from individuals who wanted to sell their homes without relying on a broker ("For Sale By Owner" or "FSBOs"). Zillow's syndication and broker feeds were cancellable. Ex. 2, Samuelson Decl. ¶¶ 32-33.

---

[6] Ex.J, ZG_00716276.  Zillow also operates Trulia, which is also one of the top four real estate search platforms.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    4

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

17.     Until January 2021, when Zillow transitioned to IDX feeds, Zillow displayed all listings in a single integrated format. Ex. 2, Samuelson Decl. ¶ 38.

18.     Before transitioning to IDX feeds, Zillow's database had national coverage of about 98%, was highly accurate, and continually updated. Ex. 2, Samuelson Decl. ¶ 40. Zillow's own executives did not consider listings data quality as a reason to transition to IDX listings feeds. Ex. VVV, ZG_00014471 ████████████████████████████

████████████████████████████████████████████

████ Ex. WWW, ZG_00006254 at '55 ████████████████████████

████████████████████████████████████████████

19.     REX was a licensed broker which employed salaried real estate agents in all the states where it operated.  REX had a unique business model – it offered consumers an opportunity to sell their homes without paying buyer-broker commissions.   Ex. 14, Hendricks Dep. at 199:16–200:10; Ex. 26, ZG_00007849 at '849; Ex. 27, ZG_00007622 at '623; and Ex. 28, ZG_00094395.

20.     Because REX did not offer buyer-broker commissions, it was not eligible for NAR membership, and it could not qualify as a MLS Participant.  Accordingly, it could not submit its listings for display to NAR MLSs.

21.     Zillow was the only digital listing platform that included non-MLS listings. Evans ¶ 252.  Because REX operated outside the MLS system and Zillow was the dominant aggregator, REX relied heavily on Zillow to market its listings.  Ex. ZZ, Sides Dep. 83:18-84:1.

22.     Until January of 2021 when Zillow transitioned to IDX listings, REX provided its listings to Zillow via a broker feed and Zillow included REX's listings in its database. REX also paid Zillow to participate in its Premier Agent program.  Ex. ZZ Sides Dep. at 331:16-332:5.

23.     Beginning in 2017, Zillow began to pursue a business strategy that was transaction-based, including buying and re-selling homes for its own account ("i-buying"). However, Zillow was concerned that the real estate brokerage industry would perceive its

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    5

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

entry into i-buying as a threat and that brokers would retaliate by cancelling listings agreements. Ex. 15, Samuelson Dep. at 13:5-13; Ex. 2, Samuelson Decl. ¶ 52.

24.    Zillow knew that it could protect itself from retaliatory cancellations if it became a broker, joined NAR, and secured its listings with IDX feeds, but Zillow also knew that would require submitting to NAR's IDX policies and rules as adopted by the NAR MLSs.  Ex. 2, Samuelson Decl. ¶ 63; MPSJ Ex. 21, ZG_00002362.

25.    Because Zillow maintains a national platform, Zillow could not comply with NAR's IDX policies and model rules without complying with the Segregation Rule.

26.    Over a period of at least 2 years, Zillow secretly re-engineered its display to conform to the Segregation Rule. It created a new display that defaulted to MLS listings and had two tabs – one labelled "Agent Listings" and the other labelled "Other Listings."  Ex. 18 - Hendricks Dep. Ex. 12 (screenshot of new Zillow search results page with two tabs). The "Agent Listings" tab appeared first and was highlighted in blue, while the "Other Listings" tab was second and appeared against a dull white background. *Id.*

27.    In September 2020, Zillow announced its agreement to join NAR as a brokerage, comply with NAR's rules, and transition to IDX feeds. Ex. 15, Nov. 2022 Samuelson Tr. 13:5–13.  At that time, Errol Samuelson, a Zillow Sr. V.P., proclaimed to NAR's members that Zillow would "no longer be a third party" and that Zillow would be "locking arms" and working "shoulder to shoulder" with them.[7]

28.    Zillow went live with its new display in mid-January 2021. Ex. XXX, ZG_00017855.  Before going live, Zillow and the MLSs consulted with NAR regarding Zillow's compliance with the IDX policies and rules. Ex. 22, NAR0030935; Ex. 23, NAR0092942.

29.    The labels employed in the two-tab display were false and misleading because not all agent listings, but exclusively MLS agent listings were under the "Agent

---

[7] https://www.youtube.com/watch?v=EMidklRVFMM at 00:20

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ          6

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1    Listings" tab, while the "Other Listings" tab included REX's listings despite REX's status

2    as a licensed broker employing fully licensed agents.

3        30.    But for the Segregation Rule, Zillow would not have implemented its new

4    display.  Ex. 36 - ZG_00567367 ████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    ████ . Ex. TTT, ZG_00016887.

7        31.    After implementing its new display, Zillow unsuccessfully petitioned NAR –

8    not the MLSs – at least twice to replace the Segregation Rule with a rule that would permit

9    an MLS participant to commingle all listings from all sources.  Ex. 36, ZG_00567367.

10        32.    Until Zillow's display change, REX experienced rapid growth. Between 2016

11    and 2019, its average annual growth measured in closings was 227% and its average annual

12    revenue growth in the same time period was 293%. Evans ¶¶ 382-383.  REX also performed

13    at or above its growth forecasts in the first quarter of 2020 and even in the last three quarters

14    of 2020 when the pandemic's effects were most intense, REX's revenue increased by 60%.

