01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09
10

REX – REAL ESTATE EXCHANGE, INC.,

11

Plaintiff,

C21-0312 TSZ

12

v.

13

ZILLOW GROUP, INC.,

COURT'S JURY INSTRUCTIONS

14

Defendant.

15
16
17

DATED this 28th day of September, 2023.

18
19
20

Thomas S. Zilly
United States District Judge

21
22

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22

INSTRUCTION NO.  1

<u>Duty of Jury</u>

Members of the Jury:   Now that you have heard all the evidence, it is my duty to

instruct you on the law that applies to this case.   These instructions will be in three parts:

first, the instructions on general rules that define and control the jury's duties; second, the

instructions that state the rules of law you must apply, <u>i.e.</u>, what plaintiff must prove to make

its case; and third, some rules for your deliberations.

It is your duty to find the facts from all the evidence in the case.   To those facts you

must apply the law as I give it to you.   You must follow the law as I give it to you whether

you agree with it or not.   And you must not be influenced by any personal likes or dislikes,

opinions, prejudices, or sympathy.   That means that you must decide the case solely on the

evidence before you and according to the law.   You will recall that you took an oath

promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and

ignore others; they are all equally important.   And you must not read into these instructions or

anything I might have said or done that I have an opinion regarding the evidence or what

verdict you should return.   That is a matter entirely for you to decide.

INSTRUCTION NO.  2

Conscious and Unconscious Bias

It is important that you discharge your duties without discrimination, meaning that bias regarding race, color, religious beliefs, national origin, sexual orientation, gender, or any disability of a party, a witness, or a lawyer should play no part in the exercise of your judgment throughout the trial.   These are called "conscious biases."

There is, however, another more subtle tendency at work about which we must all be aware.   This part of human nature is understandable but must play no role in your service as jurors.   In our daily lives, there are many issues that require us to make quick decisions and then move on.   In making these daily decisions, we may well rely upon generalities, even what might be called biases or prejudices.   That may be appropriate as a coping mechanism in our busy daily lives but bias and prejudice can play no part in any decisions you might make as a juror.   Your decisions as jurors must be based solely upon an open-minded, fair consideration of the evidence that comes before you during trial.

COURT'S JURY INSTRUCTIONS

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22

INSTRUCTION NO.  3

<u>Burden of Proof</u>

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.   You should base your decision on all of the evidence, regardless of which party presented it.

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 4

<u>Evidence</u>


The evidence you are to consider in deciding what the facts are consists of (1) the sworn testimony of witnesses; (2) the exhibits that are admitted into evidence; and (3) any facts to which all the lawyers have agreed.

INSTRUCTION NO.  5

<u>Stipulated Facts</u>

The parties have agreed, or stipulated, to the following facts.   You must therefore treat these facts as having been proved.   You should consider these facts in addition to those facts that were proved to you at trial.

1.      Jack Ryan and Lynley Sides founded REX in 2015.

2.      Multiple Listing Services ("MLSs") receive and compile residential real estate listings in their respective territories.   A listing is a compilation of data about a specific property, including its size, price, and sale status, as well as any photos, videos, or virtual tours of the property.   MLSs make their listings available for electronic display to real estate agents and brokers who join an MLS and comply with its requirements.

3.      The National Association of REALTORS® ("NAR") publishes an annual Handbook on Multiple Listing Policy, which contains policies, rules and model rules and bylaws, proposed by NAR committees, and adopted by the NAR's Board of Directors, that are applicable to and guide MLSs that are affiliated with NAR and their participants.

4.      Some NAR rules are mandatory, whereas other rules are merely "recommended," "optional," or "informational."

INSTRUCTION NO. 5 (page 2)

5.     In 2001, NAR formulated and promulgated its IDX policies and rules, which govern the electronic display of listings obtained from MLSs.   "IDX" is an acronym for Internet Data Exchange.

