1

2

3

4

5                        UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
6                                AT SEATTLE

7   REX – REAL ESTATE EXCHANGE,
    INC.,
8
                          Plaintiff,
9                                                    C21-0312 TSZ
           v.
10                                                   MINUTE ORDER
    ZILLOW GROUP, INC.,
11
                          Defendant.
12

13        The following Minute Order is made by direction of the Court, the Honorable
    Thomas S. Zilly, United States District Judge:

14        (1)     Attachment 1 to this Minute Order is an annotated version of the Court's
    jury instructions, which was provided in draft form to counsel before the jury-instruction
15  conferences conducted on September 27 and 28, 2023.  Attachment 1 reflects the Court's
    rulings with respect to the final version of the instructions provided both orally and in
16  writing to the jury on September 28, 2023.

17        (2)     The Clerk is directed to send a copy of this Minute Order to all counsel of
    record.
18
          Dated this 29th day of September, 2023.
19

20                                                   Ravi Subramanian_____
                                                     Clerk
21
                                                     s/Laurie Cuaresma_____
22                                                   Deputy Clerk

23

MINUTE ORDER - 1

01

02

**ATTACHMENT 1**

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08

09

REX – REAL ESTATE EXCHANGE, INC.,

10

Plaintiff,

11

C21-0312 TSZ

12

v.

COURT'S JURY INSTRUCTIONS

13

ZILLOW GROUP, INC.,

14

Defendant.

15

16

17

18

**ANNOTATED VERSION**
**September 28, 2023**

19

20

21

22

INSTRUCTION NO. 1

<u>Duty of Jury</u>

Members of the Jury:   Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.   These instructions will be in three parts: first, the instructions on general rules that define and control the jury's duties; second, the instructions that state the rules of law you must apply, <u>i.e.</u>, what plaintiff must prove to make its case; and third, some rules for your deliberations.

It is your duty to find the facts from all the evidence in the case.   To those facts you must apply the law as I give it to you.   You must follow the law as I give it to you whether you agree with it or not.   And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.   That means that you must decide the case solely on the evidence before you and according to the law.   You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.   And you must not read into these instructions or anything I might have said or done that I have an opinion regarding the evidence or what verdict you should return.   That is a matter entirely for you to decide.

**SOURCE:   9th Cir. Model Instr. 1.4.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  2

<u>Conscious and Unconscious Bias</u>

It is important that you discharge your duties without discrimination, meaning that bias regarding race, color, religious beliefs, national origin, sexual orientation, gender, or any disability of a party, a witness, or a lawyer should play no part in the exercise of your judgment throughout the trial.   These are called "conscious biases."

There is, however, another more subtle tendency at work about which we must all be aware.   This part of human nature is understandable but must play no role in your service as jurors.   In our daily lives, there are many issues that require us to make quick decisions and then move on.   In making these daily decisions, we may well rely upon generalities, even what might be called biases or prejudices.   That may be appropriate as a coping mechanism in our busy daily lives but bias and prejudice can play no part in any decisions you might make as a juror.   Your decisions as jurors must be based solely upon an open-minded, fair consideration of the evidence that comes before you during trial.

**SOURCE:   WPI 1.01; <u>see</u> https://www.wawd.uscourts.gov/jury/unconscious-bias.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  3

<u>Burden of Proof</u>

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.   You should base your decision on all of the evidence, regardless of which party presented it.

**SOURCE:   9th Cir. Model Instr. 1.6.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  4

Evidence


     The evidence you are to consider in deciding what the facts are consists of (1) the sworn testimony of witnesses; (2) the exhibits that are admitted into evidence; and (3) any facts to which all the lawyers have agreed.

**SOURCE:   9th Cir. Model Instr. 1.9.**

COURT'S JURY INSTRUCTIONS

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22

INSTRUCTION NO. 5

Stipulated Facts

The parties have agreed, or stipulated, to the following facts.   You must therefore treat these facts as having been proved.   You should consider these facts in addition to those facts that were proved to you at trial.

1.      Jack Ryan and Lynley Sides founded REX in 2015.

2.      Multiple Listing Services ("MLSs") receive and compile residential real estate listings in their respective territories.   A listing is a compilation of data about a specific property, including its size, price, and sale status, as well as any photos, videos, or virtual tours of the property.   MLSs make their listings available for electronic display to real estate agents and brokers who join an MLS and comply with its requirements.

3.      The National Association of REALTORS® ("NAR") publishes an annual Handbook on Multiple Listing Policy, which contains policies, rules and model rules and bylaws, proposed by NAR committees, and adopted by the NAR's Board of Directors, that are applicable to and guide MLSs that are affiliated with NAR and their participants.

4.      Some NAR rules are mandatory, whereas other rules are merely "recommended," "optional," or "informational."

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 5 (page 2)

5.      In 2001, NAR formulated and promulgated its IDX policies and rules, which govern the electronic display of listings obtained from MLSs.   "IDX" is an acronym for Internet Data Exchange.

6.      Model Rule 18.3.11 is an optional rule that is part of NAR's IDX policies and model rules.

7.      As relevant here, Model Rule 18.3.11 states:

Listings obtained through IDX feeds from REALTOR® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources.  Listings obtained from other sources (e.g. from other MLSs, from non-participating brokers, etc.) must display the source from which each such listing was obtained***

Note:   An MLS participant (or where permitted locally, an MLS subscriber) may co-mingle the listings of other brokers received in an IDX feed with listings available from other MLS IDX feeds, provided all such displays are consistent with the IDX rules, and the MLS participant (or MLS subscriber) holds participatory rights in those MLSs.   As used in this policy, "co-mingling" means that consumers are able to execute a single property search of multiple IDX data feeds resulting in the display of IDX information from each of the MLSs on a single search results page; and that participants may display listings from each IDX feed on a single webpage or display.

