The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., | Case No. 2:21-cv-00312-TSZ |
| Plaintiff, | **PLAINTIFF REX'S MOTION FOR A NEW TRIAL** |
| v. | |
| ZILLOW, INC., et al. | NOTE ON MOTION CALENDAR: November 17, 2023 |
| Defendants. | |

Plaintiff Rex's Motion For a New Trial
Case No. 2:21-cv-00312-TSZ

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. Introduction ............................................................................................................. 1

II. Standard of Review ................................................................................................. 1

    A. The Court Gave An Erroneous Jury Instruction Regarding Zillow's Affirmative Defense ................................................................................. 1

    B. The Court Should Not Have Given the Reasonable Defense Instruction ................................................................................................. 3

    C. The Court Should At Least Have Given a Clarifying Instruction ....... 5

    D. The Court Erroneously Limited Testimony Regarding Residential Real Estate Commission Rates ............................................................. 5

    E. The Court Erroneously Limited REX's Rebuttal Case ........................ 7

        1. Exclusion of Rebuttal Testimony Relating to Zillow Affirmative Defense was Improper .......................................... 8

        2. Exclusion of Other Expert Rebuttal Testimony was Improper .................................................................................. 11

III. Conclusion ............................................................................................................ 12

CERTIFICATE OF SERVICE ............................................................................................. 13

PLAINTIFF REX'S MOTION FOR A NEW TRIAL      i      BOIES SCHILLER FLEXNER LLP
Case No. 2:21-cv-00312-TSZ                                         401 E. Las Olas Blvd, Suite 1200
                                                                                               Fort Lauderdale, FL 33301
                                                                                               (954) 540-6219

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Benedict v. U.S.*,
  822 F.2d 1426 (6th Cir. 1987)..................................................................................8, 9

*Berg for C.K.M. v. Bethel School Dist.*,
  No. 3:18-cv-5345, 2022 WL 796315 (W.D. Wash. Mar. 16, 2022) ...............................2

*Boston Ins. Co. v. Jensen*,
  259 F.2d 482 (9th Cir. 1958).........................................................................................1

*Brown v. Transworld Systems Inc.*,
  646 F.Supp.3d 1328 (W.D. Wash. 2022) ......................................................................4

*Corbin v. Norfolk & W. Ry. Co.*,
  856 F.2d 193 (6th Cir. 1988).........................................................................................9

*Crowley v. Epicept Corp.*,
  883 F.3d 739 (9th Cir. 2018).........................................................................................2

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
  66 F.3d 604 (3d Cir. 1995).....................................................................................11, 12

*Dwyer v. J.I. Kislak Mortg. Corp.*,
  103 Wash.App. 542 (2000) ...........................................................................................4

*Galdamez v. Potter*,
  415 F.3d 1015 (9th Cir.2005)........................................................................................1

*Gen. Signal Corp. v. MCI Telecomm. Corp.*,
  66 F.3d 1500 (9th Cir. 1995).......................................................................................11

*Hamilton v. Union Oil Co. of California*,
  944 F.2d 908 (9th Cir. 1991).........................................................................................4

*Harris v. Chand*,
  506 F.3d 1135 (8th Cir. 2007).....................................................................................11

*Hendrix, LLC v. Hendrixlicensing.com Ltd.*,
  762 F.3d 829 (9th Cir. 2014).........................................................................................1

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997).......................................................................................5

*Life Plus Intern. v. Brown*,
  317 F.3d 799 (8th Cir. 2003).......................................................................................11

*Martin v. Weaver*,
    666 F.2d 1013 (6th Cir. 1981) ................................................................................9

*Murphy v. City of Long Beach*,
    914 F.2d 183 (9th Cir. 1990) ..................................................................................1

*Ramirez v. ITW Food Equip. Group, LLC*,
    686 Fed. Appx. 435 (9th Cir. 2017) .......................................................................9

*Sethy v. Alameda County Water Dist.*,
    545 F.2d 1157 (9th Cir. 1976) ................................................................................1

*State v. Black*,
    100 Wash.2d 793 (1984) ........................................................................................5

*Stephens v. Omni Ins. Co.*,
    138 Wash.App 151 (2007) .....................................................................................5

