1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REX – REAL ESTATE EXCHANGE, INC., | |
| Plaintiff, | C21-0312 TSZ |
| v. | ORDER |
| ZILLOW GROUP, INC., | |
| Defendant. | |

THIS MATTER comes before the Court on a motion for a new trial, docket no. 556, brought by plaintiff REX – Real Estate Exchange, Inc. ("REX"). This case proceeded to trial on two claims, a Lanham Act claim for false advertising and a claim for violating Washington's Consumer Protection Act ("CPA"). After an eight-day trial, the jury rendered a verdict against REX on both claims. See Verdict (docket no. 539). The jury found that REX had not established a Lanham Act false advertising claim and that, although REX had proven all of the elements of the CPA claim, defendant Zillow Group, Inc. ("Zillow") had proven its affirmative defense. Id. In the pending motion,

ORDER - 1

1  REX does not seek any relief regarding its Lanham Act false advertising claim; REX
2  requests a new trial only with respect to its CPA claim, contending that the Court erred
3  in (i) instructing the jury with respect to Zillow's affirmative defense, (ii) precluding
4  testimony regarding real estate commission rates in other countries, and (iii) limiting
5  REX's rebuttal evidence.  Having reviewed all papers filed in support of, and in
6  opposition to, REX's motion for a new trial as to its CPA claim, the Court DENIES
7  REX's motion for the reasons set forth in this Order.

**Discussion**

REX's CPA claim concerned Zillow's websites (Zillow.com and Trulia.com) and related mobile-device applications ("Apps").  Prior to January 2021, Zillow's websites and Apps displayed, on one page, all homes for sale in a certain region, regardless of how they were listed, *i.e.*, by a real estate agent or broker,[1] a property owner, or another entity.  In mid-January 2021, Zillow unveiled a two-tab design, which segregated content between tabs or pages labeled as "Agent listings" and "Other listings."  When the two-tab system was activated, REX employed licensed agents and brokers, <u>see</u> Instr. No. 5 at ¶ 12 (docket no. 531), and thus, REX's for-sale listings qualified as "agent listings," as opposed to for-sale-by-owner or non-agent listings.  Nevertheless, when the two-tab display was implemented, REX's listings were shown on only the "Other listings" page.

---

[1] A real estate agent or broker who is a member of the National Association of REALTORS® may also be called a "realtor."  <u>See</u> Prince Report at ¶ 21 (docket no. 344-2); <u>see also</u> Galicia Decl. at ¶ 2 (docket no. 65).

ORDER - 2

A.  **Jury Instruction on Affirmative Defense to CPA Claim**

REX proved that, in relegating its listings to the "Other listings" tab, Zillow engaged in an unfair or deceptive act or practice, which occurred in the conduct of Zillow's trade or commerce, affected the public interest, and proximately caused injury to REX's business.  *See* Verdict at Ans. No. 4 (docket no. 539); *see also* Instr. No. 15 (docket no. 531) (outlining the elements of a CPA claim).  The jury also found, however, that Zillow proved its affirmative defense of having engaged in conduct that "was reasonable in relation to the development and preservation of its business."  *See* Instr. No. 15 (docket no. 531); *see also* Verdict at Ans. No. 5 (docket no. 539).  REX contends that (i) the Court erred in giving a reasonableness defense instruction; and (ii) the Court's reasonableness defense instruction was deficient.

1.  **An Instruction Was Required**

REX's argument that an instruction should not have been given is contrary to Washington law.  The Washington Supreme Court has made clear that refusal to provide an instruction when reasonableness is raised as a defense to a CPA claim constitutes error.  *See Travis v. Wash. Horse Breeders Ass'n, Inc.*, 111 Wn.2d 396, 408–09, 759 P.2d 418 (1988).  In this matter, Zillow timely pleaded the reasonableness defense, *see* Ans. at 31 (docket no. 100), REX never moved to strike the defense, and the defense was part of the case at trial, having been explicitly enumerated in the Pretrial Order, docket no. 503.  Thus, an instruction on the reasonableness defense was required.

