FILED

MAR 3 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| REAL ESTATE EXCHANGE INC, a Delaware corporation,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>ZILLOW GROUP, INC., a Washington corporation; NATIONAL ASSOCIATION OF REALTORS,<br><br>Defendants - Appellees. | No. 24-685<br><br>D.C. No. 2:21-cv-00312-TSZ<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted February 13, 2025
Honolulu, Hawaii

Before: S.R. THOMAS, BRESS, and DE ALBA, Circuit Judges.

Real Estate Exchange ("REX") appeals the district court's grant of summary judgment to the National Association of Realtors ("NAR") and Zillow Group, Inc.[1]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] REX also sued subsidiaries of Zillow Group, Inc. including Zillow, Inc., Zillow Homes, Inc., Zillow Listing Services, Inc., and Trulia, LLC. These entities are collectively referred to as "Zillow" here.

("Zillow") on antitrust claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, and a parallel provision of the Washington Consumer Protection Act, Wash Rev. Code § 19.86.030. REX also appeals the district court's denial of REX's motion for a new trial on REX's deceptive act or practice claim under Wash. Rev. Code § 19.86.020. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the factual and procedural history of the case, we need not recount it here.

I

The district court correctly concluded that there was no Sherman Act agreement between NAR and Zillow based on the no-commingling rule.[2] The existence of an agreement, or "concerted action," is an essential element of a claim under Section 1 of the Sherman Act. *Fisher v. City of Berkeley*, 475 U.S. 260, 266-67 (1986) (stating "there can be no liability under § 1 in the absence of agreement"). Concerted action consists of "a conscious commitment to a common scheme designed to achieve an unlawful objective." *PLS.Com, LLC v. Nat'l Ass'n*

---

[2] We analyze REX's antitrust claim under Washington state law under the federal standard because the relevant section of the Washington Consumer Protection Act mirrors the Sherman Act. *See State v. Black*, 676 P.2d 963, 967 (Wash. 1984) (en banc) (stating that Wash. Rev. Code § 19.86.030 "is our State's equivalent of section 1 of the Sherman Antitrust Act" and that "[w]hen the Legislature enacted the Consumer Protection Act, it anticipated that [Washington] courts would be guided by the interpretation given by federal courts to their corresponding federal statutes").

*of Realtors*, 32 F.4th 824, 842 (9th Cir. 2022) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).  To survive summary judgment, a plaintiff must provide direct or circumstantial evidence of concerted action.  *See Toscano v. Pro. Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001).  REX did not do so here.

First, as the district court found, the no-commingling rule itself is not direct evidence of concerted action that "joins together separate decisionmakers." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010).  Each NAR-affiliated multiple listing service ("MLS") independently chose whether to adopt the rule, and indeed twenty-nine percent of them did not.  The rule was in fact optional and does not establish a Section 1 agreement by itself.

Second, Zillow independently re-designed its website to comply with the rule.  Zillow's choice to change its website to display listings on two separate tabs—with REX's listings on the non-default tab—is the source of REX's alleged anti-competitive harm.  REX has not provided either direct or circumstantial evidence demonstrating that NAR agreed to this website design, or that Zillow did anything more than "merely accept[]" and comply with the optional no-commingling rule promulgated by NAR and adopted by some MLSs.  *Toscano*, 258 F.3d at 983-84 (finding no agreement where local sponsors of golf tournaments "merely accepted" rules that were "independently set" by the PGA

3

Tour).  Nor did the no-commingling rule itself direct how Zillow or others should separately display listings from MLS and non-MLS sources.  Thus, REX cannot prove that Zillow and NAR committed to a common, anti-competitive scheme and the district court correctly granted summary judgment.  *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001) (finding "[p]laintiffs [could not] survive summary judgment because they [had] presented neither direct nor circumstantial evidence" of concerted action).

II

The district court also correctly found that REX forfeited any claim of conspiracy between Zillow and non-party MLSs that did not include NAR.  REX never made a concrete allegation of a separate conspiracy involving Zillow and individual MLSs.  In its Amended Complaint, REX referred repeatedly to the "NAR/MLS regime" or "NAR/MLS cartel."  REX also alleged a nationwide conspiracy "[b]ecause Zillow's universal display change concealing non-MLS listings is implemented nationally" and did not limit its allegations to only those jurisdictions where an MLS had adopted the no-commingling rule.  Any conspiracy between Zillow and MLSs alone was not clearly raised before the district court and accordingly need not be considered on appeal.  *In re Mortg. Elec.*

*Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) ("Generally, arguments not raised in the district court will not be considered for the first time on appeal.").

III

Finally, the district court did not err in instructing the jury on Zillow's reasonable business practice defense to REX's deceptive act or practice claim under the Washington Consumer Protection Act. "Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014).

Here, Zillow presented sufficient evidence to warrant the instruction. As the district court noted in its denial of REX's motion for a new trial, Zillow provided evidence at trial that it designed its two-tab display thinking REX's listings would not be included on either tab after Zillow switched to IDX feeds. Later, at REX's request, Zillow accommodated REX by including its listings on the "Other listings" tab. *Id*. The district court correctly noted that "[t]he jury could have viewed this last-minute decision as being in the best interests of both REX and Zillow and therefore reasonable." Zillow was thus entitled to receive a jury instruction on its reasonable business practice defense. *See Travis v. Wash. Horse Breeders Ass'n, Inc.*, 759 P.2d 418, 423-24 (Wash. 1988) (en banc) (defendant was

5

entitled to an instruction on the reasonable business practice defense, where the defendant presented evidence that its deceptive practice was customary in the trade).

The given instruction also correctly stated the law. The language was derived from the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.920, and mirrored the language of Washington Pattern Jury Instruction 310.02.  6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 310.02 (7th ed. 2022). Additionally, in *Travis*, the Washington Supreme Court held that an instruction substantially similar to the one given by the district court "correctly states the law." 759 P.2d at 424.  REX asserts the instruction was nonetheless misleading because the jury might conclude that Zillow's switch to receiving listings data through IDX feeds was reasonable, not its website re-design.  But the language of the instruction makes clear that Zillow's deceptive "act or practice" is what must be reasonable, and accordingly the court did not err in refusing to clarify the instruction any further.[3]

---

[3]    REX also asserts the instruction should not have been given because the public interest outweighed any potential business justification. REX did not preserve this objection below, so it is reviewed only for plain error.  Fed. R. Civ. P. 51(d)(2).  None of the cases REX cites support its contention that the trial court must weigh the public interest before instructing a jury on the reasonableness defense. Instead, "[t]he 'reasonableness defense' is appropriately submitted as a jury question if there are material issues of fact about its application." *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 20-21 (Wash. Ct. App. 2007). The district court

**AFFIRMED.**

---

committed no error, let alone plain error, in giving the instruction.