15    Evans ¶¶ 387, 399.

16        33.    In August 2020, REX closed an arm's-length market transaction that valued

17    REX at $325 million.  Evans ¶ 541 and Table VIII-9.

18        34.    During 2020, REX entered discussions with Bank of America and Wells

19    Fargo, regarding a public offering. *See* Ex. HH, REX_0000973; Ex. II, REX_0627520.  They

20    valued REX's enterprise value in October 2020 between $751 million and $1.225 billion.

21    Evans ¶¶ 364, 403, 425.

22        35.    In 2019 REX co-listed properties on a very limited basis in an attempt to get

23    greater visibility for properties that were not selling. From June 2019 to March 2020, REX

24    co-listed 54 homes, or 2.5% of REX's new listings.  In the last three quarters of 2020, when

25    the pandemic deterred buyers from attending open houses, REX increased its co-listings to

26    14% of new listings. Evans Reply ¶ 66.

27        36.    REX increased its co-listings more after Zillow implemented its

28    new display.  By that time viewings of FSBO listings and, by inference REX listings, had

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ    7     BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1   declined 70-85%, and, as a result, REX was having difficulty selling listed homes and

2   attracting new listings.  Evans Reply ¶ 67.

3       37.    About three quarters of all REX's co-listings were made after its listings were

4   segregated by Zillow. Evans Reply ¶ 67.

5       38.    REX was unable to mitigate the harm from the segregation of its listings by

6   co-listing.   An analysis of Zillow's data found the change to the two-tab display was

7   accompanied by a 64.6 percent reduction in page views of REX's listings and caused a

8   60.2% drop in REX closings in 2021 and 75.5% drop in 2022, leading to REX's demise.

9   Evans ¶¶ 416, 423.

## ARGUMENT

### I.    Legal Standard

Summary judgment is only appropriate if the moving party "shows there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.    REX Has Direct and Circumstantial Evidence of an Agreement, Combination, or Conspiracy in Violation of the Sherman Act

Zillow's argument for summary judgment on REX's Sherman Act, Section 1 claim largely overlaps with NAR's argument for summary judgment. REX demonstrated in its opposition to NAR's motion that the record contains undisputed direct evidence that Zillow entered into an anticompetitive agreement with NAR to enforce the Segregation Rule to gain access to listings from IDX feeds.  *See* REX's opposition to NAR's motion for summary judgment, at 8.   REX also pointed to circumstantial evidence of an anticompetitive agreement between Zillow and NAR, including by showing that Zillow was acting against its unilateral self-interest. *See id.* at 14.   In response to NAR's contention, that REX did not

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ          8

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

establish antitrust impact, REX further demonstrated that there was both direct and indirect evidence of anticompetitive impact.  *See id*. at 20.  Those sections of REX's opposition to NAR's motion are incorporated herein by reference.  Insofar as Zillow raises additional arguments, REX provides the following response.

### A.    The Evidence Is Disputed That Zillow Acted Independently and Consistent with a Proper Business Purpose

Zillow cannot credibly claim that it acted for a proper business purpose when it joined NAR and adopted the Segregation Rule because the record is replete with admissions by Zillow employees that they knew the Segregation Rule was anti-consumer and anti-competitive. ████████████████████████████████████████████
████████████████████████████████████[8]  Another Zillow executive said: ████
████████████████████████████████████████████████████████
████ ████ [9]  Other Zillow executives also thought the rule was anti-consumer and anti-competitive.

The record also shows Zillow knew REX was a disruptor.  As one Zillow employee said: ████████████████████████████████████████████
████████████████████████████████████████ Ex. 27, ZG_00007622 at '623.  Another said: ████████████████████████
████████████████████████████████████ Ex. AAA, ZG_00008914.  And two Zillow executives knew the Rule would destroy REX and other non-MLS brokers. Ex. I ████████████████████████████████
████████████████ ; Ex. CCC ZG_00008570 ████████████████████████

---

[8] Ex.BBB Samuelson Dep., April 27, 2023, at 55:11-14; Ex. I, ZG_00008197; Ex.CCC, ZG_00008570.
[9] Ex.DDD, ZG_00351924; Ex.EEE, ZG_00007925; Ex. FFF, ZG_00352138; Ex.GGG, ZG_00002661; Ex.HHH, Hendricks Dep., April 5, 2023, at 151:16-152:2.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    9

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1    ███ .  But Zillow agreed to enforce the Segregation Rule anyway because it wanted IDX

2    feeds and the only way it could get them was by joining NAR and enforcing the rule.

3            Zillow's decision to join an anticompetitive conspiracy knowing that it would

4    preclude competition, including from disruptors, because it would profit Zillow both as a

5    broker and as an aggregator cannot possibly constitute a proper business purpose without

6    gutting the Sherman Act.  *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 836 (9th

7    Cir. 2022), *cert. denied sub nom.  The Nat'l Ass'n of Realtors v. The PLS.com, LLC.*, 143 S.

8    Ct. 567 (2023); *see also Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,803 F.3d 1084,

9    1089 (9th Cir. 2015) (in circumstantial evidence case, if defendant provides "a plausible and

10   justifiable reason for its conduct that is consistent with proper business practice" burden

11   shifts to plaintiff "to provide specific evidence tending to show that the defendant was not

12   engaging in permissible competitive behavior").