6.     Model Rule 18.3.11 is an optional rule that is part of NAR's IDX policies and model rules.

7.     As relevant here, Model Rule 18.3.11 states:

Listings obtained through IDX feeds from REALTOR® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources.   Listings obtained from other sources (e.g. from other MLSs, from non-participating brokers, etc.) must display the source from which each such listing was obtained***

Note:   An MLS participant (or where permitted locally, an MLS subscriber) may co-mingle the listings of other brokers received in an IDX feed with listings available from other MLS IDX feeds, provided all such displays are consistent with the IDX rules, and the MLS participant (or MLS subscriber) holds participatory rights in those MLSs.   As used in this policy, "co-mingling" means that consumers are able to execute a single property search of multiple IDX data feeds resulting in the display of IDX information from each of the MLSs on a single search results page; and that participants may display listings from each IDX feed on a single webpage or display.

8.     Zillow's platforms (Zillow and Trulia) are used by about 63.0% of real estate app users, followed by Realtor.com, with about a 20.2% share of users, and Redfin, with about a 13.4% share.

INSTRUCTION NO. 5 (page 3)

9. In 1995, only 2% of home buyers used the internet to look for a home. Since 2015, more than 92% of home buyers have used the internet to search for homes. Today, more than 50% of homebuyers find the homes they ultimately purchase on the internet.

10. Zillow has never charged listing sources for inclusion and display of their listings on its websites.

11. Zillow earns revenue from a variety of sources, including through its Premier Agent and Premier Agent Flex programs. Zillow's Premier Agent program offers advertising services, as well as marketing and technology products and services, to help real estate agents secure leads for potential buyers. In most markets where Zillow operates the Premier Agent Flex program, Zillow provides leads to select buyer-side brokers or agents in exchange for 20% to 35% of a broker's or agent's commission if a transaction based on a lead that Zillow provided successfully closes.

12. REX employed licensed brokers and real estate agents, both paid primarily on a salaried basis, in all the states where it operated.

13. REX was a discount broker who offered consumers an opportunity to sell their homes without paying buyer-broker commissions.

14. Zillow included listings that were not posted in an MLS on its listings aggregation platform. Beginning in 2015, REX's homes for sale appeared on Zillow.

INSTRUCTION NO. 5 (page 4)

15.     REX provided its listings to Zillow via a broker feed, and Zillow included REX's listings on its platform.   REX also paid Zillow, at times, to participate in its Premier Agent program.

16.     Zillow knew that it could protect itself from losing listings data if it secured its listings through IDX feeds, but Zillow also knew that doing so would require submitting to IDX policies and rules.

17.     In September 2020, Zillow publicly announced its intention to form a brokerage and transition to IDX feeds.

18.     Prior to Zillow's public announcement in September 2020, Zillow redesigned its website. Zillow ultimately created a new display for listings search results that had two tabs— one labelled "Agent listings" and the other labelled "Other listings."   Zillow set the "Agent listings" tab as the default tab.   Zillow also decided to make this change throughout the United States to make a better customer experience.

19.     Zillow went live with its new display in early-January 2021.

20.     But for the individual MLSs' adoption of the no-commingling rule,   Zillow would not have implemented its new display or design.   Zillow chose the website design, including the labels and default, to be used nationwide.

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 5 (page 5)

21.    After implementing its new display, Zillow unsuccessfully petitioned NAR at least twice to replace Model Rule 18.3.11 with a mandatory rule that would require the local MLSs to permit MLS participants to commingle all listings from all sources.

INSTRUCTION NO.  6

<u>What is Not Evidence</u>

In reaching your verdict you may consider only the testimony and exhibits received into evidence.   Certain things are not evidence and you may not consider them in deciding what the facts are.   I will list them for you:

1.      Arguments and statements by lawyers are not evidence.   The lawyers are not witnesses.   What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.   If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Objections by lawyers are not evidence.   Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.   You should not be influenced by the objection or by the Court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.   In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you might have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO.  7

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial.   Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.   The law makes no distinction between the weight to be given to either direct or circumstantial evidence.   It is for you to decide how much weight to give to any evidence.

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 8

Credibility of Witnesses

In deciding the facts in this case, you might have to decide which testimony to believe and which testimony not to believe.   You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.     the opportunity and ability of the witness to see or hear or know the things testified to;

2.     the witness's memory;

3.     the witness's manner while testifying;

4.     the witness's interest in the outcome of the case and any bias or prejudice;

5.     whether other evidence contradicted the witness's testimony;

6.     the reasonableness of the witness's testimony in light of all the evidence; and

7.     any other factors that bear on believability.