8.      Zillow's platforms (Zillow and Trulia) are used by about 63.0% of real estate app users, followed by Realtor.com, with about a 20.2% share of users, and Redfin, with about a 13.4% share.

INSTRUCTION NO. 5 (page 3)

9.      In 1995, only 2% of home buyers used the internet to look for a home.   Since 2015, more than 92% of home buyers have used the internet to search for homes.   Today, more than 50% of homebuyers find the homes they ultimately purchase on the internet.

10.      Zillow has never charged listing sources for inclusion and display of their listings on its websites.

11.      Zillow earns revenue from a variety of sources, including through its Premier Agent and Premier Agent Flex programs.   Zillow's Premier Agent program offers advertising services, as well as marketing and technology products and services, to help real estate agents secure leads for potential buyers.   In most markets where Zillow operates the Premier Agent Flex program, Zillow provides leads to select buyer-side brokers or agents in exchange for 20% to 35% of a broker's or agent's commission if a transaction based on a lead that Zillow provided successfully closes.

12.      REX employed licensed brokers and real estate agents, both paid primarily on a salaried basis, in all the states where it operated.

13.      REX was a discount broker who offered consumers an opportunity to sell their homes without paying buyer-broker commissions.

14.      Zillow included listings that were not posted in an MLS on its listings aggregation platform.   Beginning in 2015, REX's homes for sale appeared on Zillow.

INSTRUCTION NO. 5 (page 4)

15.    REX provided its listings to Zillow via a broker feed, and Zillow included REX's listings on its platform.    REX also paid Zillow, at times, to participate in its Premier Agent program.

16.    Zillow knew that it could protect itself from losing listings data if it secured its listings through IDX feeds, but Zillow also knew that doing so would require submitting to IDX policies and rules.

17.    In September 2020, Zillow publicly announced its intention to form a brokerage and transition to IDX feeds.

18.    Prior to Zillow's public announcement in September 2020, Zillow redesigned its website. Zillow ultimately created a new display for listings search results that had two tabs— one labelled "Agent listings" and the other labelled "Other listings."    Zillow set the "Agent listings" tab as the default tab.    Zillow also decided to make this change throughout the United States to make a better customer experience.

19.    Zillow went live with its new display in early-January 2021.

20.    But for the individual MLSs' adoption of the no-commingling rule,    Zillow would not have implemented its new display or design.    Zillow chose the website design, including the labels and default, to be used nationwide.

INSTRUCTION NO. 5 (page 5)

21.     After implementing its new display, Zillow unsuccessfully petitioned NAR at least twice to replace Model Rule 18.3.11 with a mandatory rule that would require the local MLSs to permit MLS participants to commingle all listings from all sources.

INSTRUCTION NO. 6

<u>What is Not Evidence</u>

In reaching your verdict you may consider only the testimony and exhibits received into evidence.   Certain things are not evidence and you may not consider them in deciding what the facts are.   I will list them for you:

1.      Arguments and statements by lawyers are not evidence.   The lawyers are not witnesses.   What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.   If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Objections by lawyers are not evidence.   Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.   You should not be influenced by the objection or by the Court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.   In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you might have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

**SOURCE:   9th Cir. Model Instr. 1.10.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  7

<u>Direct and Circumstantial Evidence</u>

Evidence may be direct or circumstantial.   Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence.   The law makes no distinction between the weight to be given to either direct or circumstantial evidence.   It is for you to decide how much weight to give to any evidence.

**SOURCE:   9th Cir. Model Instr. 1.12.**

COURT'S JURY INSTRUCTIONS

01

INSTRUCTION NO. 8

02

<u>Credibility of Witnesses</u>

03

04

     In deciding the facts in this case, you might have to decide which testimony to believe

05

and which testimony not to believe.   You may believe everything a witness says, or part of it,

06

or none of it.

07

     In considering the testimony of any witness, you may take into account:

08

     1.     the opportunity and ability of the witness to see or hear or know the things

09

testified to;

10

     2.     the witness's memory;

11

     3.     the witness's manner while testifying;

12

     4.     the witness's interest in the outcome of the case and any bias or prejudice;

13

     5.     whether other evidence contradicted the witness's testimony;

14

     6.     the reasonableness of the witness's testimony in light of all the evidence; and

15

     7.     any other factors that bear on believability.

16

     These are some of the factors you may consider in deciding whether to believe

17

testimony.

18

     Sometimes a witness might say something that is not consistent with something else he

19

or she said.   Sometimes different witnesses will give different versions of what happened.

20

People often forget things or make mistakes in what they remember.   Also, two people might

21

22

01                     INSTRUCTION NO. 8 (page 2)

02

03    see the same event but remember it differently. You may consider these differences, but do not

04    decide that testimony is untrue just because it differs from other testimony.

05           If you decide, however, that a witness has deliberately testified untruthfully about

06    something important, you may choose not to believe anything that witness said.   On the other

07    hand, if you think the witness testified untruthfully about some things but told the truth about

08    others, you may accept the part you think is true and ignore the rest.