*Thorstenson v. Department of Labor*,
    No. 22-70020, 2023 WL 2523831 (9th Cir. Mar. 15, 2023) .................................5

*Toth v. Grand Trunk R.R.*,
    306 F.3d 335 (6th Cir. 2002) ..................................................................................8

*Vogt v. Seattle-First Nat. Bank*,
    117 Wash.2d 541 (1991) ........................................................................................4

*Wilkerson v. Wheeler*,
    772 F.3d 834 (9th Cir. 2014) ..................................................................................1

**<u>Statutes</u>**

RCW 19.86.920 ............................................................................................................2, 4

## I. Introduction

REX seeks a new trial because this Court gave an improper and case dispositive affirmative defense instruction on REX's claim under the Washington Consumer Protection Act. As a result, Zillow was able to improperly escape liability for knowingly creating a deceptive and unfair web site by simply convincing the jury that it benefitted from doing so. Separately, REX seeks a new trial because the Court erroneously prohibited REX from presenting expert and other testimony that would have rebutted Zillow's affirmative defense and also made other erroneous evidentiary rulings that prejudiced REX.

## II. Standard of Review

A district court can grant a new trial for any reason necessary to prevent a miscarriage of justice. *Hendrix, LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). Its decision will be reviewed only for abuse of discretion. *See Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990).

A new trial is warranted where the Court has erroneously instructed the jury and the objecting party likely was prejudiced. *Galdamez v. Potter*, 415 F.3d 1015, 1025 (9th Cir.2005). If an erroneous instruction is given in a civil case, the burden is on the prevailing party to demonstrate the error was harmless. *Id*. The Ninth Circuit reviews a trial court's formulation of a jury instruction for abuse of discretion, it reviews *de novo* whether the challenged instruction correctly stated the law. *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). A new trial is also warranted where erroneous evidentiary rulings prejudiced the objecting party. *See Boston Ins. Co. v. Jensen*, 259 F.2d 482 (9th Cir. 1958); *Sethy v. Alameda County Water Dist.*, 545 F.2d 1157 (9th Cir. 1976).

### A. The Court Gave An Erroneous Jury Instruction Regarding Zillow's Affirmative Defense

On September 15, 2023, the Court distributed proposed jury instructions. Proposed Instruction 15, which addressed REX's WCPA claim included the following language:

> To prevail on its affirmative defense, defendant must prove by a preponderance of the evidence that defendant's act or practice was reasonable in relation to the development and preservation of its business. If you find from your consideration of all of the evidence that defendant has proved its affirmative defense, then your verdict should be for defendant on plaintiff's second claim.

(the "Reasonableness Affirmative Defense Instruction").

REX objected that there "is no evidence or claim in this case that would support the proposed" instruction. Dkt. 516 at 5. REX explained that the instruction suggested that Zillow could justify its decision to implement its deceptive web site by pointing to its decision to transition to IDX feeds for listings, when the specific conduct at issue was deployment of the deceptive web site itself and Zillow presented *no* evidence that obtaining listings through IDX feeds required implementation of a web site that deceived or otherwise was unfair to consumers. *Id.* REX also requested that if the Court included the Reasonableness Affirmative Defense Instruction, "it would be essential to clarify that what must be reasonable is the challenged conduct itself," meaning the deceptive and unfair web site. Dkt. 516 at 6. At the charging conference, REX renewed these objections, arguing that "the law is clear that what has to be reasonable is the act complained of, not the reason that they did it in terms of getting something from somebody else." Trial Tr. 203:24–04:4, 205:6–9 (Sept. 27, 2023). REX also contended that the Court should instruct the jury that the affirmative defense should be considered with caution because the WCPA must be liberally construed consistent with its remedial purpose to protect the public from unfair and deceptive business practices. RCW 19.86.920.

The Court rejected REX's arguments. Dkt. 535 at 27–28. This was error, and grounds for a new trial. *Berg for C.K.M. v. Bethel School Dist.*, No. 3:18-cv-5345, 2022 WL 796315, at *2 (W.D. Wash. Mar. 16, 2022) ("Recognized grounds for a new trial also include claims that the court gave erroneous jury instructions or failed to give adequate instructions." (citing *Crowley v. Epicept Corp.*, 883 F.3d 739, 747–48 (9th Cir. 2018)).