/ / /

/ / /

ORDER - 3

2. **The Court's Instruction Correctly Stated the Law**

REX's challenge to the wording of the instruction (as opposed to the giving of the instruction) lacks merit for four reasons. First, the instruction at issue (*i.e.*, Instruction No. 15) accurately recited the applicable standards. The text concerning the reasonableness defense was drawn from Washington Pattern Instruction 310.02,[2] which is virtually identical to the instruction deemed by the Washington Supreme Court in *Travis* to be a correct statement of the law.[3] *See* 111 Wn.2d at 408–09. The Court properly informed the jury that Zillow was required to "prove by a preponderance of the evidence that [its] act or practice was reasonable in relation to the development and preservation of its business." *See* Instr. No. 15 (docket no. 531).[4]

---

[2] The Washington Pattern Instruction reads: "The Consumer Protection Act does not prohibit acts or practices that are *reasonable in relation to the development and preservation of business* or that are not injurious to the public interest." WPI 310.02 (emphasis added).

[3] The applicable statute provides: "It is . . . the intent of the legislature that this [Consumer Protection A]ct shall not be construed to prohibit acts or practices which are *reasonable in relation to the development and preservation of business* or which are not injurious to the public interest . . . ." RCW 19.86.920 (emphasis added). The *Travis* Court was unpersuaded by an attempt to characterize the statute as merely a "legislative preamble." 111 Wn.2d at 408–09.

[4] Whether the burden of proof falls on a plaintiff or a defendant in a CPA case was not addressed in *Travis*, and WPI 310.02 is silent on the question. *See* WPI 310.02 cmt. (indicating that RCW 19.86.920 does not specify "whether reasonableness is an affirmative defense, a simple defense, or something else," and observing that "[a]bsent a burden of proof, jurors may find it difficult to fit the instruction into the framework of the plaintiff's required elements"). The legislature, however, has made clear that the CPA "shall be liberally construed" to serve its "beneficial purposes," RCW 19.86.920, and placing the burden on a CPA defendant to prove a reasonableness defense is consistent with this legislative directive. REX does not challenge the Court's decision to place the burden of proof on Zillow.

ORDER - 4

Second, in arguing otherwise, REX does not identify any error in the Court's explanation of the law,[5] but rather contends the Court should have instructed about the ultimate factual issue that the jury needed to decide, namely whether Zillow's conduct "was reasonable in relation to the development and preservation of its business." The two-tab display that was the focus of this litigation resulted in part from Zillow's efforts to (i) receive, in a timely fashion, complete information from certain multiple-listing services ("MLSs") via Internet Data Exchange ("IDX") feeds, and (ii) comply with a rule (adopted by roughly two-thirds of these MLSs) requiring that IDX-feed listings be displayed separately from other-source listings.[6] REX asserts that the jury should have been told "Zillow could establish its affirmative defense only by demonstrating that its web site design was reasonable, not that its decision to obtain IDX feeds was reasonable." Pl.'s Mot. at 5 (docket no. 556). Such instruction would have improperly commented on

---

[5] Neither *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 159 P.3d 10 (2007), nor *Dwyer v. J.I. Kislak Mortg. Corp.*, 103 Wn.App. 542, 13 P.3d 240 (2000), both of which REX has cited, suggest different or additional language for a jury instruction on the reasonableness defense. In *Stephens*, Division I discussed the "yardstick of reasonableness" only in the context of distinguishing between California and Washington law. *See* 138 Wn. App. at 170. The *Stephens* Court further noted that the reasonableness defense "is appropriately submitted as a jury question if there are material issues of fact about its application." *Id.* In *Dwyer*, in concluding that a mortgage payoff statement was deceptive as a matter of law, Division I referenced the reasonableness defense only for the purpose of noting that it had "taken care not to improperly interfere with [the mortgagee's] right to conduct its business." 103 Wn. App. at 547–48. Nothing in *Stephens* or *Dwyer* required the Court to include more or alternative verbiage in Instruction No. 15.