13           Remarkably, Zillow's argument is nearly identical in substance to the argument

14   recently advanced by NAR in the *PLS* case.  There, the Ninth Circuit considered whether

15   NAR and certain of its MLSs violated the Sherman Act by adopting and enforcing a NAR

16   policy – the Clear Cooperation Policy – against PLS, a competitor.  The Clear Cooperation

17   Policy generally requires a REALTOR® to submit a listing to its MLS within 24 hours of

18   listing a property on any website other than a brokerage's own web site.  NAR adopted the

19   policy because its MLSs were facing increased competition from "off-MLS" listing services.

20           NAR contended in *PLS* the Clear Cooperation Policy was procompetitive because

21   it reduced "search and transaction costs." A unanimous panel of the Ninth Circuit roundly

22   rejected the argument stating:

23           Finally, Defendants argue that the Clear Cooperation Policy is
             procompetitive because it "reduc[es] search and transaction costs."
24           Although this contention is dressed up in the language of economics, at its
             core it is just an argument that the Clear Cooperation Policy benefits buyers'
25           agents because it allows them to see more listings on the MLSs and to avoid
             the need to consult competing services. This is not a procompetitive
26           justification because it does not explain how the Clear Cooperation Policy
             enhances competition. At bottom, Defendants argue that the Clear
27           Cooperation Policy results in a higher quality product: a listing service with
             all of the publicly available listings in one place.  But justifying a restraint
28

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

on competition based on an assumption it will improve a product's quality "is nothing less than a frontal assault on the basic policy of the *Sherman Act." Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

*PLS.Com, LLC*, 32 F.4th at 836. Of course, that is largely what Zillow is saying here: that joining an anticompetitive agreement because it will enable Zillow to produce a better product constitutes a proper business purpose. Again, the Ninth Circuit's response in its *PLS* opinion, that a defendant cannot justify its anticompetitive conduct that deprives consumers of a choice by saying it is good consumers, is instructive:

> The antitrust laws assume that competition will produce not only lower prices, but also better goods and services. If Defendants are correct that buyers' agents prefer listing networks that offer more listings in one place, the MLSs should be in a good position to compete with upstarts like PLS. But the fact that PLS was growing rapidly despite the MLSs' larger inventory of listings might suggest that PLS offered features that at least some buyers' agents found attractive, despite the lower concentration of listings. In the end, sparing consumers the need to patronize competing firms is not a procompetitive justification for a group boycott.

*PLS.Com, LLC¸* 32 F.4th at 836-37 (internal citations and quotation marks omitted).

The Ninth Circuit's decision makes clear that Zillow's claim that its conduct was consistent with a proper business purpose fails as a matter of law.

**B.      On Balance, Switching to IDX Feeds for Listing Data Was "A Wash"**

Zillow's contention that it switched to IDX fees to get better listing data also fails because the facts are disputed. The evidence is that Zillow had superior national listing coverage long before it switched to IDX fees, and that switching to IDX feeds was "a wash" at best.

REX disputes that the Zillow database was "flawed" until it secured listings via IDX. In an email dated October 20, 2018, when Zillow's executives were fretting over competition from Redfin, Beardsley, the Zillow V.P. quoted above, noted that Zillow had attained 98% national coverage relying on a combination of broker and syndication feeds. ████████

███████████████████████████████████

███████████████████████████████████           Ex. III,

ZG_00429485 at '487. Zillow also ignores a contemporaneous Zillow document in which

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    11

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1  ███████████████████████████████████████████████████████████████

2  █████████████████████████████████████████████████████[10]

3        Importantly, the database's quality was good enough for Zillow to tout in its Annual

4  SEC filings its "inimitable database of homes."  In its 10Ks until 2021, Zillow reported in

5  relevant part:

6          Our living database is the result of years of substantial investment,
        sophisticated economic and statistical analysis, complex data aggregation

7          and millions of user contributions…. Applying extensive computer
        analytics to the data, we transform it into information that is accessible,

8          understandable and useful…  We refer to the database as 'living' because

9          the information is continually updated by the combination of our proprietary
        algorithms, synthesis of third party data from hundreds of sources, and

10          through improvements by us and, importantly, our community of users.[11]

11  If there were problems with the database, Zillow never alerted the public markets.

12        To support its claim that transitioning to IDX feeds addressed flaws in the database

13  for the benefit of viewers, Zillow relies mainly on Samuelson's declaration and testimony,

14  which contradicts Samuelson's email quoted above, among others.  In fact, in the same email

15  Samuelson stated ████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████████

18  ████████  Ex. III, ZG_00429485 at '487.  ██████████████████████████

19  ███████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ███████

22        Zillow also fails to acknowledge contemporaneous emails and other documents

23  authored by Zillow employees noting shortcomings that would accompany IDX-sourced

24  listings, including in some circumstances prohibitions on providing contact information for

25  the listing agent and featuring home values (Zestimates), requiring separate tabs for rentals

26

---

27  [10] Ex.JJJ, ZG_00641756 (cmt. [1]).  Samuelson testified ████████████████████████

28  █████████████████████████████.  Ex.BBB, Samuelson Dep., April 27, 2023, at 161:4-163:1.