These are some of the factors you may consider in deciding whether to believe testimony.

Sometimes a witness might say something that is not consistent with something else he or she said.   Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.   Also, two people might

INSTRUCTION NO. 8 (page 2)

see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

If you decide, however, that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.   On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses who testify.   What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO.  9

<u>Opinion Evidence</u>

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.

Opinion testimony should be judged just like any other testimony.   You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO.  10

Charts and Summaries

        Certain charts and summaries not admitted into evidence might have been shown to you to help explain the contents of books, records, documents, or other evidence in the case. Other charts and summaries might have been received into evidence to illustrate information brought out during the trial.   Charts and summaries are only as good as the underlying evidence that supports them.   You should, therefore, give them only such weight as you think the underlying evidence deserves.

INSTRUCTION NO. 11

<u>Notes</u>

Whether or not you took notes during the trial, you should rely on your own memory of the evidence.   Notes are only to assist your memory.   You should not be overly influenced by your notes or those of other jurors.

INSTRUCTION NO.  12

<u>Corporate Parties</u>


The fact that plaintiff and defendant are corporations should not affect your decision. All parties are equal before the law, and a corporation is entitled to the same fair and conscientious consideration by you as any other party.   A corporation can act only through its employees and is responsible for the acts of its employees performed within the scope of their authority.

INSTRUCTION NO.  13

<u>Summary of Claims</u>

Plaintiff REX – Real Estate Exchange, Inc. makes the following claims, on which it bears the burden of proof by a preponderance of the evidence:

(1)    Plaintiff claims that defendant made a false statement of fact in a commercial advertisement or promotion about plaintiff's services or commercial activities; and

(2)    Plaintiff claims that defendant violated the Washington Consumer Protection Act ("CPA").

Plaintiff brings these claims under federal and Washington law.

Defendant Zillow Group, Inc. denies plaintiff's claims and, further, denies the nature and extent of plaintiff's damages.   Defendant also asserts affirmative defenses.

The foregoing is merely a summary of the claims and defenses of the parties.   You are not to take the same as proof of the matter claimed unless admitted by the opposing party, and you are to consider only those matters that are admitted or established by the evidence.   These claims and defenses have been outlined solely to aid you in understanding the issues.

Plaintiff asserts two claims, and each claim is entitled to your separate consideration. You must decide as to each claim whether plaintiff is entitled to recover.   The fact that plaintiff is entitled to recover on one claim does not mean that plaintiff is entitled to recover on the other claim.   Similarly, the fact that plaintiff is not entitled to recover on one claim does not prevent plaintiff from recovering on the other claim.

INSTRUCTION NO. 14

<u>First Claim</u>

<u>False Advertising</u>

Plaintiff brings its first claim for false advertising under a federal statute known as the Lanham Act.   To prevail on its false advertising claim under the Lanham Act, plaintiff must prove the following elements by a preponderance of the evidence:

1.      Defendant made a false statement of fact in a commercial advertisement or promotion about the plaintiff's services or commercial activities;

2.      The statement actually deceived or had the tendency to deceive a substantial segment of its audience;

3.      The deception was material, meaning that it was likely to influence a person's purchasing decision; and

4.      Plaintiff has been injured as a result of the statement.

If you find from your consideration of all of the evidence that any of the above elements has not been proved, then your verdict should be for defendant on plaintiff's first claim.   On the other hand, if you find that plaintiff has proved all of these elements, then your verdict should be for plaintiff on its first claim.

INSTRUCTION NO. 14A

<u>First Claim</u>

<u>False Statement in a Commercial Advertisement or Promotion</u>

A statement may be actionable under the Lanham Act because it is literally false on its face or by necessary implication.   The Court has previously ruled that the tab labels "Agent listings" and "Other listings" are literally false by necessary implication.

A commercial advertisement or promotion is commercial speech that is made for the purpose of influencing consumers to buy goods or services.   Speech that proposes a commercial transaction and meets the following criteria is usually considered commercial speech:   (a) the speech is contained within an advertisement; (b) the speech refers to a particular product or service; and (c) the speaker has an economic motivation.