09           The weight of the evidence presented by each side does not necessarily depend on the

10    number of witnesses who testify.   What is important is how believable the witnesses were, and

11    how much weight you think their testimony deserves.

12

13

14

15

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 1.14.**

COURT'S JURY INSTRUCTIONS

01                        INSTRUCTION NO.  9

02                          <u>Opinion Evidence</u>

03

04        You have heard testimony from persons who, because of education or experience, are

05  permitted to state opinions and the reasons for their opinions.

06        Opinion testimony should be judged just like any other testimony.   You may accept it

07  or reject it, and give it as much weight as you think it deserves, considering the witness's

08  education and experience, the reasons given for the opinion, and all the other evidence in the

09  case.

10

11

12

13

14

15

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 2.13.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  10

<u>Charts and Summaries</u>

Certain charts and summaries not admitted into evidence might have been shown to you to help explain the contents of books, records, documents, or other evidence in the case. Other charts and summaries might have been received into evidence to illustrate information brought out during the trial.   Charts and summaries are only as good as the underlying evidence that supports them.   You should, therefore, give them only such weight as you think the underlying evidence deserves.

**SOURCE:   9th Cir. Model Instr. 2.14 & 2.15.**

01

INSTRUCTION NO. 11

02

<u>Notes</u>

03

04

Whether or not you took notes during the trial, you should rely on your own memory of

05

the evidence.   Notes are only to assist your memory.   You should not be overly influenced by

06

your notes or those of other jurors.

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 1.18.**

COURT'S JURY INSTRUCTIONS

01          INSTRUCTION NO.  12

02                 Corporate Parties

03

04

05          The fact that plaintiff and defendant are corporations should not affect your decision.

06   All parties are equal before the law, and a corporation is entitled to the same fair and

07   conscientious consideration by you as any other party.   A corporation can act only through its

08   employees and is responsible for the acts of its employees performed within the scope of their

09   authority.

10

11

12

13

14

15

16

17

18

19

20

21

22

**Source:   9th Cir. Model Instr. 4.1 & 4.2.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 13

<u>Summary of Claims</u>

Plaintiff REX – Real Estate Exchange, Inc. makes the following claims, on which it bears the burden of proof by a preponderance of the evidence:

(1)      Plaintiff claims that defendant made a false statement of fact in a commercial advertisement or promotion about plaintiff's services or commercial activities; and

(2)      Plaintiff claims that defendant violated the Washington Consumer Protection Act ("CPA").

Plaintiff brings these claims under federal and Washington law.

Defendant Zillow Group, Inc. denies plaintiff's claims and, further, denies the nature and extent of plaintiff's damages.   Defendant also asserts affirmative defenses.

The foregoing is merely a summary of the claims and defenses of the parties.   You are not to take the same as proof of the matter claimed unless admitted by the opposing party, and you are to consider only those matters that are admitted or established by the evidence.   These claims and defenses have been outlined solely to aid you in understanding the issues.

Plaintiff asserts two claims, and each claim is entitled to your separate consideration. You must decide as to each claim whether plaintiff is entitled to recover.   The fact that plaintiff is entitled to recover on one claim does not mean that plaintiff is entitled to recover on the other claim.   Similarly, the fact that plaintiff is not entitled to recover on one claim does not prevent plaintiff from recovering on the other claim.

**SOURCE:   9th Cir. Model Instr. 1.5 & 1.8.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO.  14

<u>First Claim</u>

<u>False Advertising</u>

Plaintiff brings its first claim for false advertising under a federal statute known as the Lanham Act.   To prevail on its false advertising claim under the Lanham Act, plaintiff must prove the following elements by a preponderance of the evidence:

1.      Defendant made a false statement of fact in a commercial advertisement or promotion about the plaintiff's services or commercial activities;

2.      The statement actually deceived or had the tendency to deceive a substantial segment of its audience;

3.      The deception was material, meaning that it was likely to influence a person's purchasing decision; and

4.      Plaintiff has been injured as a result of the statement.

If you find from your consideration of all of the evidence that any of the above elements has not been proved, then your verdict should be for defendant on plaintiff's first claim.   On the other hand, if you find that plaintiff has proved all of these elements, then your verdict should be for plaintiff on its first claim.

**SOURCES:   _E.g._, _Southland Sod Farms v. Stover Seed Co._, 108 F.3d 1134, 1139 (9th Cir. 1997); _see also_ 7th Cir. Pattern Instr. 13.3.1 (2021); _Blue Nile, Inc. v. Diascience Corp._, W.D. Wash. Case No. C07-2017 TSZ, Instr. No. 13 & 13A. (docket no. 183).**

01

INSTRUCTION NO. 14A

02

<u>First Claim</u>

03

<u>False Statement in a Commercial Advertisement or Promotion</u>

04

05

     A statement may be actionable under the Lanham Act because it is literally false on its

06

face or by necessary implication.   The Court has previously ruled that the tab labels "Agent

07

listings" and "Other listings" are literally false by necessary implication.

08

     A commercial advertisement or promotion is commercial speech that is made for the

09

purpose of influencing consumers to buy goods or services.   Speech that proposes a

10

commercial transaction and meets the following criteria is usually considered commercial

11

speech:   (a) the speech is contained within an advertisement; (b) the speech refers to a

12

particular product or service; and (c) the speaker has an economic motivation.