PLAINTIFF REX'S MOTION FOR A NEW TRIAL  
Case No. 2:21-cv-00312-TSZ

2

BOIES SCHILLER FLEXNER LLP  
401 E. Las Olas Blvd, Suite 1200  
Fort Lauderdale, FL 33301  
(954) 540-6219

There is no question that this error was outcome determinative: The jury found that REX had met all the elements to establish a claim under the WCPA but then found for Zillow on the Reasonableness Affirmative Defense Instruction, negating its finding of liability.

**B.     The Court Should Not Have Given the Reasonable Defense Instruction**

Zillow never argued that its display change, as opposed to its decision to seek IDX feeds, was "reasonable in relation to the development and preservation of its business." Indeed, Zillow maintained that while it had to comply with the Segregation Rule to obtain IDX feeds, the manner in which it complied was entirely the product of Zillow's independent judgment. Thus, Zillow was not entitled to the benefit of the Reasonableness Affirmative Defense. Importantly, Errol Samuelson, senior Zillow executive and its Chief Industry Development Officer, admitted that obtaining IDX feeds could not possibly justify Zillow's adoption of a deceptive and unfair web site:

> Q. But what I'm now asking you is, you accept, you understand, you agree, that nothing about getting the IDX feed, would justify Zillow making false statements or misleading consumers. You would agree with that, wouldn't you?
>
> A. It's a hypothetical question you are asking me. But we would not -- getting IDX feeds would not justify us misleading consumers.

Sept. 26 2023, Trial Tr. at 53:11-17.

In closing argument Zillow's counsel argued exclusively that joining the MLSs and accessing IDX feeds required a "trade-off"—complying with "the no-commingling rule"—and that "the benefits of IDX feeds exceeded the trade-offs associated by these MLS no-commingling rules." Sept. 28, 2023 Trial Tr. 66:19–21, 67:5–7. He said nothing to justify the deceptive and unfair web site itself. In sum and substance, Zillow's contention was that it could change its display in any manner it saw fit, even if it was deceptive and otherwise harmed consumers, so long as Zillow obtained the benefit it was seeking—access

to IDX feeds. That cannot be the law. Otherwise, the ends would always justify the means. Nor can Zillow's position be reconciled with the purpose underlying the WCPA, which "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." *Vogt v. Seattle-First Nat. Bank*, 117 Wash.2d 541, 547 (1991) (en banc) (quoting RCW 19.86.920).

*Hamilton v. Union Oil Co. of California* illustrates why the Court's instruction was error. 944 F.2d 908 (9th Cir. 1991) (unpublished). In *Hamilton*, the defendant was required by law to replace the leaded fuel it sent dealers with unleaded fuel. *Id.* at *3. The defendant did so in a manner that misled the dealers (and by extension, the public) as to whether they were receiving leaded or unleaded fuel. *Id.* at *3. The Ninth Circuit affirmed the district court's grant of summary judgment to plaintiffs on defendant's reasonableness defense because "even though the substitution of leaded fuel was legally required, Unocal was not required to deceive the dealers and the public." *Id.* at *3. Here, Zillow should not have been able to invoke the reasonableness defense because the contractual requirement to segregate listings did not require it to do so in a deceptive and unfair manner. Pursuing a reasonable business objective in an unfair or deceptive matter precludes application of the reasonableness defense, especially, where, as is the case here, what is allegedly reasonable is not the challenged conduct. *See, e.g.*, *Brown v. Transworld Systems Inc.*, 646 F.Supp.3d 1328 (W.D. Wash. 2022) (defendant was entitled to file debt collection actions, but where it engaged in deceptive conduct, defendant could not assert a reasonableness defense based on assertion that it "merely was representing its clients" and was "motivated by legitimate business concerns"); *Dwyer v. J.I. Kislak Mortg. Corp.*, 103 Wash.App. 542, 548 (2000) (rejecting reasonableness defense and noting its "holding does not infringe on Kislak's right to charge a fax fee. It merely forecloses the ability to do so in a deceptive manner.");

*Stephens v. Omni Ins. Co.*, 138 Wash.App 151, 171 (2007) (holding insurance companies "may not overreach by using deceptive means to accomplish [a permissible] objective").[1]

Accordingly, the Court should grant REX's motion for a new trial. And because the jury held that REX had established all elements of its WCPA claim, the Court should order a new trial only as to damages. *See Thorstenson v. Department of Labor*, No. 22-70020, 2023 WL 2523831, at *1 (9th Cir. Mar. 15, 2023).