[6] The rule, called the "no-commingling" rule or the "segregation" rule, is an optional model rule promulgated by the National Association of REALTORS® ("NAR"), which provides that "[l]istings obtained through IDX feeds from REALTOR® Association MLSs where the MLS participant holds participatory rights must be displayed separately from listings obtained from other sources." Instr. No. 5 at ¶ 7 (docket no. 531) (quoting NAR Model IDX Rule 18.3.11).

ORDER - 5

1  the evidence. <u>See</u> <u>United States v. Goland</u>, 959 F.2d 1449, 1453 (9th Cir. 1992) ("A trial

2  judge may refuse an instruction if its language gives undue emphasis to [a party's]

3  version of the facts rather than being 'a statement of appropriate principles of the law for

4  the jury to apply to the facts'. . . ."); <u>United States v. Hall</u>, 552 F.2d 273, 275 (9th Cir.

5  1977) ("Where the evidence raises a factual issue, an instruction dictating the result

6  invades the ultimate fact-finding role of the jury." (citing <u>Travelers Ins. Co. v. Ryan</u>, 416

7  F.2d 362, 364 (5th Cir. 1969), and <u>Nunley v. Pettway Oil Co.</u>, 346 F.2d 95, 99 (6th Cir.

8  1965))).[7]

9        Third, despite three rounds of written objections and an almost-hour-long hearing

10 during which the Court and counsel conferred about the jury instructions and the parties

11 made their formal exceptions on the record, <u>see</u> Pl.'s Resps. (docket nos. 487, 516,

12 & 530); <u>see also</u> Tr. (Sep. 27, 2023) at 202–28 (docket no. 550), REX never proposed

---

[7] REX contends that Zillow could not pursue the reasonableness defense because it did not assert that the challenged conduct, <u>i.e.</u>, the selection of the tab labels, was reasonable, citing <u>Brown v. Transworld Sys. Inc.</u>, 646 F. Supp. 3d 1328 (W.D. Wash. 2022), as well as <u>Dwyer</u> and <u>Stephens</u>. <u>See</u> Pl.'s Mot. at 4–5 (docket no. 556). REX summarizes <u>Brown</u> as concluding that the "defendant could not assert a reasonableness defense based on [an] assertion that it 'merely was representing its clients' and was 'motivated by legitimate business concerns.'" <u>Id.</u> at 4. REX's synopsis bears absolutely no relationship to the holding or reasoning of <u>Brown</u>. <u>Brown</u> involved a motion to dismiss for failure to state a claim. <u>See</u> 646 F. Supp. 3d at 1335. One of the defendants, namely a law firm that is a licensed Washington collection agency, argued that its actions in underlying litigation, which were alleged to be per se violations of the CPA, were reasonable in relation to the development and preservation of business and "therefore exempt from CPA liability." <u>Id.</u> at 1336–37 & 1341. The <u>Brown</u> Court observed that the law firm had provided no authority supporting a blanket exception from the CPA, and it concluded that the operative pleading adequately alleged all of the elements of a CPA claim. <u>Id.</u> at 1341–45. Given the early stage of the proceedings in <u>Brown</u>, the decision cannot be viewed as relevant to the questions of whether a jury should be instructed about the reasonableness defense or how such instruction should be crafted.

ORDER - 6

any alternative or additional verbiage along the lines that it now argues was error not to include.[8]  In its response to the Court's second set of draft instructions, REX indicated as follows:

> If the Court were to give a reasonableness instruction, we submit it would be essential to clarify that what must be reasonable is the challenged conduct itself, not any payoff [Zillow] might receive for engaging in it.

Pl.'s Resp. at 2 (docket no. 516).  REX did not, however, provide, either in writing or orally, the specific clarifying "challenged conduct" instruction that it was suggesting.  See Pl.'s Alt. Instr. No. 15, Ex. A to Pl.'s Resp. (docket no. 516-1); see also Tr. (Sep. 27, 2023) at 203:16–205:11 (docket no. 550).  Even now, in its motion for a new trial, REX fails to outline the exact contours of an instruction that it contends would have been appropriate to give.  See Pl.'s Mot. at 5 (docket no. 556).  REX cannot establish error, let alone prejudicial error justifying a new trial,[9] when it does not set forth with any particularity the jury charge that it contends the Court should have provided.