    [11] Zillow Group, Inc., Annual Report (Form 10-K) (Feb. 15, 2018).

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ      12

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

and restrictions on third party comments, and enforcing the no commingling rule. Ex. KKK, ZG_00226806-'809; Ex. LLL, ZG_00016897 at '95.

### C.    Zillow Switched to IDX Feeds Because It Hoped to Make More Money from Joining the Collusive Agreement With NAR

The Court also should reject Zillow's argument that it lacked a "rational economic motivation" to conspire with NAR.  Zillow is not the North Star, as Zillow likes to say, benevolently guiding consumers to the American dream of home ownership.  Rather, Zillow has leveraged its consumer-user experience to attract advertising by buyer-agents or brokers who Zillow, in turn, supplies with leads, the number depending on the amount of advertising dollars that each spends.  This is the Premier Agent program, which includes another program—Premier Agent Flex—in which Zillow exacts a percentage of buyer broker commissions earned on closed transactions by favored buyer agents or brokers.[12]  Zillow's revenue generating customers thus are the real estate brokers and agents (NAR members), with an interest in maintaining excessive uniform commission rates, and Zillow's interests are aligned with theirs. Indeed, Premier Agent, including Premier Agent Flex, are Zillow's single most important source of revenue.  Zillow, however, prefers for public relations purposes to emphasize what it calls "turning on the lights" for consumers.

The record contains substantial evidence that what actually motivated Zillow to join NAR was its financial self-interest in improving its margins in its i-buying program, Zillow Offers (later called Zillow Homes).  One way was by becoming a broker and avoiding some or all commissions on its i-buying transactions. Ex. MMM, ZG_00282695, at '700.  Of

---

[12] For 2017, before Zillow fully committed to Zillow Offers, its now failed i-buying venture, Zillow reported Premier Agent revenue accounted for 71% ($762M) of its total revenue. Zillow Group, Inc., Annual Report (Form 10-K) (Feb. 15, 2018). Even after Zillow pursued Zillow Offers in earnest, advertising revenue derived from industry participants remained an important and large component of Zillow's business model and one of its largest sources of revenue.  In 2020, for example, its IMT segment generated revenue of $1.5B of which $1.05B was attributable to the Premier Agent program alone. Zillow Group, Inc., Annual Report (Form 10-K) (Feb. 12, 2021).

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    13

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1   course, once Zillow began using salaried agents and brokers to buy and sell homes for

2   Zillow's own account through Zillow Homes—and that is precisely what Zillow declared it

3   would do when it announced it was joining NAR and switching to IDX feeds – Zillow would

4   be in direct competition with the real estate brokers who are its core customers. Zillow

5   expected they would retaliate by cancelling their feeds. Zillow's answer was to secretly plan

6   to become a broker itself, join NAR, and the MLSs and thereby secure access to IDX feeds

7   subject to the key condition that it conform to and enforce NAR's Segregation Rule.

8           **D.      Zillow Had Significant Communications With NAR**

9           Zillow argues that it is also entitled to summary judgment because REX can produce

10  no evidence of communications between Zillow and NAR evidencing an agreement to

11  conspire. But there is no legal requirement that REX produce evidence of such written or

12  oral communications, and the Court should reject Zillow's argument out of hand. *See*

13  *PLS.Com*, 32 F.4th at 843 (quoting *Interstate Circuit v. U.S.*, 306 U.S. 208, 227 (1939))

14  ("Acceptance by competitors, without previous agreement, of an invitation to participate in

15  a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce,

16  is sufficient to establish an unlawful conspiracy under the Sherman Act.")

17          Zillow also is incorrect as a matter of fact. The evidentiary record contains emails

18  and other documents reflecting that, between Sept 20, 2020, when Zillow announced its

19  intention to become a brokerage, join NAR, and switch to IDX fees and January 10, 2021,

20  when it implemented the new display, Zillow communicated with NAR and the NAR MLSs

21  regarding its new proposed display and Zillow submitted to "compliance checks" by the

22  NAR MLSs. Later, if a listing was wrongly placed on the Agent Listings tab, and an MLS

23  notified Zillow, Zillow enforced the Segregation Rule by moving the listing to the Other

24  Listings tab. Ex.NN, Ex.OO, Ex.PP, Ex.QQ, Ex.RR. Zillow also omits that Zillow and the

25  MLSs sought NAR's "guidance" and "approval" before going forward with the IDX

26  transition and that when there were disputes between the MLSs and Zillow regarding

27  Zillow's compliance with IDX policy, the MLSs typically deferred to NAR's interpretations.

28  Ex.V, Ex.W, Ex.X, Ex.Y, Ex.Z, Ex.AA, Ex.BB, Ex.CC; Ex.DD ██████████████

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    14

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1

2

3

4

5    **III.    The Segregation Rule Has a Significant Adverse Impact on Competition**

6         Zillow argues (at 14-16) that REX's Section 1 claim fails because REX must show

7    Defendants' actions harmed competition, not just that they harmed REX, and that REX

8    cannot do so.    As noted, REX demonstrated both direct and indirect evidence of impact on

9    competition in its response to NAR's summary judgment motion.