INSTRUCTION NO. 14B

<u>First Claim</u>

<u>Deception</u>

Because the Court has concluded that the tab labels are literally false by necessary implication, plaintiff is entitled to a presumption that the tab labels actually deceived or had a tendency to deceive a substantial segment of their audience.   Defendant bears the burden of rebutting this presumption by presenting evidence that the tab labels did not actually deceive and did not have a tendency to deceive a substantial segment of their audience.   If you find that defendant has presented such evidence, then the presumption has been rebutted, and you must decide whether plaintiff has shown by a preponderance of the evidence that the tab labels actually deceived or had a tendency to deceive a substantial segment of their audience.   On the other hand, if you find that the presumption has not been rebutted, then you must find that the second element of plaintiff's first claim for false advertising has been proved.

INSTRUCTION NO. 14C

<u>First Claim</u>

<u>Injury</u>


Plaintiff bears the burden of proving, by a preponderance of the evidence, that (1) it suffered injury, and (2) the tab labels at issue were a proximate cause of any such injury. Plaintiff need not, however, establish that the tab labels were the sole cause of its injury.

INSTRUCTION NO. 14D

First Claim

Causation


For purposes of plaintiff's first claim for false advertising, injury or damages are proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damages, and that the injury or damages were either a direct result or a reasonably probable consequence of the act or omission.

There may be more than one proximate cause of injury or damages.

INSTRUCTION NO.  15

<u>Second Claim</u>

<u>Violation of the Washington Consumer Protection Act ("CPA")</u>

Plaintiff claims that defendant has violated the Washington Consumer Protection Act. To prove this claim, plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.     That defendant engaged in an unfair or deceptive act or practice;

2.     That the act or practice occurred in the conduct of defendant's trade or commerce;

3.     That the act or practice affects the public interest;

4.     That plaintiff was injured in either its business or its property; and

5.     That defendant's act or practice was a proximate cause of plaintiff's injury.

If you find from your consideration of all of the evidence that any of the above elements has not been proved, then your verdict should be for defendant on plaintiff's second claim. On the other hand, if you find that plaintiff has proved all of these elements, then you must consider defendant's affirmative defense.   To prevail on its affirmative defense, defendant must prove by a preponderance of the evidence that defendant's act or practice was reasonable in relation to the development and preservation of its business.

INSTRUCTION NO. 15 (page 2)


If you find from your consideration of all of the evidence that defendant has proved its affirmative defense, then your verdict should be for defendant on plaintiff's second claim.   On the other hand, if you find that defendant has not proved its affirmative defense, then your verdict should be for plaintiff on its second claim.

INSTRUCTION NO. 15A

<u>Second Claim</u>

<u>Unfair or Deceptive Act or Practice</u>

A.  <u>Unfair Act or Practice</u>

In order to prove that defendant engaged in an *unfair* act or practice, plaintiff must show that the act or practice caused or was likely to cause substantial injury to consumers, competitors, or other businesses, which they could not reasonably avoid and which is not outweighed by countervailing benefits to consumers or to competition.   An act or practice can be unfair without being deceptive.

B.  Deceptive Act or Practice

In order to prove that defendant engaged in a *deceptive* act or practice, plaintiff must show that the act or practice had the capacity to deceive a substantial portion of the public. Plaintiff does not need to show that the act or practice was intended to deceive.

INSTRUCTION NO. 15B

<u>Second Claim</u>

<u>Trade or Commerce</u>

The phrase "trade or commerce" includes the sale of assets or services, and any commerce directly or indirectly affecting the people of the State of Washington.   The word "assets" includes anything of value.

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 15C

<u>Second Claim</u>

<u>Public Interest</u>

An act or practice "affects the public interest" if the act or practice:

1.      injured other persons; or

2.      had the capacity to injure other persons; or

3.      has the capacity to injure other persons.

INSTRUCTION NO. 15D

<u>Second Claim</u>

<u>Injury</u>

For purposes of its CPA claim, plaintiff has suffered an "injury" if its business or property has been injured to any degree.   With respect to its second claim, plaintiff has the burden of proving that it has been injured, but no monetary amount need be proven and proof of any injury is sufficient, even if expenses or losses caused by the CPA violation are minimal.