13

14

**SOURCES:   *E.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.**

15

**1997); *see* *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115–16 (9th Cir. 2021);**
**_see also_ Order at 15–20 (docket no. 465); *Blue Nile, Inc. v. Diascience Corp.*, W.D. Wash.**

16

**Case No. C07-2017 TSZ, Instr. No. 12. (docket no. 183).**

17

**NOTE:   The Court declines to add Zillow's proposed text:   "If you find that the tab**

18

**labels were made to explain a user tool, then you should find that the labels were not**
**made for the purpose of influencing consumers to buy defendant's goods or services."**

19

**Zillow's proposed instruction is not consistent with the Court's previous rulings.   *See***
**Minute Order at ¶ 1(a) (docket no. 458).   The proposed language is also not a correct**

20

**statement of the applicable law. Zillow's reliance on *Prager University v. Google LLC*,**
**951 F.3d 991 (9th Cir. 2020), and *Newman v. Google LLC*, No. 20-CV-4011, 2021 WL**

21

**2633423 (N.D. Cal. June 25, 2021), is misplaced.   In both cases, the plaintiffs sued**
**Google LLC, a subsidiary of which operates the online video hosting platform known as**

22

**YouTube.   *See* 951 F.3d at 995–96; 2021 WL 2633423, at *1.   YouTube renders certain**
**videos containing mature content unavailable if the user activates "Restricted Mode."**
**951 F.3d at 996.   The designation of a particular video or the reason why it is not**

01 available in "Restricted Mode" are <u>not</u>, however, made available to the public.   <u>Id.</u> at
1000; <u>Newman</u>, 2021 WL 2633423, at *11.   The only statement that the public sees in
02 connection with a video tagged (automatically by an algorithm) or flagged (by the
combination of a YouTube user and the company's human reviewers) as adult-only
03 material is as follows:   "This video is unavailable with Restricted Mode enabled.   To
view this video, you will need to disable Restricted Mode."   2021 WL 2633423, at *2 &
04 *11; <u>see</u> 951 F.3d at 1000.   Such notice does not make any specific, let alone false or
misleading, representation about the nature of the videos at issue.   Zillow has attempted
05 to analogize the YouTube "Restricted Mode" notice to the two-tab display at issue,
arguing that the tab labels merely describe a user tool and are not designed to influence
06 consumers.   Zillow's assertions ignore both the nature of the tabs at issue and the
purpose for which they were created.   Unlike YouTube's notice, which does not in any
07 way characterize unavailable videos, the tab labels on Zillow's websites and Apps offer
incomplete and therefore misleading summaries about the listings grouped under each
08 tab.   When viewed together, the labels indicate that certain listings, which are shown by
default in connection with the "Agent listings" tab, are offered through an agent, and
09 that items in the "Other listings" tab are homes being sold by someone other than an
agent.   Moreover, the reason why the tabs were required was to influence consumers;
10 the goal of the "no commingling" rule, and therefore of the tabs used to effectuate or
comply with the rule, is to force potential home buyers to prioritize MLS listings over,
11 and perhaps ignore, non-MLS listings.   Thus, the tab labels are not, as Zillow contends,
similar to YouTube's "Restricted Mode" notice, and they are not merely "language
12 explaining a tool that helps users navigate [Zillow's] website."   <u>See</u> Defs.' Mot. at 18
(docket no. 339).
13

14

15

16

17

18

19

20

21

22

01 INSTRUCTION NO. 14B

02 First Claim

03 Deception

04

05      Because the Court has concluded that the tab labels are literally false by necessary

06 implication, plaintiff is entitled to a presumption that the tab labels actually deceived or had a

07 tendency to deceive a substantial segment of their audience.   Defendant bears the burden of

08 rebutting this presumption by presenting evidence that the tab labels did not actually deceive

09 and did not have a tendency to deceive a substantial segment of their audience.   If you find

10 that defendant has presented such evidence, then the presumption has been rebutted, and you

11 must decide whether plaintiff has shown by a preponderance of the evidence that the tab labels

12 actually deceived or had a tendency to deceive a substantial segment of their audience.   On the

13 other hand, if you find that the presumption has not been rebutted, then you must find that the

14 second element of plaintiff's first claim for false advertising has been proved.

15

16 **SOURCES:   *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir. 1986)**

17 **("He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded."); *POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-2633, 2008 WL 4222045, at \*11 (C.D. Cal. July 17, 2008).**

18

19 **NOTE:   The Court is not persuaded that plaintiff is entitled to a presumption of materiality (the third element of its first claim).   Deception, as to which an evidentiary**

20 **presumption arises from literal falsity, *see U-Haul*, 793 F.2d at 1040–41; *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1166 (W.D. Wash. 2010), is different from**

21 **materiality.   A literally false statement may be deceptive without being material.   The Court acknowledges that *U-Haul*, *National Products*, and other (non-binding) authorities**

22 **cited by plaintiff discuss a presumption of reliance, which flows from a finding of literal falsity, but those cases involved false comparative advertising, which is not at issue here. The Court is satisfied that plaintiff should bear the burden of proving that the tab labels were likely to influence a purchasing decision.**

COURT'S JURY INSTRUCTIONS

01

INSTRUCTION NO. 14C

02

First Claim

03

Injury

04

05

  Plaintiff bears the burden of proving, by a preponderance of the evidence, that (1) it

06

suffered injury, and (2) the tab labels at issue were a proximate cause of any such injury.

07

Plaintiff need not, however, establish that the tab labels were the sole cause of its injury.