### C. The Court Should At Least Have Given a Clarifying Instruction

At a minimum, the Court should have instructed the jury that Zillow could establish its affirmative defense only by demonstrating that its web site design was reasonable, not that its decision to obtain IDX feeds was reasonable. "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1213, 1218 (9th Cir. 1997) (failure to adequately explain to the jury the contours of the valid business justification defense to a Sherman Act claim is an abuse of discretion).

### D. The Court Erroneously Limited Testimony Regarding Residential Real Estate Commission Rates

Until Zillow changed its web site, REX was successfully lowering commission rates by offering an alternative to traditional real estate brokerages transactions that are burdened by supra competitive commission rates. REX contended that neither Zillow's choice of its web site design nor its decision to obtain access to IDX feeds could justify Zillow's decision to segregate REX's listings in the "Other Listings" tab because doing so effectively deprived consumers of access to REX's low commission property listings.

---

[1] *State v. Black*, 100 Wash.2d 793 (1984) (en banc) is in accord. There, the challenged conduct—the realtors' unilateral response to a fee change—was not deceptive, conspiratorial or otherwise wrongful. The Washington Supreme Court upheld the respondent realtors' "reasonableness defense" under the WCPA based on the trial court's explicit finding that without the fee change, only realtors "with low overhead, such as Lewis, could economically survive." *Id.* at 797.

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ

5

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

Accordingly, REX proposed to present expert and other testimony demonstrating that real estate commissions in the United States are supra competitive and explaining how Zillow's unfair and misleading two-tab display sustains those rates.

The Court, however, excluded such testimony. It prohibited REX from presenting Dr. Evans' testimony consistent with his opening report that residential real estate commission rates in the United States are significantly higher than in most other developed countries and are inflated and supra competitive in significant part because of the Buyer Broker Commission Rule. His opinion was supported by a wealth of academic literature. *See* Evans Opening Rpt. at ¶¶ 104-131, 307, 360, 446-48. The Court also prevented Lynley Sides from testifying that a motivating force behind the decision to start REX was the founders' conviction that residential real estate commissions in the United States are artificially inflated due to rules such as the Buyer Broker Commission Rule. The exclusion of this testimony was error. It prevented REX from both demonstrating how Zillow's conduct harmed consumers (by segregating listings that did not comply with the Buyer Broker Commission Rule), and the magnitude of the harm Zillow's actions inflicted on consumers.

The Court justified its decision by its dismissal of REX's antitrust claims. But REX's counsel explained that the Court's ruling would impair REX's ability to prosecute its Lanham Act and WCPA claims, stating:

> If we'd never had an antitrust, if there'd never been an antitrust claim in this case at all, if this had been simply a claim under the Lanham Act and the WCPA, we would have still started out by saying, in the United States you have – because of the Buyer Broker Rule, you have commissions that are much higher than they would have been without the Buyer Broker Rule, and they are much higher than they would have been if you had the kind of competition that REX provided. That is something that is an essential part of our Lanham Act claim and our WCPA claim and would have been even if we'd never had an antitrust claim.

Sept. 2, 2023 Pretrial Conference at 12:11-21; *see also* September 18, 2023 Trial Tr. at 167:1-6; 167:11-168:6; 168:11-22.

By prohibiting REX from putting on testimony demonstrating that residential real estate commission rates in the U.S. are inflated and supra-competitive and that Zillow's two-tab display sustains those rates by favoring MLS listings, REX was severely prejudiced in two ways. First, REX was prejudiced because the proposed testimony was essential to REX's ability to demonstrate that Zillow's web site redesign harmed both REX and consumers, which testimony was highly relevant to both of REX's claims. Second, REX was prejudiced because the evidence was highly probative of whether Zillow's decision to implement its new display was reasonable. The excluded evidence was highly relevant to REX's rebuttal of Zillow's affirmative defense.