---

[8] Apart from demanding that the reasonableness defense be omitted from Instruction No. 15, REX requested only that the Court include the following text:

> In considering Plaintiff's claim and Defendant's affirmative defense, the Washington Consumer Protection Act must be liberally construed so that its beneficial purposes may be served.

Pl.'s Alt. Instr. No. 15, Ex. A to Pl.'s Resp. (docket no. 516-1).  The Court declined to include this language because it would provide the jury no meaningful (and likely confusing) guidance and the recited legislative mandate had been adequately addressed by placing the burden of proving the reasonableness defense on Zillow.  See supra note 4.

[9] Federal Rule of Civil Procedure 59(a) does not enumerate any specific basis for a new trial, but rather binds the Court to "historically recognized" grounds.  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).  Such grounds include instructional error that affected a party's "substantial rights."  See Fed. R. Civ. P. 61; see also Murphy v. City of Long Beach, 914 F.2d

ORDER - 7

Finally, as given, Instruction No. 15 allowed the parties to make their respective arguments in closing, and it was therefore an adequate recitation of the applicable law. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.  The district court must formulate a set of jury instructions that fairly and accurately states the law, covers the issue presented, and is not misleading." (citations omitted)).  REX attempted to persuade the jury that Zillow could not rely on the alleged requirements for obtaining IDX feeds to justify misleading consumers or implementing an unfair or deceptive display.  See Tr. (Sep. 28, 2023) at 39:17–40:23 (docket no. 551).  In his closing, REX's attorney referenced the testimony of Zillow's Chief Industry Development Officer Errol Samuelson, who admitted that "getting IDX feeds would not justify us misleading consumers."  Id. at 39:23–40:7; see Tr. (Sep. 26, 2023) at 53:16–17 (docket no. 549).  Consistent with Hamilton v. Union Oil Co. of Cal., No. 90-35426, 1991 WL 181714 (9th Cir. 1991), an unpublished opinion on which REX relies, REX was free to and actually did tell the jury that, even though the "no-commingling" rule

---

183, 187 & n.7 (9th Cir. 1990).  The Ninth Circuit "presume[s] prejudice where civil trial error is concerned" and shifts the burden to the non-moving party to "demonstrate 'that it is more probable than not that the jury would have reached the same verdict' had it been properly instructed."  See Galdamez v. Potter, 415 F.3d 1015, 1025 (9th Cir. 2005).  Subsequent jurisprudence casts doubt on the presumption of harm adopted by the Ninth Circuit.  See Shinseki v. Sanders, 556 U.S. 396, 407 (2009) ("We have previously warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record.").  The Court does not, however, need to decide whether to apply any presumption of prejudice because, before REX could possibly benefit from such presumption, it must first identify an error.

forced Zillow to segregate MLS and non-MLS agent listings, it did not require Zillow to adopt deceptive tab labels.  See id. at *3 ("even though the substitution of leaded fuel was legally required, Unocal was not required to deceive the dealers and the public").  REX has not identified any way in which Instruction No. 15 inhibited it from presenting to the jury its view that Zillow had failed to prove its actions were reasonable in relation to the development and preservation of its business.