10        Zillow's contrary arguments are unavailing.  Zillow's first argument is that "in other

11   Section 1 contexts, an 'arrangement' is unlawful under the 'rule of reason … only if its effect

12   is to 'foreclose competition in a substantial share' of the 'relevant market.'    *Allied*

13   *Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010).

14   Zillow says a 'substantial share' has been quantified as foreclosure of 40% to 50% of the

15   relevant market," (citing *Feitelson v. Google, Inc*., 80 F. Supp. 3d 1019, 1030 (N.D. Cal.

16   2015)).  Zillow fails to note that it is relying solely on *exclusive dealing cases* to create a

17   false requirement of 40-50% market share in order to establish the required "harm to

18   competition" and "anticompetitive effect."

19        In any event, any argument that the display change did not foreclose a substantial

20   segment of the market is demonstrably wrong.  It is undisputed that Zillow had about a 63%

21   share of views on aggregator apps, and Realtor.com at 20.2% and Redfin at 13.4% lagged

22   far behind.  *See supra* at 3-4.  Dr. Evans found that as a result of the Zillow's new display,

23   the number of REX transactions that closed nosedived by 60.2% in 2021 and 75.5% in 2022.

24   Evans ¶ 423.  Thus, Dr. Evans' analysis demonstrates that REX was foreclosed, as a result

25   of the display change, from at least 60% of the market.  That is more than enough to

26   demonstrate impact.

27        Zillow also argues (Mot. at 14) there was no adverse impact on competition because

28   REX's listings always remained on Zillow's website.  That contention is directly contrary to

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    15                    BOIES SCHILLER FLEXNER LLP
                                                                    401 E LAS OLAS BLVD., SUITE 1200
                                                                    FORT LAUDERDALE, FL 33301
                                                                    (954) 356-0011

1    the Ninth Circuit's holding in *PLS.Com, LLC v. National Association of Realtors*, 32 F.4th

2    824 (9th Cir. 2022).  The Ninth Circuit made clear that defendants' conduct does not need

3    to totally preclude a competitor's ability to compete to be actionable:

4        First, a group of competitors coercing a competitor's suppliers to sell to that
         competitor only on "unfavorable terms" constitutes a group boycott even if
5        the competitors do not completely cut off the competitor's access to inputs
         it needs.  *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 209,
6        213, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). That is because businesses that
         can obtain those inputs only on unfavorable terms are unlikely to be able to
7        compete.

8

9    *Id.* at 835-36 (citations omitted).  Zillow's contention (Mot. at 15) that there was no harm

10   to competition because REX could advertise on other channels is refuted by the same line

11   of cases on which the Ninth Circuit relied in *PLS* given Zillow's importance as an

12   aggregator site to any broker trying to compete outside NAR'S MLS monopoly.

13        Insofar as Zillow argues that its actions had no impact on competition because REX

14   could simply have co-listed with MLS agents, or because REX was too small to have an

15   impact, or because other discount brokers continued to operate, REX incorporates its

16   opposition to NAR's motion for summary judgment, at 22-23, where it addressed

17   comparable arguments.

18   **IV.    Zillow's Motion for Summary Judgment on REX's Lanham Act Claim Should
             Be Denied**
19

20        Zillow next argues that the Court should enter summary judgment on REX's Lanham

21   Act claim. However, Zillow does not dispute REX's argument that the new display with its

22   two tabs, "Agent Listings" and "Other Listings," is literally false (or, at least, misleading)

23   because REX's listings were assigned to the "Other Listings" tab when Zillow knew REX

24   was a licensed agent and therefore its listings qualified as "Agent Listings."  Instead, Zillow

25   tries to dissect REX's claim, which challenges the display as a whole, arguing that the labels

26   that Zillow affixed to the tabs are not actionable "commercial speech."

27        Zillow's argument is pure misdirection. It rests on the erroneous proposition that the

28   false statement must be specifically intended to influence consumers to buy a defendant's

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ            16

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

goods and services.  But neither the statutory language of the Lanham Act nor Ninth Circuit case law supports that position.   The Lanham Act, by its terms, proscribes the misrepresentation of another's goods and services "*in* commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B) (emphasis added).  Likewise, in the Ninth Circuit the relevant issue is whether the commercial speech *contains* a false statement.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (Act requires "false statement of fact by the defendant *in* a commercial advertisement") (emphasis added)*; see also Ariix LLC. v. Nutrisearch Corp.*, 985 F.3d 1107, 1122 (9th Cir. 2021). In this case, the actionable false statements appeared *in* Zillow's new display that REX alleges violates the Lanham Act, and so long as the display qualifies as "commercial speech," the false statements are actionable.

### A.    Zillow's Display Is "Commercial Speech"

#### 1.    *Ariix* Does Not Support Zillow's Argument

Zillow next argues based on *Ariix* ) that its display is not "commercial speech." But in *Ariix*, which is inapposite, the court found that the nutritional "guide" that was the subject of the false advertising claim was ambiguous with respect to whether it proposed a commercial transaction.  Here, there is no ambiguity: Zillow's website plainly proposes the sale of houses using brokers and agents who patronize Zillow by paying for advertising and leads and, in the case of Premier Flex, remitting to Zillow substantial commissions.