INSTRUCTION NO. 15E

<u>Second Claim</u>

<u>Causation</u>

Plaintiff has the burden of proving that defendant's unfair or deceptive act or practice was a proximate cause of plaintiff's injury.   A cause of injury or damages is a proximate cause if it is related to the injury or damages in two ways: (1) the cause produced the injury or damages in a direct sequence, and (2) the injury or damages would not have happened in the absence of the cause.

There may be more than one proximate cause of injury or damages.

INSTRUCTION NO. 16

<u>Measure of Damages</u>

It is the duty of the Court to instruct you about the measure of damages.   By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.   If your verdict is for plaintiff on one or both of its claims, you must determine plaintiff's damages.   Plaintiff has the burden of proving damages by a preponderance of the evidence.   Damages means the amount of money that will reasonably and fairly compensate plaintiff for any injury you find was proximately caused by defendant.   It is for you to determine, based upon the evidence, what damages, if any, have been proved.   Your award of damages must be based upon evidence and not upon speculation, guess, or conjecture.

If your verdict is for plaintiff on either its first claim for false advertising in violation of the Lanham Act or its second claim for violation of the CPA or both, you may award actual damages proximately caused by the false advertising and/or the violation of the CPA.   Actual damages may consist of **<u>either</u>** (i) any lost profits that plaintiff would have earned but for defendant's false advertising and/or violation of the CPA, **<u>or</u>** (ii) the amount, if any, of plaintiff's enterprise value, if you find that the false advertising and/or violation of the CPA proximately caused plaintiff to go out of business, with all of you agreeing on either (i) or (ii). Profit is determined by deducting all expenses from gross revenue.   Enterprise value is a company's total worth, and it may be calculated in different ways.   It is for you to determine

INSTRUCTION NO. 16 (page 2)


whether the method used by plaintiff to measure its enterprise value is valid, and what amount

of enterprise value, if any, plaintiff has proved.

INSTRUCTION NO. 16A

<u>Mitigation</u>

Plaintiff had a duty to use reasonable efforts to mitigate damages.   To mitigate means to avoid or reduce damages.

Defendant has the burden of proving by a preponderance of the evidence:

1.      Plaintiff failed to use reasonable efforts to mitigate damages; and

2.      The amount by which damages would have been mitigated.

INSTRUCTION NO. 16B

<u>Duplication of Damages</u>

Plaintiff seeks recovery against defendant on more than one claim.   If you find that plaintiff is entitled to recover on more than one claim, you should indicate the measure of damages for each claim.   Your separate awards of damages could result in a duplication of damages.   You should not concern yourselves with this issue.   The Court will correct for any duplication of damages you might award so that plaintiff under no circumstances would collect a double recovery.

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 17

<u>Deliberation</u>

Upon retiring to the jury room for your deliberation of this case, your first duty is to select a presiding juror to act as chairperson.   It is his or her duty to see that discussion is carried on in a sensible and orderly fashion, that the issues submitted for your decision are fully and fairly discussed, and that every juror has a chance to express himself or herself and participate in the deliberations upon each question before the jury.

You will be furnished with all the exhibits, these instructions and a suitable form of verdict.

This being a civil case, all of you must agree upon a verdict.   When you have so agreed, fill in the proper form of verdict to express the results of your determination.   The presiding juror will sign and date it and announce your agreement to the clerk who will conduct you into court to declare your verdict.

INSTRUCTION NO. 18

<u>Reaching Agreement</u>


Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.

Do not be afraid to change your opinion if you think you are wrong.   But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination.   Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

Your verdict must be based solely on the evidence and on the law as I have given it to you in these Instructions.

INSTRUCTION NO. 19

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury.   No member of the jury should ever attempt to communicate with me except by a signed writing.   I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.   Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

If you send a note to me, there will be some delay in my response because I will discuss the note with the lawyers before preparing a response.   You may continue your deliberations while waiting for the answer to any question.

INSTRUCTION NO. 20

<u>Verdict</u>

After you have reached unanimous agreement on a verdict, your presiding juror will fill in, date, and sign the verdict form and advise the court that you have reached a verdict.