08

09

10

11

12

13

14

15

16

**SOURCES: 15 U.S.C. § 1125(a)(1) ("Any person who . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act"); _see also_ 7th Cir. Pattern Instr. 13.3.1 (2021); _Blue Nile, Inc. v. Diascience Corp._, W.D. Wash. Case No. C07-2017 TSZ, Instr. No. 13 at ¶ 5. (docket no. 183); _cf._ WPI 15.01, 15.01.01, and 15.02 (defining proximate cause).**

17

18

19

**NOTE: The Court has not included "likely injury." If "likely injury" were included in this instruction, then the damages instruction would need to be modified to indicate that, if the jury finds only "likely injury," it may not award damages. In addition, the jury would need to be instructed on unanimity and would be required to indicate on the verdict form the basis of liability (injury or likely injury). Finally, the "likely injury" theory seems inconsistent with the facts of this matter and unnecessary; if plaintiff prevails on its actual injury theory, then it will be entitled to injunctive relief if it can meet the other applicable standards for such remedy.**

20

21

22

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 14D

<u>First Claim</u>

<u>Causation</u>


For purposes of plaintiff's first claim for false advertising, injury or damages are proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damages, and that the injury or damages were either a direct result or a reasonably probable consequence of the act or omission.

There may be more than one proximate cause of injury or damages.

**SOURCES:** *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, **627 F. Supp. 2d 384, 486 (D.N.J. 2009);** *see also Seven-Up Co. v. Coca-Cola Co.*, **86 F.3d 1379, 1387 n.12 (5th Cir. 1996).**

INSTRUCTION NO.  15

<u>Second Claim</u>

<u>Violation of the Washington Consumer Protection Act ("CPA")</u>

Plaintiff claims that defendant has violated the Washington Consumer Protection Act. To prove this claim, plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    That defendant engaged in an unfair or deceptive act or practice;

2.    That the act or practice occurred in the conduct of defendant's trade or commerce;

3.    That the act or practice affects the public interest;

4.    That plaintiff was injured in either its business or its property; and

5.    That defendant's act or practice was a proximate cause of plaintiff's injury.

If you find from your consideration of all of the evidence that any of the above elements has not been proved, then your verdict should be for defendant on plaintiff's second claim. On the other hand, if you find that plaintiff has proved all of these elements, then you must consider defendant's affirmative defense.   To prevail on its affirmative defense, defendant must prove by a preponderance of the evidence that defendant's act or practice was reasonable in relation to the development and preservation of its business.

INSTRUCTION NO. 15 (page 2)

If you find from your consideration of all of the evidence that defendant has proved its affirmative defense, then your verdict should be for defendant on plaintiff's second claim.   On the other hand, if you find that defendant has not proved its affirmative defense, then your verdict should be for plaintiff on its second claim.

**SOURCE:   WPI 310.01; WPI 310.02; _see_ _Travis v. Wash. Horse Breeders Ass'n, Inc._, 111 Wn.2d 396, 408–09, 759 P.2d 418 (1988).**

**NOTE 1:   The Court has not included the second, alternative prong of the affirmative defense, which would permit defendant to avoid liability by proving that its act or practice was "not injurious to the public interest."   WPI 310.02.   Plaintiff is required to prove that defendant's act or practice affects the public interest, and defendant has not identified any evidence to prove that an act or practice affecting the public interest is not injurious to the public interest.**

**NOTE 2:   The Court declines Zillow's request not to assign a burden of proof to the reasonableness defense.   Zillow asks that this instruction be amended to read:**

> **On the other hand, if you find that plaintiff has proved all of these elements, then you must consider whether defendant's act or practice was reasonable in relation to the development and preservation of its business.   If you find from your consideration of all of the evidence that defendant's conduct was reasonable, then your verdict should be for defendant on plaintiff's second claim.   On the other hand, if you find that defendant's conduct was not reasonable, then your verdict should be for plaintiff on its second claim.**

**Def.'s Supp. Br. at 5 (docket no. 514).   In _Travis_, the Washington Supreme Court concluded that the trial court erred in failing to give the following instruction:**

> **The Consumer Protection Act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest.**

**111 Wn.2d at 408–09.   Nothing in _Travis_ (or any other Washington case) suggests that a CPA plaintiff bears the burden of disproving the reasonableness of the challenged act or practice.   A CPA plaintiff must prove only the five elements articulated in _Hangman_**

01   ___*Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*___, **105 Wn.2d 778, 785-93, 719
02   **P.2d 531 (1986), as outlined in this instruction, which is based on WPI 310.01.   Zillow's
     proposed instruction implicitly places on REX the burden of disproving reasonableness
03   and is therefore improper.   The Court concludes that not specifying which party bears
     the burden of proof would be confusing to the jury and that placing the burden of proof
04   on Zillow is appropriate.   _See_ WPI 310.02 Comment ("Absent a burden of proof, jurors
     may find it difficult to fit the [reasonableness defense] instruction into the framework of
05   the plaintiff's required elements.").**

06   **NOTE 3:   Contrary to REX's contention, the Court concludes that Zillow has proffered
     sufficient evidence to warrant an instruction on the reasonableness defense.   Because the
07   instruction places the burden of proof on Zillow, REX's proposed language concerning
     the required liberal construction of the CPA is unnecessary.**

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

INSTRUCTION NO. 15A

<u>Second Claim</u>

<u>Unfair or Deceptive Act or Practice</u>

A.  <u>Unfair Act or Practice</u>

In order to prove that defendant engaged in an *unfair* act or practice, plaintiff must show that the act or practice caused or was likely to cause substantial injury to consumers, competitors, or other businesses, which they could not reasonably avoid and which is not outweighed by countervailing benefits to consumers or to competition.   An act or practice can be unfair without being deceptive.