E. **The Court Erroneously Limited REX's Rebuttal Case**

Prior to the commencement of trial, the Court held that "[e]ach side will have 20 hours of trial time." Sept. 8, 2023 Minute Entry, Dkt. No. 491. That included allocating to each side half the time the Court spent on *voir dire*, as well as the time each side spent on jury selection, opening statements, presentation of evidence, and closing arguments. Counsel for REX budgeted its time carefully to save time for presentation of rebuttal evidence. However, on the afternoon of the 7th day of trial, as REX was about to begin its rebuttal case, the Court ruled that REX would not be allowed to present rebuttal testimony from two of its three expert witnesses and that the rebuttal testimony of its third expert would be sharply limited.[2]

The trial court's ruling was an abuse of discretion for two reasons: first, the court improperly excluded testimony that was critical to Plaintiff's ability to rebut Zillow's *affirmative defense*. Second, the Court's decision was unfair and unrealistic given the wide

---

[2] At the beginning of the seventh day, the Court stated it was not inclined to allow any of REX's experts to testify in its rebuttal case, but told REX's counsel it did not want to hear argument on that issue until the defense rests. Sept. 27, 2023 Trial Tr. at 6:11-12.

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ

7

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

range of issues addressed in Zillow's expert reports and the onerous time restrictions imposed by the Court.

### 1. Exclusion of Rebuttal Testimony Relating to Zillow Affirmative Defense was Improper

The Sixth Circuit's opinion in *Toth v. Grand Trunk R.R.*, 306 F.3d 335 (6th Cir. 2002), is highly instructive. There, "[t]he district court's stated reason for excluding the rebuttal testimony was that it could have been offered in the case-in-chief." *Id.* at 346-48. That's precisely what this Court held here.

> But the defendant's witnesses, to my knowledge, have limited themselves to what they have said in their expert rebuttal reports and at their depositions. . . . [T]his is not the kind of case, which is typical, where the defendants would call expert witnesses, which would offer new opinions, which would obviously then give the plaintiff an opportunity to call their experts, to rebut those new opinions.

*See* September 27, 2023 Trial Tr. at 4:20-5:10; 5:20-23; *see also id.* at 102:10-13 (regarding REX's marketing expert, "And everything has been covered that she wanted to talk about, in my mind, was covered or could have been covered easily, in the direct testimony of the witness."); *id.* at 109:1-4 ("She could have easily, and perhaps even addressed that in her direct.").

This Court relied on *Benedict v. U.S.*, 822 F.2d 1426, 1428 (6th Cir. 1987) to justify its limitation on REX's right to present expert rebuttal testimony, but the Sixth Circuit's later decision in *Toth* demonstrates that the Court's ruling was wrong. The Sixth Circuit in *Toth* noted the district court's contention that the rebuttal evidence "could have been offered in the case-in-chief"—precisely what this Court stated here—and held: "*Benedict* establishes that this factor is irrelevant, as long as the rebuttal is offered to refute new evidence offered in defendant's case-in-chief." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 347 (6th Cir. 2002). The Sixth Circuit found it was error to exclude the rebuttal testimony but not reversible error in that case because the error was harmless. *Id.* at 348. Similarly,

here, because the rebuttal testimony was offered to respond to evidence offered in defendant's case in chief, it was proper rebuttal and error to exclude it, and because the error was outcome determinative, it was reversible error, regardless of whether it could have been presented in REX's case-in-chief.  As the Sixth Circuit has repeatedly held, plaintiffs "ha[ve] no duty to anticipate [the other party's] defense." *Id.* at 345 (quoting *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981)).

Plaintiffs have a right "to offer proofs in rebuttal where defendant has placed in evidence proof" of an affirmative defense. *Corbin v. Norfolk & W. Ry. Co.*, 856 F.2d 193 (6th Cir. 1988) (unpublished); *Ramirez v. ITW Food Equip. Group, LLC*, 686 Fed. Appx. 435, 440 (9th Cir. 2017) (unpublished) (holding it was error for trial court to exclude expert testimony that "was relevant to rebut [the defendant's] affirmative defense").