Meanwhile, Zillow offered a multifaceted explanation for its trade practices.  In his closing, Zillow's lawyer summarized the following facts established during trial: (i) Zillow needed the IDX feeds to remain competitive in the real-estate-listings-aggregation market, (ii) Zillow did not like the "no-commingling" rule, but decided that the benefits of IDX feeds outweighed the disadvantages of the "no-commingling" rule, (iii) Zillow attempted unsuccessfully to have the "no-commingling" rule changed or rescinded, (iv) Zillow considered various options for a display that would comply with the "no-commingling" rule, (v) Zillow originally intended to eliminate non-MLS agents like REX from its two-tab web design, which would have been consistent with the business models of other aggregators like Redfin and Realtor.com, and which would have rendered the "Other listings" label entirely accurate, and (vi) Zillow later changed course and continued to include REX's listings on its websites and Apps, upon REX's request, as an accommodation, and free of charge, to REX.  See Tr. (Sep. 28, 2023) at 56:18–25, 66:24–68:10, 69:6–17, 70:21–72:19, & 75:8–21 (docket no. 551); see also id. at 90:15–91:5 (referring to Instruction No. 15 and asking the jury to conclude that Zillow had a "reasonable business justification" for its actions).

ORDER - 9

REX makes no argument that Zillow's counsel's closing remarks were either unsupported by or contrary to the evidence. Viewing the evidence through the lens articulated by Zillow's attorney, the jury could reasonably have found that, when Zillow designed the two-tab display, it did not intend to include REX's (or any other non-MLS agent's) listings in the "Other listings" tab. This conclusion contradicts the primary premise of REX's motion for a new trial, namely that the challenged conduct (*i.e.*, the selection of the particular tab labels) was not itself reasonable. The jury could have further determined that, although Zillow was not required by any law or contract to offer REX, at no cost, an online home for its listings, Zillow opted (after already choosing the tab labels) to continue displaying REX's listings. The jury could have viewed this last-minute decision as being in the best interests of both REX and Zillow and therefore reasonable in relation to the development and preservation of Zillow's business.

Rather than acknowledging how the evidence supported Zillow's affirmative defense, REX suggests that the Court should have directed the jury to adopt REX's and/or to disregard Zillow's interpretation of events. In doing so, REX has not articulated a permissible basis for a new trial. Goland, 959 F.2d at 1453 (an instruction giving "undue emphasis to [a party's] version of the facts" may be rejected); Hall, 552 F.2d at 275; see Molski, 481 F.3d at 729 (historically recognized grounds for a new trial include a verdict against the "clear weight" of the evidence or based on "false or perjurious evidence," excessive damages, or to "prevent a miscarriage of justice"); see

ORDER - 10

1  also Murphy, 914 F.2d at 187 ("erroneous jury instructions, as well as the failure to give
2  adequate instructions, are also bases for a new trial").

3  **B.      Foreign Real Estate Commission Rates**

4        REX contends that real estate commission rates in the United States are higher
5  than in other countries as a result of NAR's mandatory "buyer broker commission" rule,
6  and that Zillow's two-tab display sustains these supracompetive commission rates by
7  favoring the listings of agents and brokers who participate in MLSs.  See Pl.'s Mot. at 5–
8  7 (docket no. 556).  REX further asserts that the Court erred in excluding from evidence
9  the commission rates typically paid by property sellers and/or buyers in other countries.
10  Id.  REX's argument is entirely lacking in merit.  REX was allowed to present testimony
11  that the "buyer broker commission" rule has artificially inflated rates in the United States
12  to five or six percent, split between sellers' and buyers' agents.  See Tr. (Sep. 19, 2023) at
13  72:17–73:13 (docket no. 545).

14        REX's business model aimed to reduce or eliminate buyer broker commissions.
15  See id. at 170:2–6.  REX's expert witness David S. Evans, Ph.D. testified that, during the
16  period from July 2019 to the beginning of the recent pandemic, REX had decreased
17  commissions from typically five percent (5%) per transaction to between two percent
18  (2%) and three and nine-tenths of one percent (3.9%) on average, depending on whether
19  the buyers' agents were REX's salaried employees or participants of MLSs.  See Tr.
20  (Sep. 20, 2023) at 73:5–74:12 & 85:3–24 (docket no. 546).  Because REX's for-sale
21  listings did not automatically offer compensation to buyers' agents, REX could not join

any MLSs, see Tr. (Sep. 19, 2023) at 170:18–25 (docket no. 545), and as a result, after mid-January 2021, REX's listings were segregated to the non-default "Other listings" tab.