Because it was not clear on its face that the nutritional guide in *Ariix* proposed a commercial transaction, the *Ariix* court evaluated the nutritional guide using the Supreme Court's non-dispositive *Bolger* factors (for use "where the facts present a close question") to determine whether the guide constituted commercial speech. *Ariix*, 985 F.3d at 1115 (overruling the district court's determination that the Guide was not commercial speech) (citing *Bolger v. Youngs Drug Prods Corp.*, 463 U.S. 60, 66-68 (1983)). The Bolger factors are: (i) whether the speech is an advertisement; (2) the speech refers to a particular product, and (3) the speaker has an economic motivation.

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1    While unnecessary to the Court's analysis in this case, the *Bolger* factors, here

2    strongly support REX's claim that Zillow's website display constitutes commercial speech.

3    Simply stated, Zillow's listings satisfy all three of the *Bolger* factors because they are: (1)

4    are in "the traditional form of an advertisement," with "price or availability information

5    listed"; (2) refer to specific products (properties for sale); and (3) Zillow has an economic

6    motivation to present its listings—earning millions in advertising revenue from the by buyer-

7    brokers whom it connects with homebuyers in its Premier agent and Premier Agent Flex

8    programs. *Ariix*, 985 F.3d at 1116-17.

9    The *Ariix* opinion explains further that the third factor is not limited to economic

10   motivation as a result of a direct commercial transaction with consumers. *Id.* at 1117. The

11   Ninth Circuit explained that, while "incidental economic benefit" (such as selling advertising

12   or increasing sales of the publication containing the false statement) may not suffice, the

13   economic motivation need not be an "expectation of a direct commercial transaction with

14   consumers." *Ariix* at 1117 In this case, Zillow derives significant indirect benefits from the

15   promotion of MLS listings on its website by charging brokers and agents for advertising and

16   leads. Indeed, the more successful Zillow is in facilitating residential real estate transactions

17   by advertising houses and providing agents with leads, the more dollars agents spend for

18   visibility on Zillow's website.  In this case the false statements appear in Zillow's new

19   website, which was designed to drive customers to the "Agent Listings" tab.  Directing

20   consumers to "Agent Listings" benefits Zillow because those are the listings that generate

21   most commissions for buyer agents who in turn pay Zillow.

22        **B.    Zillow's "User Tools" Argument Is Inapposite**

23   Zillow further attempts to divert the Court from the blatant falsity of the two-tab

24   display by arguing that the tabs and their labels are not "commercial speech" because they

25   are mere "user tools." Mot. at 17.  But Zillow's tabs and their labels cannot be fairly

26   characterized as "user tools."  A user tool should help to navigate a website; instead, Zillow's

27   tabs, labelled as they were, served to obscure REX's listings and mischaracterized them as

28

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                18

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1   "non-agent."  Zillow's own documents show that it knew the new two-tab system impeded

2   (not helped) consumers in using the site.[13]

3          Zillow cites three cases to argue that the tabs are mere "user tools" not actionable

4   pursuant to the Lanham Act.  None is on point.  *Prager Univ. v. Google, LLC*, 951 F.3d

5   991 (9th Cir. 2020) and *Newman v. Google, LLC,* No. 20-CV-04011-LHK, 2021 WL

6   2633423, at *11 (N.D. Cal. June 25, 2021), concerned YouTube's designation of

7   plaintiffs' video content as potentially inappropriate, and the alleged false statement was

8   that the content was not visible unless the viewer turned off Restricted Mode.  In *Maffick*

9   *LLC v. Facebook, Inc.*, No. 20-CV-05222-JD, 2021 WL 1893074, at *4 (N.D. Cal. May

10  11, 2021), the plaintiff complained that Facebook had flagged its social media content as

11  "Russia state-controlled media."  All three cases were dismissed for failure to state a

12  claim because the statements at issue were unconnected to identifiable commercial

13  transactions.  See *Newman*, 2021 WL 2633423, at *11 (N.D. Cal. June 25, 2021)

14  ("Defendants' statements regarding Restricted Mode's "terms of service, community

15  guidelines, and contracts are not advertisements or a promotional campaign," but rather

16  simply explain to YouTube users the nature of the Restricted Mode tool.") (quoting

17  *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020)).  In *Maffick*, "neither

18  the label *nor Facebook's 'campaign' around it* constituted an advertisement or promotion

19  . . . .".  *Maffick LLC*, 2021 WL 1893074, at *4 (emphasis added).

20         Here, Zillow's tabs appear in a website that clearly constitutes commercial speech

21  and the mislabeling could not be more explicit. Therefore, the Court should reject Zillow's

22  "mere user tools" argument.

23         **C.    The Record Contains Substantial Evidence That Zillow's False New**
              **Display Injured REX**
24

25         Zillow next tries to persuade the Court to focus myopically on the "Other Listings"

26  label and dismiss REX's claim because REX cannot prove that the "Other Listings" label

27

28  _____
    [13] Ex. NNN, ZG_00298006; Ex. OOO, ZG_00429309 at 313; Ex. PPP, ZG_00102105; Ex.
    QQQ, ZG_00001161 at 168, 219, 221.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    19                    BOIES SCHILLER FLEXNER LLP
                                                                   401 E LAS OLAS BLVD., SUITE 1200
                                                                   FORT LAUDERDALE, FL 33301
                                                                   (954) 356-0011

proximately caused its business to fail. Mot. at 18. But REX is not claiming harm from the assignment of its listings to the "Other Listings" Tab. Rather, REX claims that Zillow violated the Lanham Act by making at least two literally false statements that operate inseparably with each other and in combination with the display as a whole to deceive consumers: (i) the label "Agent Listings" is literally false because it does not include REX's agent listings; (ii) the tab "Other Listings," juxtaposed as it is to the Agent Listings tab, is literally false because it consists of non-agent listings yet includes REX agent listings: and (iii) the listings display to which the website defaults is misleading and reinforces the falsity of the labels on the two tabs.