B.  Deceptive Act or Practice

In order to prove that defendant engaged in a *deceptive* act or practice, plaintiff must show that the act or practice had the capacity to deceive a substantial portion of the public. Plaintiff does not need to show that the act or practice was intended to deceive.

**SOURCE:   WPI 310.08 (modified); <u>*see* *Klem v. Wash. Mut. Bank*</u>, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013); <u>*Rush v. Blackburn*</u>, 190 Wn. App. 945, 961–63, 361 P.3d 217 (2015); <u>*see also*</u> 15 U.S.C. § 45(n) (cited in <u>*Klem*</u>, 176 Wn.2d at 787).**

01          INSTRUCTION NO. 15B

02              Second Claim

03             Trade or Commerce

04

05       The phrase "trade or commerce" includes the sale of assets or services, and any

06 commerce directly or indirectly affecting the people of the State of Washington.   The word

07 "assets" includes anything of value.

08

09

10

11

12

13

14

15

16

17

18

19

20

21 **SOURCE:   WPI 310.09**

22 **NOTE:   "If there is no material dispute of fact regarding the "trade or commerce"
element, the parties should stipulate that the element is met or the judge should so rule,
and this instruction should not be given."   WPI 310.09.**

INSTRUCTION NO. 15C

<u>Second Claim</u>

<u>Public Interest</u>

An act or practice "affects the public interest" if the act or practice:

1.   injured other persons; or

2.   had the capacity to injure other persons; or

3.   has the capacity to injure other persons.

**SOURCE:   WPI 310.04.**

**NOTE:   The Court declines to add the following language proposed by Zillow:   "In establishing injury to other persons, plaintiff must show there is a likelihood that these persons were injured in exactly the same fashion as the plaintiff."   The district court cases on which Zillow relies do not involve jury instructions, but rather whether the plaintiffs in those matters adequately pleaded their CPA claims.   _See_ _Zunum Aero, Inc. v. Boeing Co._, No. C21-896, 2011 WL 2116678, at \*11–13 (W.D. Wash. June 13, 2022); _Stiegler v. Saldat_, No. C14-1309, 2015 WL 13686087, at \*2–3 (W.D. Wash. Oct. 23, 2015). Moreover, in both _Zunum_ and _Stiegler_, as well as the Washington Court of Appeals decision cited by Zillow, namely _Behnke v. Ahrens_, 172 Wn. App. 281, 294 P.3d 729 (2012), the transactions at issue were private disputes, as to which a higher showing must be made to establish a public interest.   _Zunum_, 2022 WL 2116678, at \*13; _Stiegler_, 2015 WL 13686087, at \*2–3; _see also_ _Behnke_, 172 Wn. App. at 293 ("Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest.   This is often the case with legal services, which are not within trade or commerce except as they relate to the entrepreneurial aspects of the practice of law.   It is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." (citations omitted)).**

INSTRUCTION NO. 15D

<u>Second Claim</u>

<u>Injury</u>

For purposes of its CPA claim, plaintiff has suffered an "injury" if its business or property has been injured to any degree.   With respect to its second claim, plaintiff has the burden of proving that it has been injured, but no monetary amount need be proven and proof of any injury is sufficient, even if expenses or losses caused by the CPA violation are minimal.

**SOURCE:   WPI 310.06.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 15E

<u>Second Claim</u>

<u>Causation</u>

Plaintiff has the burden of proving that defendant's unfair or deceptive act or practice was a proximate cause of plaintiff's injury. A cause of injury or damages is a proximate cause if it is related to the injury or damages in two ways: (1) the cause produced the injury or damages in a direct sequence, and (2) the injury or damages would not have happened in the absence of the cause.

There may be more than one proximate cause of injury or damages.

**SOURCE:   WPI 310.07; WPI 15.01.01; _see also Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc._, 162 Wn.2d 59, 83, 170 P.3d 10 (2007) ("We hold that the proximate cause standard embodied in WPI 15.01 is required to establish the causation element in a CPA claim.").**

**NOTE 1:   The Court declines Zillow's request to instruct on superseding cause.   Zillow has requested that the first prong of the proximate cause definition be amended to read: "the cause produced the injury or damages in a direct sequence _unbroken by any new independent cause_."   The italicized portion is not an accurate statement of the law. WPI 15.01.01 includes the following optional language after the words "direct sequence": "unbroken by any superseding cause."   Superseding cause is defined as the "_sole_ proximate cause" that was a "_later_ independent intervening" cause that the defendant, "in the exercise of ordinary care, could not reasonably have anticipated."   WPI 15.05 (emphasis added).   The evidence in this matter does not support a superseding cause instruction.   Zillow does not contend that an event occurring _after_ the implementation of the two-tab display was the _sole_ proximate cause of REX's injury or that any such event could not have been reasonably anticipated.**

**NOTE 2:   The Court removed the "substantial factor" language from an earlier version of this instruction because it is not the appropriate standard under the CPA.   WPI 15.02**