At trial, Zillow called two fact witnesses.  One was Mr. Samuelson, Zillow's Chief Industry Development Officer who testified mainly regarding Zillow purported business justifications for its display change.  For example, Samuelson testified:

> [Answer:] We had some real business concerns with the syndication agreements and the data that we received. . . . So we had coverage gaps . . . The second problem we had was that we had concerns around timeliness . . . So we had a data-quality issue . . . And then the final problem we had with these syndication feeds, was more of a business issue . . . the MLSs had the ability to cancel the contract on very short notice . . . some of the larger MLSs had noncompetition clauses in their contracts, which limited the kinds of things we could do in our business.
>
> [Question:] Now, did your competitors have access to those missing listings?
>
> [Answer:] If we look at Redfin, also a Seattle company, they similarly had just about all the listings in the market. So we were at a real disadvantage in serving our customers.  Well, I know anecdotally, even inside Zillow, if we had employees who were looking to buy a home, oftentimes I would be in the office and I would see them using Redfin, instead of Zillow . . ."
>
> [Question:] So now we have talked about pros of IDX feeds, we have talked about some of the cons of the IDX feeds. What did Zillow ultimately decide to do?

> [Answer:] After looking at the benefits of moving to IDX, as well as some of the challenges, we decided that the benefits vastly outweighed the challenges. And we decided to move forward and convert our business, and our sites, to operate based on IDX feeds.

Sept. 26, 2023, Trial Tr. at 14:22-16:5, 16:18-25, 19:10-13; 33:10-17; *see also id.* at 17:18-20, 19:3-7, 20:9-12, 26:1-12, 27:12-17, 27:21-29:3, 30:17-22, 33:10-17; 34:21-35:3, 36:9-37:25, 40:16-21, 42:2-14, 43:2-8, 44:3-14.

Because this Court gave the Reasonableness Affirmative Defense Instruction even though it was unsupported by any evidence and because this Court refused to clarify that what had to be reasonable was Zillow's design of its web site, Dr. Evans should have been allowed to refute Mr. Samuelson's claim that Zillow exercised reasonable business judgment when it decided to transition to IDX feeds. Had he been allowed to so testify, Dr. Evans would have been able to refute Mr. Samuelson's claim, as evidenced by the following passages from Dr. Evans' Opening Reports and Rebuttal Reports:

> ¶243, Opening Rpt. Zillow's success in acquiring listings directly from brokers demonstrates the importance brokers placed on having their listings shown on Zillow. Zillow has estimated that it had access to 98 percent of the listings that were on MLSs.

> ¶4, Rebuttal Rpt. One expert repeats Zillow's claim that complying with the Segregation Rule was beneficial because it enabled the company to get better data to serve consumers. That claim ignores contemporaneous Zillow documents that conclude that the consumer experience would be a "wash, at best" after accounting for the harmful impact of the two-tab display on Zillow's website, thereby nullifying the procompetitive justification for adopting the IDX feeds claimed by Zillow's expert.

> ¶10, Rebuttal Rpt. Other documents show that whatever coverage benefits Zillow got from IDX feeds were at least offset by the degradation of Zillow's website and app, and that Zillow did not save resources using IDX feeds rather than MLS, syndication, and other agreements, and in fact had to increase the number of employees.

> ¶16, Rebuttal Rpt. The MLSs, syndicators on behalf of brokerage firms, and individual brokerage firms found it in their individual self-interest to provide Zillow with virtually the same listing data as Zillow got from the IDX feeds.

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ
10
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

¶20, Rebuttal Rpt.  Zillow's experts have provided no evidence that the consumer benefits of enforcing the rule outweigh these costs given the negative impact on consumers of a two-tab display.  One senior executive said, the "difference in shopper experience, is a wash, at best".

Evans Opening Report at ¶¶ 243, n.241; Evans Reply Report at ¶¶ 4, 10, 16, 20; *see also* Evans opening Report at ¶¶ 255, n.256, 259; Evans Reply Report at ¶¶ 18, 21, 22, 25.