REX was not inhibited from presenting evidence to support its CPA claim, and the jury found that REX had proven all of the elements, including a public interest impact, which was the only issue as to which supracompetitive commission rates was relevant. REX fails to explain how foreign methods or amounts of broker compensation relate in any way to Zillow's affirmative defense, which is the sole matter on which REX did not prevail at trial in connection with its CPA claim.  Moreover, the probative value of evidence concerning extraterritorial remuneration was substantially outweighed by the jury confusion and inefficiency likely to result from introducing into the trial the complex subject of how laws governing the ownership and alienation of real property differ among countries and why foreign brokers might receive more or less per transaction than their domestic counterparts.  See Fed. R. Evid. 403.

C. **Rebuttal Evidence**

REX complains that, in its rebuttal, it was not permitted to present evidence to combat Zillow's affirmative defense, but no proffer has ever been made concerning any excluded expert opinion or lay testimony tending to rebut Zillow's "reasonable business justification" theory.  As observed by the Court when the scope of REX's rebuttal was raised as an issue, this case was unusual because each of Zillow's experts offered only rebuttal reports, as opposed to expressing opinions of their own.  Tr. (Sep. 27, 2023) at 4:14–5:10 (docket no. 550).  Thus, if recalled in REX's rebuttal, REX's marketing (consumer behavior) expert Aradhna Krishna, Ph.D. and REX's damages expert David

Loucks would have essentially repeated the testimony they gave during REX's case-in-chief, and REX was appropriately precluded from presenting such cumulative evidence. *See id.* at 5:23–6:4 & 102:7–23; *see also* Fed. R. Evid. 403. REX's economics expert David S. Evans, Ph.D. was permitted, however, to testify in REX's rebuttal in a limited fashion, *see* Tr. (Sep. 27, 2023) at 103:17–106:16 (docket no. 550), and REX has not indicated with particularity any opinions relating to Zillow's reasonableness defense that Dr. Evans was not allowed to state during REX's rebuttal. Indeed, Dr. Evans did not, in either his 271-page expert report or his 56-page reply report, both of which had multiple appendices, ever address Zillow's affirmative defense to REX's CPA claim, and REX has not explained how Dr. Evans could have testified in REX's rebuttal about opinions he had not disclosed in advance of trial. *See* Fed. R. Civ. P. 26(a)(2).

Similarly, REX has not articulated any evidence that its founders, Lynley Sides and Jack Ryan, were restricted from providing during their rebuttal testimony. *See* Tr. (Sep. 27, 2023) at 135:5– 166:24 (docket no. 550). Sides testified in rebuttal for over a half hour and Ryan testified for about twenty minutes, and they were asked numerous questions that drew objections sustained on the ground of cumulativeness. *See id.* at 143:8–11, 143:20-21, 144:8–12, 156:19–24, 159:2–14, & 160:3–5. Moreover, no questions were posed to either of REX's founders that might have elicited any testimony aimed at undermining Zillow's reasonableness defense. No evidentiary error affecting REX's substantial rights occurred. *See* Fed. R. Civ. P. 61.

/ / /

/ / /

ORDER - 13

**Conclusion**

REX was ably represented, both before and during trial, by multiple attorneys from well-regarded law firms, including a distinguished named partner and a former federal judge.  REX had more than sufficient resources to pursue this litigation, <u>see</u> Notice Regarding Funding (docket no. 311), and was given ample opportunities to file motions and other briefs, offer objections to and propose alternative jury instructions, present testimony and other evidence, and argue the merits of its case to the jury.  REX's lack of success on its CPA claim is not the result of any procedural flaw in the litigation of this matter or any error on the part of the Court.  Rather, the record fully supports the jury's verdict.  For the foregoing reasons, the Court ORDERS:

(1)  REX's motion for a new trial, docket no. 556, is DENIED; and

(2)  The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 18th day of January, 2024.

Thomas S. Zilly
United States District Judge