Pursuant to settled law, whether these facts harmed REX should be judged by traditional proximate cause principles. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138, (2014) (plaintiff ordinarily "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising."). The jury could reasonably find from the record evidence that REX's damages flow from the display as a whole, as REX claims. Zillow's own documents and testimony, as well as REX's business records, show that when the website went live in January 2021, it had an immediate negative impact on listings assigned to the "Other Listings" tab. ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████.[14] An analysis of Zillow's data found the display change was accompanied by a 64.6 percent reduction in page views of REX's listings, and caused 60.2% drop in REX closings in 2021 and 75.5% drop in 2022. Evans ¶¶ 416, 423. These facts are powerful evidence of harm to REX traceable directly to Zillow's newly configured display.

Moreover, to the extent REX is claiming the representations on the two-tab display are literally false, REX does not have the initial burden of demonstrating harm. In the Ninth Circuit, if REX proves literal falsity, REX is entitled to a presumption of injury and

---

[14] Ex. RRR, ZG_00298006; Ex. SSS, Thomas Dep. 98:3-7.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                20

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

1  entitlement to monetary relief. *See Southland Sod Farms*., 108 F.3d at 1146 ; *see also*

2  *Chaverri v. Platinum LED Lights LLC,* No. CV-21-01700-PHX-SPL, 2022 WL 2275664, at

3  *4 (D. Ariz. June 22, 2022).

4         **D.**     **REX's Lanham Act Damages Are REX's Lost Future Profits**

5        Because REX failed as a direct result of a violation of the Sherman Act, Dr. Evans,

6  REX's liability and damages expert, will testify that the appropriate measure of damages for

7  its antitrust claims is the value of REX's business (minus any residual value). In addition,

8  Dr. Evans states: "My understanding is that REX claims, and intends to prove at trial, that

9  Zillow's two-tab display violated the Lanham Act and the analogous state consumer

10  protection act, in which case the damage estimates reported in this section equal REX's

11  damage estimates under these claims as well." Evans ¶ 485 n.473.  Dr. Evans' understanding

12  is correct: REX's legal position is that it failed due to the  two-tab display and, provided the

13  jury finds that the two-tab display violated the Lanham Act and caused REX to go out of

14  business, then the measure of REX's damages is the same regardless of whether the jury

15  finds liability under the  antitrust laws the Lanham Act or both, though unlike Sherman Act

16  damages, Lanham Act damages are not trebled, but can be enhanced up to three times actual

17  damages.  *See* 15 U.S.C. § 1117(a).

18        Contrary to Zillow's characterization, there is nothing esoteric about Dr. Evans'

19  reliance on the present value of REX's future lost profits as the appropriate measure of

20  damages for REX's Lanham Act claim.  It is allowed by the very terms of the statute.  15

21  U.S.C. § 1117 (allowing for recovery of "(1) defendant's profits, [or] (2) any damages

22  sustained by the plaintiff" for violations of 15 U.S.C. § 1125(a)); *see also POM Wonderful*

23  *LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at *14 (C.D.

24  Cal. July 17, 2008), *aff'd*, 362 F. App'x 577 (9th Cir. 2009) ("the Court finds that plaintiff

25  is entitled to recover lost profits on sales it would have made, but for defendants' false

26  advertising").  Zillow claims (at 20) without citation to authority that "future profits do not

27  represent actual lost profits," but, of course, lost profits are always future profits. *See, e.g.*,

28  *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 412 (1985) ("damages awards in suits

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ      21

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

governed by federal law should be based on present value" and stating "no single method for determining present value is mandated by federal law"); *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 245 F. Supp. 2d 756, 758 (E.D. Va. 2002) (noting "requirement to discount the future profits award to present value" in Lanham Act claim).

Like its argument regarding proximate causation, Zillow also seeks summary judgment because Dr. Evans does not disaggregate the damages attributable to the falsity of the "Other Listings" tab from other factors that could have contributed to REX's failure. Neither of the cases cited by Zillow holds that disaggregation is required. In *Trafficschool.com, Inc. v. EDriver, Inc.*, 653 F.3d 820 (9th Cir. 2011) the Ninth Circuit affirmed the district court's decision denying monetary relief after a bench trial based on the district court's finding that the plaintiff produced no evidence of causation. Likewise, the court in *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 905 F. Supp. 2d 1235 (W.D. Wash. 2012) rejected plaintiff's false advertising claim on multiple grounds after a bench trial, including plaintiff's failure to produce competent evidence of a causal link between the alleged falsity and damages. Here, the record contains evidence of a causal link between the falsity of the two-tab display and REX's failure. To the extent there is a dispute on this point it should be resolved at trial.