01  sets forth the following test:   "The term 'proximate cause' means a cause that was a
    substantial factor in bringing about the [injury] [event] even if the result would have
02  occurred without it."   This instruction would be improper in this case because it would
    allow the jury to find for REX even if its injury (*i.e.*, lost profits or business failure)
03  would have occurred even if Zillow had not implemented the two-tab display.   The CPA
    does not contemplate such result.   This case is not similar to discrimination matters, in
04  which liability arises when race, gender, disability, etc. is a motivating or substantial
    factor (as opposed to a determining factor) for an adverse employment action.   *See Robel*
05  *v. Roundup Corp.*, 148 Wn. 2d 35, 46, 59 P.3d 611 (2002); *Mackay v. Acorn Custom*
    *Cabinetry, Inc.*, 127 Wn.2d 302, 898 P.2d 284 (1995).   An employer that contends it
06  would have made the same adverse employment decision even if race, gender, disability,
    etc. had not been considered, bears the burden of proving such defense.   *See* WPI 330.04
07  (bona fide occupational qualification); WPI 330.81.02 (after-acquired evidence).   In
    addition, this case is not like the toxic-tort scenario, in which the conduct of multiple
08  defendants "is so related to an event that their combined conduct, viewed as a whole, is a
    but-for cause of the event," but strict application of the "but for" rule would absolve all
09  of them.   *See Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 30, 935 P.2d 684
10  (1997); *see also Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 91, 896 P.2d 682 (1995)
    ("[P]laintiffs' burden was, as the trial court ruled, to prove that a portion of a particular
11  application [of pesticides] 'was . . . part of a cloud that then was the proximate cause of
    damage.'   Thus, Instruction No. 5 correctly stated that plaintiffs had to prove that a
12  particular defendant applied the pesticides at issue, a portion of an application drifted
    and entered Badger Canyon and 'the off target drift *of the pesticides* was a proximate
13  cause of damage to an individual . . . plaintiff's property or crops within a particular
    year.'" (emphasis in original, citation omitted)).   In contrast to the toxic-tort context, in
14  this case, the other potential causes of REX's injury (*e.g.*, COVID, inventory shortages,
    increased interest rates, increased competition, overexpansion, SPAC-market crashes)
15  are not the types of events that are so intertwined with Zillow's implementation of the
    two-tab display that Zillow should be held liable if one of those other events was a "but
16  for" cause of REX's business failure.   REX cites no case involving a CPA claim in which
17  a jury was instructed using the "substantial factor" standard.

18  NOTE 3:   REX proposes the following additional instruction:

19
        If you find Zillow's two-tab display was a proximate cause of REX's injury,
20      it is not a defense that other events, actions or inactions may also have been
        a proximate cause.

21
The Court's instruction indicates:
22
        There may be more than one proximate cause of injury or damages.

COURT'S JURY INSTRUCTIONS

The Court declines to include the language requested by REX because it is duplicative and unnecessary.   This case is not like *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 667 P.2d 78 (1983), on which REX relies.   In *Brashear*, the plaintiff was injured when he was electrically shocked and fell from a utility pole owned by the defendant.   The alleged causes of the plaintiff's injuries were (1) the plaintiff's own contributory negligence in (a) failing to use proper safety equipment, (b) failing to test the pole's street lamp with a voltage meter, and (c) making simultaneous contact with a possible voltage source and a ground; (2) the negligence of the plaintiff's employer; and (3) the defendant's negligence in (a) failing to equip the street lamp with guards that would prevent the entry of birds, (b) failing to inspect with sufficient frequency to discover a nest in the lamp, (c) failing to ground the lamp case to prevent the type of voltage differential at issue, and (d) failing to warn the public about the danger at issue. The Supreme Court held that, "[u]nder the circumstances of this case," the trial court erred in refusing to give the plaintiff's proposed instruction, which read:

> There may be more than one proximate cause of the same occurrence.   If you find that the defendant was negligent and such negligence was a proximate cause of the injury or damage to the plaintiff, it is not a defense that some other cause or the act of some other person or company who is not a party to this lawsuit may also have been a proximate cause.

> However, if you find that the sole proximate cause of injury or damage to the plaintiff was some other cause or the act of some other person or company who is not a party to this lawsuit then your verdict should be for the defendant.

100 Wn.2d at 207.   The *Brashear* Court reasoned that "the failure to give this instruction, *given the complexity of the proximate cause issue*, caused confusion." *Id.* at 207–08 (emphasis added).   Unlike *Brashear*, this case does not involve multiple factual bases of liability or negligence, an assertion of contributory negligence or comparative fault, or an allegation that a non-party proximately caused the injury.   The other case cited by REX, *Jones v. Robert E. Bayley Constr. Co.*, 36 Wn. App. 357, 674 P.2d 679 (1984), *overruled on other grounds by* Brown v. Prime Constr. Co., 102 Wn.2d 235, 684 P.2d 73 (1984), is also distinguishable.   As explained in *Jones*, the additional instruction proposed by REX is appropriate when needed to inform the jury "that the act of *another person* does not excuse the defendant's negligence unless the *other party's* negligence was the sole proximate cause of the plaintiff's injuries." *Id.* at 362 (emphasis added).   No allegation is made that REX's injury or business failure was caused by a person or entity other than Zillow.   Rather, in its defense, Zillow contends that REX faced difficult market conditions.

INSTRUCTION NO. 16

<u>Measure of Damages</u>

It is the duty of the Court to instruct you about the measure of damages.   By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.   If your verdict is for plaintiff on one or both of its claims, you must determine plaintiff's damages.   Plaintiff has the burden of proving damages by a preponderance of the evidence.   Damages means the amount of money that will reasonably and fairly compensate plaintiff for any injury you find was proximately caused by defendant.   It is for you to determine, based upon the evidence, what damages, if any, have been proved.   Your award of damages must be based upon evidence and not upon speculation, guess, or conjecture.