While the Court has wide discretion on evidentiary issues, precluding REX from offering expert testimony to rebut Zillow's affirmative defense is clear error, and in this case, given the importance of that affirmative defense, reversible error.

### 2. Exclusion of Other Expert Rebuttal Testimony was Improper

Although the time limitations established by the Court were onerous, REX is not challenging the time limits in and of themselves, but rather contending that the time restrictions exacerbated the prejudice to REX from the Court's rulings restricting the scope of REX's rebuttal evidence.

Courts generally disapprove the imposition of strict time restrictions at trial. *Harris v. Chand*, 506 F.3d 1135, 1143 (8th Cir. 2007); *Life Plus Intern. v. Brown*, 317 F.3d 799 (8th Cir. 2003); *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1508 (9th Cir. 1995). Moreover, "**an allocation of trial time relied upon by the parties should not be taken away easily and without warning**." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3d Cir. 1995) (emphasis added).

As REX's counsel explained to the Court, REX could not possibly respond to all the arguments in each of Defendant's three lengthy expert witness rebuttal reports in its case in chief given the limited amount of total trial time allotted each side.  Rather, REX had its experts address certain key arguments made by Defendants' experts in REX's case in chief, while saving time to respond in its rebuttal case to other points Defendants' experts would make in their testimony.  Also, REX could not possibly have anticipated the scope of Zillow's fact witnesses' testimony and saved time to rebut that testimony.

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ

11

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

REX's counsel argued at trial:

> MR. BOIES: I would like the court to think about that -- we could not have reasonably said, on his direct examination: This is a criticism that's made in the report, what do you think about it? That ought not to be our burden during our direct examination of our experts. Particularly, I think, ought not to be, given the time limits that we have here. And the fact that we have covered the subject matter doesn't mean we've covered the criticisms. And it's true, I get to cross-examine. But, again, particularly given the time constraints, cross-examination, as the court has seen with some of their experts, is not an easy way of bringing in evidence. They have very long answers, explanations. But we don't have an opportunity to put in front of the jury our evidence that relates to these criticisms.
>
> So we didn't really have a chance to do that in any realistic way in our direct examination. It's true we could have gone through -- these are hundred-page reports, Your Honor.

Sept. 27, 2023, Trial Tr. at 106:22-107:14; *see also id.* at 108:12-21.

Here, because of the timing of the Court's decision to restrict the scope of REX's rebuttal expert testimony, the Court deprived REX of the ability to use its full time allotment in the presentation of evidence, limited as it was. *See Duquesne Light Co.*, 66 F.3d at 610 ("an allocation of trial time relied upon by the parties should not be taken away easily and without warning"). Given the demanding 20-hour time limit, the loss of valuable time for the presentation of evidence severely prejudiced REX and warrants a new trial.

### III. Conclusion

Accordingly, REX respectfully requests this Court grant its motion for a new trial on its WCPA claim and direct a new trial limited to the amount of damages REX suffered.

**Word Count:** I certify that this memorandum contains 4,176 words, in compliance with the Local Civil Rules.

Dated: October 31, 2023       **BOIES SCHILLER FLEXNER LLP**

By: /s/ Carl E. Goldfarb
Carl E. Goldfarb (Admitted *Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ

12

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219

Facsimile: (954) 356-0022
cgoldfarb@bsfllp.com

Ursula Ungaro
Stephen N. Zack
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, FL  33131
Telephone: (305) 539-8400
Facsimile:  (305) 539-1307
uungaro@bsfllp.com
szack@bsfllp.com

James Denvir
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, D.C, 20005
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131
jdenvir@bsfllp.com

David Boies
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY  10504
Telephone: (914) 749-8200
Facsimile:  (914) 749-8300
dboies@bsfllp.com

***Attorneys for Plaintiff***

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 31, 2023, I served foregoing document to be filed in this Court's CM/ECF system, which will send notification of such filing to the counsel of record.

By: */s/ Carl E. Goldfarb*
 Carl E. Goldfarb, Esq.

PLAINTIFF REX'S MOTION FOR A NEW TRIAL
Case No. 2:21-cv-00312-TSZ

13

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd, Suite 1200
Fort Lauderdale, FL 33301
(954) 540-6219