### E.    Damages Need Not Be Limited to Monetary Damages

Even if the jury were to find Zillow's Lanham Act violation did not drive REX out of business, REX would still be entitled to nominal damages. *See Pogrebnoy v. Russian Newspaper Distrib., Inc.*, 289 F. Supp. 3d 1061, 1072–73 (C.D. Cal. 2017) (awarding nominal damages for Lanham Act claim violation). The Amended Complaint includes an adequate prayer for nominal damages, as it requests the Court to "[a]ward REX damages and statutory damages to be proven at trial," and in connection with the request for a permanent injunction, to "[o]rder and award all other relief to REX as the Court deems just and proper." Am. Compl., Prayer for Relief, ¶¶ J(f), F. *See Yniguez v. State*, 975 F.2d 646, 647 n.1 (9th Cir. 1992) ("Although the plaintiff's complaint does not expressly request

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    22

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

nominal damages, it did request 'all other relief that the Court deems just and proper under the circumstances.' That is sufficient to permit the plaintiff to pursue nominal damages.").

REX would also be entitled to attorney's fees. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1212, 1216–18, 1221 (9th Cir. 2003) (affirming award of attorney's fees to plaintiff where defendant violated Lanham Act).

## V.    Zillow's Motion for Summary Judgment on Rex's State Law Claims Should Be Denied

### A.    Summary Judgment Should be Denied as to REX's False Advertising Claim Pursuant to RCW 19.86.20

Washington courts hold that claims under the Washington CPA, 19.86.020, are generally congruent with claims under the Lanham Act. *See, e.g.*, *Campagnolo S.r.L. v. Full Speed Ahead, Inc.,* No. C08-1372 RSM, 2010 WL 1903431, at *11 (W.D. Wash. May 11, 2010) (denying defendant's motion for summary judgment); *CertainTeed Corp. v. Seattle Roof Brokers*, No. C 09-563 RAJ, 2010 WL 2640083, at *7 (W.D. Wash. June 28, 2010) ("For the remainder of this order, the court will consider proof of a Lanham Act false advertising claim sufficient to prove a CPA violation as well. . . . [S]tatements that would violate the Lanham Act but for their use in purely local commerce will also be deemed violations of the CPA").

Accordingly, the Court should allow REX's claim (Court IV) under the Washington Consumer Protection Act to proceed to trial because there are questions of fact as elements of the claim and REX will be able to produce sufficient evidence that a jury could find in favor of REX.

### B.    Summary Judgment Should be Denied as to REX's Antitrust Claim Pursuant to RCW 19.86.030

REX's antitrust claim, (Count VI, pursuant to RCW 19.86.030 also should proceed to trial for the same reasons stated above regarding its federal antitrust claims, given their similarities. *See State v. Black*, 100 Wash. 2d 793, 799, 676 P.2d 963, 967 (1984) ("When the Legislature enacted the Consumer Protection Act, it anticipated that

our courts would be guided by the interpretation given by federal courts to their corresponding federal statutes."); *Murray Pub. Co. v. Malmquist*, 66 Wash. App. 318, 324, 832 P.2d 493, 497 (1992) ("RCW 19.86.030 is essentially identical to section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. In construing RCW 19.86.030, courts are to be guided by federal decisions interpreting comparable federal provisions.") (internal citation omitted).

**C.    REX at a Minimum Is Entitled to Nominal Damages on Its Defamation Claim**

As explained above, REX alleged and has shown that the two-tab display was literally false and REX has produced additional evidence that the display was misleading in other respects. REX also has pointed to evidence demonstrating that Zillow knew the two-tab display was false and misleading because Zillow knew REX's agents were Premier Agents on Zillow's websites. This suffices to establish a prima facie case of defamation under Washington common law. *See Gertz v. Robert Welch, Inc.* 418 U.S. 323, 349 (1974) (common law of defamation allows for recovery without evidence of actual loss, but only where plaintiffs prove knowledge of falsity or reckless disregard for the truth). Therefore, REX is minimally entitled to seek nominal damages for Zillow's wrongful conduct. *See Hupp v. Jones*, 474 Fed. App'x 601, 601–02 (9th Cir. 2012) (affirming district court's award of nominal damages in defamation claim).

## CONCLUSION

For the foregoing reasons, REX respectfully requests that the Court deny Zillow's motion for summary judgment.

**Word Count**: I certify that this memorandum contains 8,400 words, in compliance with the Local Civil Rules.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    24

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011

Dated: June 27, 2023

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Carl Goldfarb, Esq.*
Carl E. Goldfarb (Admitted Pro Hac Vice)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
cgoldfarb@bsfllp.com

Ursula Ungaro, Esq.
Stephen N. Zack, Esq.
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
uungaro@bsfllp.com
szack@bsfllp.com

James Denvir
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, D.C, 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
jdenvir@bsfllp.com

David Boies, Esq.
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 27, 2023, I served foregoing document to be filed in this Court's CM/ECF system, which will send notification of such filing to the counsel of record.

By: */s/ Carl E. Goldfarb*
Carl E. Goldfarb, Esq.

OPPOSITION TO ZILLOW'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:21-cv-00312-TSZ                    25

BOIES SCHILLER FLEXNER LLP
401 E LAS OLAS BLVD., SUITE 1200
FORT LAUDERDALE, FL 33301
(954) 356-0011