If your verdict is for plaintiff on either its first claim for false advertising in violation of the Lanham Act or its second claim for violation of the CPA or both, you may award actual damages proximately caused by the false advertising and/or the violation of the CPA.   Actual damages may consist of **<u>either</u>** (i) any lost profits that plaintiff would have earned but for defendant's false advertising and/or violation of the CPA, **<u>or</u>** (ii) the amount, if any, of plaintiff's enterprise value, if you find that the false advertising and/or violation of the CPA proximately caused plaintiff to go out of business, with all of you agreeing on either (i) or (ii). Profit is determined by deducting all expenses from gross revenue.   Enterprise value is a company's total worth, and it may be calculated in different ways.   It is for you to determine

INSTRUCTION NO. 16 (page 2)

whether the method used by plaintiff to measure its enterprise value is valid, and what amount

of enterprise value, if any, plaintiff has proved.

**SOURCE:   9th Cir. Model Instr. 5.1, 5.2, 5.6, 15.27, & 15.29; RCW 19.86.090; _Lexmark Int'l, Inc. v. Static Control Components, Inc._, 572 U.S. 118, 133–34 (2014) ("a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses").**

**NOTE:   The Court declines to give a nominal damages instruction as requested by Zillow.   Zillow has not made the requisite showing that REX should be judicially estopped from electing not to pursue nominal damages.   _See Hamilton v. State Farm Fire & Cas. Co._, 270 F.3d 778, 782–83 (9th Cir. 2001) (outlining the three factors to be considered in determining whether to apply the doctrine of judicial estoppel).   The Court concludes that, in suggesting in response to Zillow's motion for summary judgment that it would be entitled to nominal damages under the Lanham Act, REX did not take a position that is "clearly inconsistent" with its current position that it waives nominal damages.   In addition, the Court considered nominal damages merely as an alternative basis for denying Zillow's motion for summary judgment; the Court would have reached the same decision based solely on REX's expert's opinion regarding the present value of REX's future lost profits as a measure of damages under the Lanham Act, which presented a triable issue of fact.   _See_ Minute Order at ¶ 1(a) (docket no. 458).**

INSTRUCTION NO. 16A

<u>Mitigation</u>

Plaintiff had a duty to use reasonable efforts to mitigate damages.    To mitigate means to avoid or reduce damages.

Defendant has the burden of proving by a preponderance of the evidence:

1.    Plaintiff failed to use reasonable efforts to mitigate damages; and

2.    The amount by which damages would have been mitigated.

**SOURCE:    9th Cir. Model Instr. 5.3.**

INSTRUCTION NO. 16B

<u>Duplication of Damages</u>

Plaintiff seeks recovery against defendant on more than one claim.   If you find that plaintiff is entitled to recover on more than one claim, you should indicate the measure of damages for each claim.   Your separate awards of damages could result in a duplication of damages.   You should not concern yourselves with this issue.   The Court will correct for any duplication of damages you might award so that plaintiff under no circumstances would collect a double recovery.

01                          INSTRUCTION NO. 17

02                              <u>Deliberation</u>

03

04       Upon retiring to the jury room for your deliberation of this case, your first duty is to

05   select a presiding juror to act as chairperson.   It is his or her duty to see that discussion is

06   carried on in a sensible and orderly fashion, that the issues submitted for your decision are

07   fully and fairly discussed, and that every juror has a chance to express himself or herself and

08   participate in the deliberations upon each question before the jury.

09

10       You will be furnished with all the exhibits, these instructions and a suitable form of

11   verdict.

12       This being a civil case, all of you must agree upon a verdict.   When you have so

13   agreed, fill in the proper form of verdict to express the results of your determination.   The

14   presiding juror will sign and date it and announce your agreement to the clerk who will

15   conduct you into court to declare your verdict.

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 3.1.**

01        INSTRUCTION NO. 18

02        <u>Reaching Agreement</u>

03

04

05        Each of you must decide the case for yourself, but you should do so only after

06 considering all the evidence, discussing it fully with the other jurors, and listening to the views

07 of the other jurors.

08        Do not be afraid to change your opinion if you think you are wrong.   But do not come

09 to a decision simply because other jurors think it is right.

10        It is important that you attempt to return a verdict but, of course, only if each of you can

11 do so after having made his or her own conscientious determination.   Do not surrender an

12 honest conviction as to the weight and effect of the evidence simply to reach a verdict.

13        Your verdict must be based solely on the evidence and on the law as I have given it to

14 you in these Instructions.

15

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 3.1.**

COURT'S JURY INSTRUCTIONS

INSTRUCTION NO. 19

<u>Communication with Court</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by your presiding juror or by one or more members of the jury.   No member of the jury should ever attempt to communicate with me except by a signed writing.   I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.   Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

If you send a note to me, there will be some delay in my response because I will discuss the note with the lawyers before preparing a response.   You may continue your deliberations while waiting for the answer to any question.

**SOURCE:   9th Cir. Model Instr. 3.3.**

COURT'S JURY INSTRUCTIONS

01

INSTRUCTION NO. 20

02

<u>Verdict</u>

03

04

     After you have reached unanimous agreement on a verdict, your presiding juror will fill

05

in, date, and sign the verdict form and advise the court that you have reached a verdict.

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

**SOURCE:   9th Cir. Model Instr. 3.5.**

COURT'S JURY INSTRUCTIONS